Ryan L. Eddings, Bar No. 256519
reddings@littler.com
Julie R. Campos, Bar No. 314063
jcampos@littler.com
LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, California 93704.2225
Telephone: 559.244.7500
Fax No.: 559.244.7525

Attorneys for Defendant
MASTEC NETWORK SOLUTIONS, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGG LEE FOSHEE, JR., | Case No. 1:20-cv-00890-AWI-SAB |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION** |
| v. | |
| MASTEC NETWORK SOLUTIONS, INC., and DOES 1 TO 10, | |
| Defendants. | Date: October 18, 2021<br>Time: 1:30 p.m.<br>Judge: Hon. Anthony W. Ishii<br>Dept: Courtroom 2<br><br>Trial Date: May 17, 2022 |

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA

1:20-CV-00890-AWI-SAB

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION ........................................................................................................ 8

II. STATEMENT OF FACTS ......................................................................................... 8

    A. Plaintiff's Initial Employment with Defendant ............................................. 8

    B. Plaintiff Did Not Inform Defendant of His Dual Ear Infection Until After He Failed to Appear for His Scheduled Shift on April 18, 2019 ................................... 9

    C. Plaintiff Was Released to Work Two Days Later with No Restrictions, and Did Not Suffer from Any Other Medical Condition Requiring Any Accommodation ......................................................................................................... 9

    D. Plaintiff's Manager Fought for Plaintiff to Retain His Higher Rate of Pay When Plaintiff Voluntarily Requested a Demotion ................................................... 9

    E. On September 25, 2019, Defendant's Client Observed Plaintiff on a Man Lift Without a Hard Hat, and Plaintiff's Crew on the Job Site Without Hard Hats ........ 10

    F. Plaintiff's Managers Fought for Plaintiff to Receive a Performance Improvement Plan in Lieu of Termination .................................................................. 10

    G. Defendant Terminated Plaintiff's Employment on September 30, 2019 for His Safety Violations .............................................................................................................. 11

    H. Windy Cox Based Her Termination Recommendation Solely Upon Plaintiff's Safety Violations .............................................................................................................. 11

    I. Defendant Maintained a Zero-Tolerance Policy Against Discrimination, Harassment, and Retaliation ......................................................................................... 11

    J. Defendant Maintained a Reasonable Accommodation Policy ................................. 12

    K. Defendant Maintained Complaint Procedures for Complaints of Discrimination, Mistreatment, and Substance Abuse ............................................... 12

    L. Defendant Maintained a Strict Policy Against Drug Use ...................................... 13

    M. Plaintiff Never Complained of or Threatened to Report Drug Use ..................... 12

    N. Plaintiff Never Complained of Racial Discrimination During His Employment ...... 13

III. LEGAL ARGUMENT .............................................................................................. 13

    A. Standard for Summary Judgment and Summary Adjudication ............................ 13

    B. Plaintiff's First Cause of Action for Whistleblower Retaliation Fails as a Matter of Law ................................................................................................................. 14

        1. Plaintiff Never Engaged in a Protected Activity ............................................ 15

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

1:20-CV-00890-AWI-SAB

2.    Plaintiff Cannot Establish a Causal Link Between His Alleged Protected Activity and His Termination ...................................................... 16

C.    Plaintiff's Second Cause of Action for Medical Leave Discrimination in Violation of California Government Code Section 312945.2 Fails as a Matter of Law............................................................................................................ 16

1.    Plaintiff Cannot Establish a Prima Facie Case of Medical Leave Discrimination .................................................................... 17

2.    Defendant Terminated Plaintiff for a Legitimate, Non-Discriminatory Reason ....................................................... 18

3.    There is No Evidence of Pretext........................................... 18

D.    Plaintiff's Third Cause of Action for Medical Leave Retaliation in Violation of California Government Code Section 12945.2 Fails as a Matter of Law ............ 19

E.    Plaintiff's Fourth Cause of Action for Disability Discrimination Fails as a Matter of Law ...................................................................................... 20

F.    Plaintiff's Fifth Cause of Action for Retaliation for Requesting and Using Accommodations for Disabilities Fails as a Matter of Law ................................... 21

G.    Plaintiff's Sixth Cause of Action for Failure to Engage in a Timely, Good Faith, Interactive Process to Determine Reasonable Accommodation for Disability Fails as a Matter of Law.................................................................. 21

H.    Plaintiff's Seventh Cause of Action for Failure to Reasonably Accommodate Disabilities Fails as a Matter of Law ................................................................. 22

1.    Plaintiff Did Not Suffer From a Disability as Defined Under the Fair Employment and Housing Act ............................................. 23

2.    Plaintiff Never Requested Any Accommodation ......................................... 23

I.    Plaintiff's Eighth Cause of Action for Discrimination Based on Race Fails as a Matter of Law ..................................................................................... 24

1.    Plaintiff Cannot Establish a Prima Facie Case of Racial Discrimination...... 24

2.    Plaintiff was Terminated for a Legitimate, Non-Discriminatory Reason...... 24

3.    There is No Evidence of Pretext................................................. 25

J.    Plaintiff's Ninth Cause of Action for Opposing Violations of the Fair Employment and Housing Act Fails as a Matter of Law ......................................... 25

K.    Plaintiff's Tenth Cause of Action for Wrongful Termination in Violation of Public Policies Fails as a Matter of Law ................................................................ 26

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

3

1:20-CV-00890-AWI-SAB

# TABLE OF CONTENTS
(CONTINUED)

IV.    CONCLUSION ............................................................................................................ 27

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA  93704.2225
559.244.7500

1:20-CV-00890-AWI-SAB

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) .......................................................................................................... 14

Beal Bank, SSB v. Pittorino,
  177 F.3d 65 (1st Cir. 1999) .............................................................................................. 14

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) .......................................................................................................... 13

Crosier v. United Parcel Service, Inc.,
  150 Cal.App.3d 1132 (1983).............................................................................................. 25

Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,
  902 F.2d 174 (2nd Cir. 1990)............................................................................................. 14

Dudley v. Department of Transportation,
  90 Cal.App.4th 255 (2001) ................................................................................................ 19

Faust v. California Portland Cement Co.,
  150 Cal.App.4th 864 (2007) .............................................................................................. 20

Fernandez v. West Hills Hosp. & Medical Center
  (Cal. Ct. App., July 3, 2008, No. B198416) 2008 WL 2612498 ...................................... 17, 18

Gantt v. Sentry Ins.,
  1 Cal.4th 1083 (1992).......................................................................................................... 26

Guz v. Bechtel National, Inc.,
  24 Cal.4th 317 (2000).......................................................................................................... 24, 25

Hanson v. Lucky Stores, Inc.,
  74 Cal.App.4th 215 (1999) ................................................................................................ 26

Hersant v. Dep't of Soc. Serv.,
  57 Cal.App.4th 997 (1997) ................................................................................................ 25

Hodgens v. General Dynamics Corp.,
  144 F.3d 151 (1st Cir. 1998).............................................................................................. 19

Joaquin v. City of Los Angeles,
  202 Cal.App.4th 1207 (2012)............................................................................................. 24

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
  475 U.S. 574.......................................................................................................................... 14

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

Mokler v. County of Orange,
  157 Cal.App.4th 121 (2007) ..................................................................................15, 16

Moore v. Regents of Univ. of Cal.,
  248 Cal.App.4th 216 (2016) ..................................................................................19, 21

Muller v. Automobile Club of Southern California,
  61 Cal.App.4th 431 (1998) .........................................................................................26

Neisendorf v. Levi Strauss & Co.,
  143 Cal.App.4th 509 (2006) .......................................................................................19

Richey v. AutoNation, Inc.,
  60 Cal.4th 909 (2015).................................................................................................16

Sanders v. Arneson Products,
  91 F.3d 1351 (9th Cir. 1996)......................................................................................26

Saucedo v. Victoria's Secret Stores,
  H045736 (Cal. Ct. App. Apr. 24, 2020) .....................................................................22

Scotch v. Art Institute of California-Orange County, Inc.,
  173 Cal.App.4th 986 (2009) ..................................................................................22, 23

Soria v. Univision Radio Los Angeles, Inc.,
  5 Cal.App.5th 570 (2016) ...........................................................................................22

Stevenson v. Superior Court,
  16 Cal.4th 880 (1997).................................................................................................26

Throneberry v. McGehee Desha County Hosp.,
  403 F.3d 972 (8th Cir. 2005).......................................................................................19

TRW, Inc. v. Superior Court,
  25 Cal.App.4th 1834 (1994) .......................................................................................26

Wang Laboratories, Inc. v. Mitsubishi Electronics, America, Inc.,
  860 F.Supp. 1448 (C.D. Cal. 1993).............................................................................14

Yanowitz v. L'Oreal USA, Inc.,
  36 Cal.4th 1028 (2005)...............................................................................................21

**Statutes**

Cal. Code Regs. § 11065(d)(9)(b)..........................................................................20, 23

Cal. Gov't Code § 12940(m) .....................................................................................22

Cal. Gov't. Code § 12940(m)(2)................................................................................21

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively,
MSA

6

1:20-CV-00890-AWI-SAB

Cal. Gov't Code § 12940(n) ...................................................................................22

Cal. Gov't Code § 12945.2 ....................................................................... 16, 17, 19

Cal. Gov't Code § 12945.2(b)(4)(c) .......................................................................17

Cal. Gov't Code § 12945.2(b)(12) ..........................................................................17

Cal. Lab. Code §§ 1102.5 & 1102.6 ................................................................14, 15

Gov. Code, § 12940, subd. (h) ................................................................................25

**Other Authorities**

Fed. R. Civ. P. 56(a),(b),(c) ...................................................................................14

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA

7

1:20-CV-00890-AWI-SAB

Defendant MASTEC NETWORK SOLUTIONS, INC. ("Defendant") hereby submits the following Memorandum of Points and Authorities in Support of its Motion for Summary Judgment, or Alternatively, Summary Adjudication ("Defendant's Motion").

## I.    INTRODUCTION

Defendant is a is a telecommunications company which provides turnkey solutions for telecom operators and engages in other telecommunications projects. Plaintiff GREGG LEE FOSHEE, JR. ("Plaintiff") worked for Defendant and its predecessor as a Construction Manager and Foreman for almost six years until Defendant terminated Plaintiff's employment after Defendant's client observed Plaintiff in a lift without wearing a hard hat, and observed Plaintiff's crew on the jobsite without wearing hard hats, forcing the client to shut down the job site.

Plaintiff alleges that Defendant terminated his employment for various unlawful reasons. However, as detailed below, Plaintiff's claims are meritless. There is no evidence linking Plaintiff's termination to his race or alleged disability. Rather, Defendant terminated Plaintiff's employment solely because Plaintiff committed serious safety violations that were reported by Defendant's customer. In fact, Plaintiff admits that he was terminated because he was caught up in a lift without wearing a hard hat. Plaintiff cannot establish that the reason for his termination was pretextual. Therefore, summary judgment must be entered in Defendant's favor.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's Initial Employment with Defendant

Defendant is a is a telecommunications company which provides turnkey solutions for telecom operators and engages in other telecommunications projects. (Joint Statement of Undisputed Facts in Support of Defendant MasTec Network Solutions, Inc.'s Motion for Summary Judgment, or Alternatively, Summary Adjudication ["JSUF"] ¶ 1.) Plaintiff began working for Defendant's predecessor, WesTower Communications, Inc. ("WesTower") on December 2, 2013. (JSUF ¶ 2.) Plaintiff continued working for Defendant after Defendant acquired WesTower. (JSUF ¶ 3.) Plaintiff worked for Defendant as a Foreman until he was promoted to a Construction Manager in about March 2019. (Defendant's Separate Statement of Undisputed Material Facts in Support of Motion for Summary Judgment, or Alternatively, Summary Adjudication ["SUMF"] ¶ 1.)

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA                    8                    1:20-CV-00890-AWI-SAB

**B.**    **Plaintiff Did Not Inform Defendant of His Dual Ear Infection Until After He Failed to Appear for His Scheduled Shift on April 18, 2019**

On April 18, 2019, Plaintiff failed to appear for his scheduled shift. (SUMF ¶ 2.) Plaintiff's Project Manager, Miguel Galvez ("Galvez"), and Operations Manager, Joseph Ecklind ("Ecklind"), attempted to contact Plaintiff yet they were unable to reach him. (SUMF ¶ 3.) As a result, Galvez emailed Plaintiff advising him that he would be written up because he did not call in or appear for his shift. (SUMF ¶ 4.) Once Plaintiff received this email, he called Galvez and explained that he was receiving medical care for a dual ear infection. (SUMF ¶ 5.) Plaintiff and Galvez had a verbal disagreement over the phone regarding Plaintiff's failure to appear for work. (SUMF ¶ 6.) Plaintiff's Project Manager, Justin Barrie ("Barrie") met with Galvez and Plaintiff over the phone to work through their disagreement. (SUMF ¶ 7.) Ultimately, Barrie, Galvez, and Plaintiff resolved the conflict, and Plaintiff was not disciplined for his failure to call in or appear for work. (SUMF ¶ 8.)

**C.**    **Plaintiff Was Released to Work Two Days Later with No Restrictions, and Did Not Suffer from Any Other Medical Condition Requiring Any Accommodation**

Plaintiff returned to work on April 20, 2019 with no restrictions. (SUMF ¶ 9.) However, Plaintiff voluntarily chose to return to work on April 19, 2019. (SUMF ¶ 10.) Plaintiff never requested any accommodation or leave for his dual ear infection or any other medical condition. (SUMF ¶ 11.) Plaintiff admits that aside from this time off to heal from his dual ear infection, he did not need any accommodations to do his job. (SUMF ¶ 12.) Plaintiff did not have any other medical condition that impacted his ability to do his job during his employment at Defendant. (SUMF ¶ 13.)

**D.**    **Plaintiff's Manager Fought for Plaintiff to Retain His Higher Rate of Pay When Plaintiff Voluntarily Requested a Demotion**

Just a few months after his promotion to Construction Manager Plaintiff voluntarily requested to return to his position as a Foreman. (SUMF ¶ 14.) On June 17, 2019, Plaintiff emailed Ecklind "requesting to step back down to a foreman roll [sic]," because "timing and life is playing a big roll [sic] in this interest but I think it is the best decision for everyone at this time. I want our team to win and this is just what's best right now." (SUMF ¶ 15.)

/ / /

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA                    9                    1:20-CV-00890-AWI-SAB

1    Even though Plaintiff voluntarily requested his demotion back down to a Foreman,

2    Barrie fought for Plaintiff to retain his higher rate of pay because of Plaintiff's management

3    experience. (SUMF ¶ 16.) Accordingly, effective July 6, 2019, Plaintiff returned to his position as a

4    Foreman at a rate of $32.00 per hour, rather than the rate of $28.91 per hour he previously earned as a

5    Foreman just a few months earlier. (SUMF ¶ 17.)

6    **E.**     **On September 25, 2019, Defendant's Client Observed Plaintiff on a Man Lift
            Without a Hard Hat, and Plaintiff's Crew on the Job Site Without Hard Hats**

7

8            On September 25, 2019, one of Defendant's clients notified Defendant that they

9    observed several issues at Plaintiff's job site. (SUMF ¶ 18.) Specifically, the client reported that they

10   arrived on the site at 10:15 AM and the crew was not yet on site. (SUMF ¶ 19.) The client returned

11   about 30 minutes later and went over the client's policies and requirements with the crew. (SUMF ¶

12   20.) The client left the crew with a warning. (SUMF ¶ 21.) Later that day, the client passed by the job

13   site again and observed Plaintiff in a man lift without a hard hat, at which point the decision was made

14   to shut down the site. (SUMF ¶ 22.) The client also reported that all of Plaintiff's crew were on site

15   without hard hats on nor in the vicinity. (SUMF ¶ 23.) The client advised Defendant that all of its

16   policies must be followed. (SUMF ¶ 24.) The client sent Defendant photographs clearly showing

17   Plaintiff up in the man lift without a hard hat. (SUMF ¶ 25.)

18   **F.**     **Plaintiff's Managers Fought for Plaintiff to Receive a Performance
            Improvement Plan in Lieu of Termination**

19

20           Following Plaintiff's safety violations, Ecklind and Barrie pushed for Plaintiff to be

21   placed on a performance improvement plan, instead of terminating his employment. (SUMF ¶ 26.)

22   However, after speaking with Windy Cox ("Cox") of Human Resources, it became clear that

23   Plaintiff's safety violations as a Foreman warranted termination, given that the client caught Plaintiff

24   violating policy multiple times in one day, ultimately had to shut down the site, and submitted

25   photographic evidence of Plaintiff in the man lift without a hard hat. (SUMF ¶ 27.) Therefore, Cox

26   recommended terminating Plaintiff's employment based solely upon his safety violations and the

27   position that he held. (SUMF ¶ 28.) After receiving Cox's recommendation, Barrie and Ecklind agreed

28   to move forward with Plaintiff's termination. (SUMF ¶ 29.)

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively,
MSA                                    10                        1:20-CV-00890-AWI-SAB

### G. Defendant Terminated Plaintiff's Employment on September 30, 2019 for His Safety Violations

On September 30, 2019, Defendant terminated Plaintiff's employment for his failure to enforce and follow safety protocol by not wearing a hard hat while in the man lift, and for allowing his team on the job site without hard hats. (SUMF ¶ 30.) Plaintiff admits that he was terminated "because of [his] not having a hard hat on" and that Defendant's client, "took a picture of that, and, yeah, and that's – I was terminated because of it." (SUMF ¶ 31.)

### H. Windy Cox Based Her Termination Recommendation Solely Upon Plaintiff's Safety Violations

In her role with Human Resources, Cox had access to Defendant's general demographic information. (SUMF ¶ 32.) However, she did not specifically know the demographics of Plaintiff's location by memory. (SUMF ¶ 33.) Moreover, Cox did not personally know Plaintiff at the time she recommended his termination. (SUMF ¶ 34.) Cox's recommendation to terminate Plaintiff was based solely on the severity of his safety violations as a Foreman. (SUMF ¶ 35.)

### I. Defendant Maintained a Zero-Tolerance Policy Against Discrimination, Harassment, and Retaliation

Throughout Plaintiff's employment, Defendant maintained a "zero-tolerance policy for unlawful discrimination, harassment or retaliation and will not tolerate any such conduct." (SUMF ¶ 36.) Defendant's policy specifically provides that:

> "MasTec provides equal employment opportunities to all qualified individuals without regard to race, color, … national origin, … disability or any other basis or characteristic protected by applicable law. MasTec is also committed to providing a work environment free of harassment on the basis of race, color, national origin … or disability or any other characteristic protected by applicable law. It is the responsibility of each and every employee to report unlawful harassment or discrimination when it occurs-whether they are a victim of, or a witness to, unlawful behavior. Employees will be protected from retaliation for opposing unlawful discriminatory practices when they report, in good faith, unlawful harassment or discrimination.
>
> Reports of unlawful harassment, discrimination or retaliation can be made to your Human Resources contact or by contacting **Convercent** (formerly **MySafeWorkplace).** Human Resources will investigate all

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA

11

1:20-CV-00890-AWI-SAB

allegations of unlawful harassment and discrimination promptly, impartially and in a confidential manner. If the Company determines that unlawful harassment, discrimination or retaliation has occurred, it will take prompt and effective remedial action."

(Emphasis in original.) (SUMF ¶ 37.)

**J.  Defendant Maintained a Reasonable Accommodation Policy**

Throughout Plaintiff's employment, Defendant also maintained a Reasonable Accommodation Policy. (SUMF ¶ 38.)  Defendant's policy states that:

"To comply with applicable laws ensuring equal employment opportunities to individuals with disabilities (even if in remission or ameliorated), MasTec will make reasonable accommodations for the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee unless undue hardship and/or a direct threat to the health and/or safety of the individual or others would result. Any applicant or employee who requires an accommodation in order to perform the essential functions of the job should contact your Human Resources Contact and request such an accommodation in writing."

(SUMF ¶ 39.)

**K.  Defendant Maintained Complaint Procedures for Complaints of Discrimination, Mistreatment, and Substance Abuse**

At all relevant times, Defendant maintained procedures for complaints of discrimination, mistreatment, and substance abuse. (SUMF ¶ 40.)  Employees were advised to report suspected harassment or discrimination to their Human Resources Contact, or by using the online portal Convercent. (SUMF ¶ 41.)  As the handbook provides, "Convercent . . . is a 24-hour incident reporting hotline. Convercent allows you to make reports on a wide variety of topics, including, but not limited to, reports of accounting irregularities, fraud, theft, unsafe working conditions, harassment, **discrimination, mistreatment** . . . safety violations, **substance abuse** or threats of violence." (Emphasis added.) (SUMF ¶ 42.)

Additionally, Defendant's Open Door Policy instructed employees to speak with their immediate supervisor to address work-related issues. (SUMF ¶ 43.)  However, if an employee felt uncomfortable speaking directly with their supervisor, they could meet directly with their department's

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

manager, Human Resources Contact, general manager, or other appropriate management personnel. (SUMF ¶ 44.) Employees could also report issues through Defendant's hotline, Convercent. (SUMF ¶ 45.)

**L.    Defendant Maintained a Strict Policy Against Drug Use**

During Plaintiff's employment, Defendant strictly prohibited the use of drugs and alcohol in the workplace. (SUMF ¶ 46.)  As detailed above, employees were advised to report any substance abuse through Convercent. (SUMF ¶ 47.)  Pursuant to Defendant's Open Door Policy, employees could also report substance abuse issues to their appropriate managers or their Human Resources Contact. (SUMF ¶ 48.)

**M.    Plaintiff Never Complained of or Threatened to Report Drug Use**

During his employment, Plaintiff never made, or threatened to make, any formal complaint with Defendant or any other entity regarding alleged drug use. (SUMF ¶ 49.)  The only "complaints" Plaintiff alleges to have made regarding the alleged drug use were to his co-workers, simply stating that the alleged drug users did not do anything and were making his job difficult. (SUMF ¶ 50.)  Barrie testified that Plaintiff never expressed to him any concern regarding drinking or drug use at work, or that he wanted to step down from his position as a Construction Manager because of the alleged drinking and drug use. (SUMF ¶ 51.) Galvez also testified that Plaintiff never reported any alleged drinking or drug use to him. (SUMF ¶ 52.)

**N.    Plaintiff Never Complained of Racial Discrimination During His Employment**

During his employment, Plaintiff never complained of any unfair treatment or discrimination based upon his race. (SUMF ¶ 53.)  Plaintiff alleges that he did not receive support from his managers, however none of Plaintiff's allegations are tied to his race. (SUMF ¶ 54.)

**III.    LEGAL ARGUMENT**

**A.    Standard for Summary Judgment and Summary Adjudication**

Summary judgment is regarded not as a disfavored procedural shortcut, but as an integral part of the Federal Rules designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  Under Federal Rule of Civil Procedure 56, judgment "shall be rendered forthwith if the pleadings, depositions, answers to

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA

13

1:20-CV-00890-AWI-SAB

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Rule is clear in "provid[ing] that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

In response to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586(1986). In making the necessary showing, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 178 (2nd Cir. 1990). A "genuine" dispute over a material fact arises only where it can be said the evidence would allow a reasonable jury to find in favor of the non-moving party. Liberty Lobby, 477 U.S. at 248. If the non-moving party fails to present specific facts showing there is a triable issue, summary judgment must be granted. See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322.

Additionally, the standard for summary adjudication (or partial summary judgment) is the same as that for summary judgment. Upon a showing that there is no genuine issue of material fact as to particular claim(s) or defense(s), the court may grant summary judgment in the party's favor "on all or part thereof." Fed. R. Civ. P. 56(a),(b); see Beal Bank, SSB v. Pittorino, 177 F.3d 65, 68 (1st Cir. 1999); Wang Laboratories, Inc. v. Mitsubishi Electronics, America, Inc., 860 F.Supp. 1448, 1450 (C.D. Cal. 1993) (citing text). Applying this standard to the undisputed material facts and the law, the Court must grant Defendant's Motion in its entirety.

### B. Plaintiff's First Cause of Action for Whistleblower Retaliation Fails as a Matter of Law

To establish a *prima facie* case of whistleblower retaliation under California Labor Code sections 1102.5 & 1102.6, Plaintiff must show (1) that he engaged in a protected activity, (2) Defendant subjected Plaintiff to an adverse employment action, and (3) there is a causal link between

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA

14

1:20-CV-00890-AWI-SAB

the protected activity and the adverse employment action. <u>Mokler v. County of Orange</u>, 157 Cal.App.4th 121, 138 (2007).

Plaintiff's claim for whistleblower retaliation appears to be based upon his allegations that he had knowledge of drug and alcohol use by managers Barrie, Galvez, and Ecklind, and that he told Barrie that he stepped down from his Construction Manager position because of the alleged drinking and drug use. (Declaration of Julie R. Campos in Support of Defendant's Motion for Summary Judgment, or Alternatively, Summary Adjudication ["Campos Decl."] ¶ 2, Ex. A, ¶ 17-19.) However, Plaintiff's claims are without merit.

### 1. Plaintiff Never Engaged in a Protected Activity

Plaintiff cannot establish a claim for whistleblower retaliation, because he never made any complaints regarding Defendant's conduct that are protected under California Labor Code sections 1102.5 and 1102.6. (SUMF ¶ 14-16, 49-53.) Section 1102.5(b) prohibits an employer for retaliating against an employee for disclosing information to a government or law enforcement agency or "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation. . ." if the employee has reasonable cause to believe the information discloses a violation of a state or federal statute or regulation. Plaintiff admits that he never made any formal complaint regarding the alleged drug use by Defendant's managers. (SUMF ¶ 50.) The only "complaints" Plaintiff alleges to have made regarding the alleged drug use were to his co-workers, simply stating that the alleged drug users did not do anything and were making his job difficult. (SUMF ¶ 49-50.) These "complaints" do not qualify as protected activity under section 1102.5.

Furthermore, there is no evidence that Plaintiff ever threatened to report Defendant to a government or law enforcement agency, or that Defendant believed Plaintiff would do so. (SUMF ¶ 49-53.) Barrie testified that Plaintiff never expressed to him any concern regarding drinking or drug use at work, or that he wanted to step down from his position as a Construction Manager because of the alleged drinking and drug use. (SUMF ¶ 51.) Galvez also testified that Plaintiff never reported any alleged drinking or drug use to him. (SUMF ¶ 52.)

Plaintiff's allegation that he stepped down from his Construction Manager position because of the alleged drinking and drug use is unsupported by the evidence. (SUMF ¶ 14-16, 49-52.)

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA                    15                    1:20-CV-00890-AWI-SAB

Plaintiff admitted at his deposition that he stepped down from his Construction Manager position because it was "too difficult" and because "timing and life [was] playing a big role…" (SUMF ¶ 14-15.) It is clear that Plaintiff's choice to step down from his Construction Manager role had nothing to do with his alleged knowledge of drug and alcohol use at work.

### 2. Plaintiff Cannot Establish a Causal Link Between His Alleged Protected Activity and His Termination

Even assuming that Plaintiff could establish a *prima facie* case of whistleblower retaliation, Defendant has a legitimate, non-retaliatory reason for his termination, and Plaintiff cannot create a triable issue that the reason was a "pretext." See <u>Mokler</u>, 157 Cal.App.4th at 138. It is undisputed that Plaintiff was terminated because he committed a major safety violation when he went up in a lift without a hard hat on, and allowed his crew on the job site without hard hats on. (SUMF ¶ 18-31, 35.) Plaintiff testified that he was terminated "because of [his] not having a hard hat on" and that Defendant's client, "took a picture of that, and, yeah, and that's – I was terminated because of it." (SUMF ¶ 31.)

Further, Cox testified that she based her decision to terminate Plaintiff's employment on Plaintiff's reported safety violations – violations supported by photographs submitted by Defendant's client. (SUMF ¶ 18-25, 28, 30, 35.) There is no evidence that Cox was aware of any complaints by Plaintiff about any unlawful activity when Cox made the termination decision. (SUMF ¶ 49, 53.) Nor is there any evidence that at the time the termination decision was made, that Cox was aware that Plaintiff had taken time off for an ear infection months prior. (SUMF ¶ 8, 10-11.)

### C. Plaintiff's Second Cause of Action for Medical Leave Discrimination in Violation of California Government Code Section 312945.2 Fails as a Matter of Law

Plaintiff's claim for medical leave discrimination is based upon the California Family Rights Act ("CFRA"). (Campos Decl., ¶ 2, Ex. A, ¶ 38.) The CFRA prevents employers from retaliating or discriminating against employees or otherwise taking action against employees for exercising their right to leave under the Act. Cal. Gov't Code § 12945.2; <u>Richey v. AutoNation, Inc.</u>, 60 Cal.4th 909, 920 (2015). The Act makes it an unlawful employment practice for an employer to "refuse to grant a request . . . for family care and medical leave" for employees with more than 12

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA

16

1:20-CV-00890-AWI-SAB

months of service, and who have 1,250 hours of service with the employer during the 12-month period. (*Id.*).

CFRA defines "family care and medical leave" as "leave because of an employee's own serious health condition that makes the employee unable to perform the functions of the position of that employee, except for leave taken for disability on account of pregnancy, childbirth, or related medical conditions." Cal. Gov't Code § 12945.2(b)(4)(c). A "serious health condition" is further defined as "an illness, injury, impairment, or physical or mental condition that involves either of the following: (A) inpatient care in a hospital, hospice, or residential health care facility; Or (B) Continuing treatment or continuing supervision by a health care provider." Cal. Gov't Code § 12945.2(b)(12).

Plaintiff alleges that Defendant "discouraged Plaintiff from taking and denied Plaintiff medical leave from work in violation of Government Code section 12945.2, in part by terminating Plaintiff's employment to prevent Plaintiff from taking medical leave from work in the future." (Campos Decl., ¶ 2, Ex. A, ¶ 38.) Plaintiff's allegations arise out of his April 18, 2019 ear infection. (Campos Decl., ¶ 2, Ex. A, ¶ 25.)

### 1. Plaintiff Cannot Establish a *Prima Facie* Case of Medical Leave Discrimination

In order to make a *prima facie* showing of medical leave discrimination, Plaintiff must show that: (1) Defendant is an employer covered by the CFRA; (2) that Plaintiff is an employee eligible to take CFRA; (3) that Plaintiff exercised his right to take leave for a qualifying purpose; and (4) that Plaintiff suffered an adverse employment action, such as termination because of his exercise of his right to CFRA leave. Fernandez v. West Hills Hosp. & Medical Center (Cal. Ct. App., July 3, 2008, No. B198416) 2008 WL 2612498, at *6.

Here, Plaintiff can only meet the first element. Plaintiff fails to meet the second element because he is not an employee eligible to take CFRA because he did not have a "serious health condition" as defined in the Act. Plaintiff's April 18, 2019 appointment for a dual ear infection, did not entitle him to CFRA leave because he did not receive "inpatient care" and he did not receive "continuing treatment or continuing supervision by a health care provider." (SUMF ¶ 5, 9.) Plaintiff

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA

17

1:20-CV-00890-AWI-SAB

was treated for a dual ear infection on April 18, 2019 and was released to return to work two days later on April 20, 2019 with no limitations. (SUMF ¶ 9.)

In addition, Plaintiff cannot meet the third element because he did not exercise his right to take leave. (SUMF ¶ 9-13.) Plaintiff returned to work the very next day after receiving treatment, even though he was excused from work for two days. (SUMF ¶ 9-11.) Plaintiff never requested leave related to his April 18, 2019 ear infection. (SUMF ¶ 11-13.)

Plaintiff cannot meet the fourth element because he cannot show that his termination is connected in any way to taking CFRA leave. As detailed above, Plaintiff never took CFRA leave. (SUMF ¶ 9-13.) Additionally, Plaintiff received treatment for his ear infection more than five months before he was terminated, further dispelling any notion that his termination is connected to his ear infection. (SUMF ¶ 5, 9, 30.)

### 2. Defendant Terminated Plaintiff for a Legitimate, Non-Discriminatory Reason

Even if Plaintiff can somehow meet his *prima facie* case (which he cannot) the Court must still consider whether Defendant can show evidence that Plaintiff was terminated for legitimate, nondiscriminatory reasons. "An employee's failure to adhere to performance standards set by an employer constitutes a legitimate business reason for termination of employment." Fernandez, (Cal. Ct. App., July 3, 2008, No. B198416) 2008 WL 2612498, at *6 *citing to* Dudley v. Department of Transportation, 90 Cal.App.4th 255, 261 (2001). Here, there is simply no dispute that Plaintiff was observed by Defendant's client in a man lift without a hard hat. (SUMF ¶ 18-25, 31.) Plaintiff admits that this was the reason for his termination. (SUMF ¶ 31.) It is also undisputed that Defendant's client reported that they observed Plaintiff's crew on the job site without wearing hard hats. (SUMF ¶ 23.) It is therefore clear that Plaintiff was terminated for a legitimate, non-discriminatory reason.

### 3. There is No Evidence of Pretext

When an employee offers evidence of pretext, "an employee cannot simply show that the employer's decision was wrong or mistaken . . . Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's preferred legitimate reasons for its action that a reasonable factfinder could rationally find them

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA

18

1:20-CV-00890-AWI-SAB

'unworthy of credence' and hence infer 'that the employer did not act for the [asserted] nondiscriminatory reasons.'" Moore v. Regents of Univ. of Cal., 248 Cal.App.4th 216, 235 (2016) (internal ellipsis and citation omitted). Here, Plaintiff admits that he was terminated because Defendant's client caught him up in a lift without a hard hat. (SUMF ¶ 31.) Defendant's client also reported that they observed that Plaintiff's crew was also not wearing hard hats on the job site. (SUMF ¶ 23.) Given these facts, Plaintiff is unable to show any evidence of pretext.

### D. Plaintiff's Third Cause of Action for Medical Leave Retaliation in Violation of California Government Code Section 12945.2 Fails as a Matter of Law

To state a cause of action for retaliation in violation of CFRA, Plaintiff must establish: (1) Defendant is an employer covered by the CFRA; (2) Plaintiff is an employee eligible to take CFRA leave; (3) Plaintiff exercised a right to take leave for a qualifying CFRA purpose; and (4) Plaintiff suffered an adverse employment action because he exercised that right. Dudley v. Department of Transp., 90 Cal.App.4th 255, 261 (2001), *relying on* Hodgens v. General Dynamics Corp., 144 F.3d 151, 161 (1st Cir. 1998) (defining elements for retaliation in violation of FMLA). Critically, where the defendant provides a legitimate, non-discriminatory reason for the employment decision, the plaintiff will be unable to state a claim for violation of CFRA. See Neisendorf v. Levi Strauss & Co., 143 Cal.App.4th 509, 520 (2006), *citing* Arban v. West Pub. Corp., 345 F.3d 390, 401 (6th Cir. 2003) ("An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave.") and Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 979 (8th Cir. 2005) ("As long as an employer can show a lawful reason, *i.e.*, a reason unrelated to an employee's exercise of FMLA rights, for not restoring an employee on FMLA leave to her position, the employer will be justified to interfere with an employee's FMLA leave rights.")

For the same reasons as set forth above with regard to Plaintiff's medical leave discrimination claim, Plaintiff is unable to establish a *prima facie* case of medical leave retaliation, and it is clear that Defendant had a legitimate, non-retaliatory reason for Plaintiff's termination.

/ / /

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704-2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA

19

1:20-CV-00890-AWI-SAB

(SUMF ¶ 5, 9-13, 18-31.) Additionally, as described above, there is no evidence of pretext. (SUMF ¶ 8, 18-31.) Therefore, Plaintiff's claim for medical leave retaliation fails as a matter of law.

**E.      Plaintiff's Fourth Cause of Action for Disability Discrimination Fails as a Matter of Law**

To establish a *prima facie* case of discrimination on grounds of physical disability under the FEHA, plaintiff must show that he: (1) suffers from a disability; (2) is otherwise qualified to do the job; and (3) was subjected to an adverse employment action because of the disability.  Faust v. California Portland Cement Co., 150 Cal.App.4th 864, 886 (2007). Under the FEHA, "'[d]isability' **does not include**: (B) **conditions that are mild**, which do not limit a major life activity, as determined on a case-by-case basis. These excluded conditions have **little or no residual effects**, such as the common cold; seasonal or common influenza; minor cuts, sprains, muscle aches, soreness, bruises, or abrasions; non-migraine headaches, and minor and non-chronic gastrointestinal disorders." 2 Cal. Code Regs. § 11065(d)(9)(b) (emphasis added).

Here, Plaintiff only suffered from a dual ear infection, which is clearly not a "disability" under the FEHA. 2 Cal. Code Regs. §11065(d)(9)(b); (SUMF ¶ 9-13.) It is undisputed that Plaintiff was released to return to work with no restrictions just *two days* after he received treatment for his ear infection. (SUMF ¶ 9.) In fact, Plaintiff chose to return to work the very next day. (SUMF ¶ 10.) It is further undisputed that Plaintiff did not suffer from any other medical condition that affected his ability to work. (SUMF ¶ 13.) It is clear that Plaintiff's ear infection is a "mild" condition which had "little or no residual effects" and therefore is not considered a "disability" under the FEHA. 2 Cal. Code Regs. § 11065(d)(9)(b).

Additionally, as demonstrated above, Plaintiff cannot show that he was terminated *because of* his ear infection. (SUMF ¶ 8-13, 18-31, 35.) Plaintiff's termination had nothing to do with his ear infection. (SUMF ¶ 18-31, 35.) It is undisputed that Plaintiff was terminated because Defendant's client observed Plaintiff commit several safety violations as a Foreman, which required the client to shut down the job site. (SUMF ¶ 18-31, 35.)

/ / /

/ / /

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA

20

1:20-CV-00890-AWI-SAB

Plaintiff cannot provide any evidence to show that this legitimate, nondiscriminatory reason for termination was pretextual. (SUMF ¶ 8-13, 18-31, 35.) Therefore, Plaintiff's claim for disability discrimination fails as a matter of law.

**F.      Plaintiff's Fifth Cause of Action for Retaliation for Requesting and Using Accommodations for Disabilities Fails as a Matter of Law**

To make out a claim for retaliation for requesting and using accommodations for disabilities, Plaintiff must show that (1) he engaged in a protected activity, (2) he was subjected to an adverse employment action, and (3) there is a causal link between the protected activity and adverse employment action. <u>Yanowitz v. L'Oreal USA, Inc.</u>, 36 Cal.4th 1028, 1042 (2005). Under the FEHA, it is unlawful for an employer to "retaliate or otherwise discriminate against a person for requesting accommodation . . . regardless of whether the request was granted." Cal. Gov't. Code § 12940(m)(2). Here, Plaintiff *never requested* an accommodation of any type. (SUMF ¶ 11.)

Plaintiff notified Galvez about his ear infection after visiting the doctor. (SUMF ¶ 5.) However, that conversation does not constitute a protected activity because merely notifying your employer about a medical issue does not constitute a protected activity under FEHA. <u>Moore v. Regents of University of California</u>, 248 Cal.App.4th 216, 247 (2016) (dismissing claim on summary judgment because Plaintiff "offered no authority to support her contention that an employee's notifying his or her employer of a medical issue that may be a disability under the statute constitutes 'protected activity' on which a FEHA retaliation claim may rest."). Although "a request for leave can be considered a request for an accommodation under FEHA," <u>Moore</u>, 248 Cal.App.4th at 243, Plaintiff simply never requested to take leave, and thus never requested an accommodation. (SUMF ¶ 8-13.)

Additionally, there is no causal link between any protected activity and Plaintiff's termination. The evidence overwhelmingly shows that Plaintiff was terminated because he went up in a lift without a hard hat, was caught with his crew on site without hard hats, and caused Defendant's client to have to shut down the job site. (SUMF ¶ 18-31, 35.)

**G.      Plaintiff's Sixth Cause of Action for Failure to Engage in a Timely, Good Faith, Interactive Process to Determine Reasonable Accommodation for Disability Fails as a Matter of Law**

/ / /

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA                    21                    1:20-CV-00890-AWI-SAB

Under FEHA, an employer is required "to make reasonable accommodation for the **known** physical or mental disability of an . . . employee" and requires the employer to "engage in a timely, good faith interactive process with the employee . . . **in response to a request for reasonable accommodation by an employee . . . with a known . . . disability**." Cal. Gov't Code § 12940(n) (emphasis added). "Typically, the employee must initiate the process 'unless the disability and resulting limitations are obvious.'" Soria v. Univision Radio Los Angeles, Inc., 5 Cal.App.5th 570, 600 (2016). "When a claim is brought for failure to reasonably accommodate the claimant's disability, the trial court's ultimate obligation is to isolate the cause of the breakdown . . . and then assign responsibility so that liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown." Saucedo v. Victoria's Secret Stores, H045736, at *18 (Cal. Ct. App. Apr. 24, 2020) (internal citations and brackets omitted).

Plaintiff cannot establish a claim for failure to engage in the interactive process, because he never initiated the interactive process. (SUMF ¶ 9-13.) It is undisputed that Plaintiff never requested any accommodation for his ear infection or any other medical condition. (SUMF ¶ 11.) Plaintiff was released to return to work with no restrictions two days after he received treatment for his ear infection. (SUMF ¶ 9.) Plaintiff chose to return to work after only one day off. (SUMF ¶ 10.) Plaintiff admits that beyond this short time off for his ear infection, he did not need any accommodation in order to do his job. (SUMF ¶ 12.) Therefore, Plaintiff's claim for failure to engage in the interactive process fails as a matter of law.

## H. Plaintiff's Seventh Cause of Action for Failure to Reasonably Accommodate Disabilities Fails as a Matter of Law

Plaintiff's Complaint alleges that Defendant failed to accommodate Plaintiff's disability or perceived disability. Under the FEHA, employers are required to make reasonable accommodations for the known physical or mental disability of an applicant or an employee. Cal. Gov't Code § 12940(m). "The elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability." Scotch v. Art Institute of California-Orange County, Inc., 173 Cal.App.4th 986, 1009-1010 (2009).

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA

22

1:20-CV-00890-AWI-SAB

1.    **Plaintiff Did Not Suffer From a Disability as Defined Under the Fair Employment and Housing Act**

Under the FEHA, "'[d]isability' does not include: (B) **conditions that are mild**, which do not limit a major life activity, as determined on a case-by-case basis. These excluded conditions **have little or no residual effects**, such as the common cold; seasonal or common influenza; minor cuts, sprains, muscle aches, soreness, bruises, or abrasions; non-migraine headaches, and minor and non-chronic gastrointestinal disorders." 2 Cal. Code Regs. § 11065(d)(9)(b) (emphasis added).

As detailed above, Plaintiff's dual ear infection is **not** a disability under the FEHA. 2 Cal. Code Regs. § 11065(d)(9)(b); (SUMF ¶ 5, 9-13.) It is undisputed that Plaintiff only suffered from a dual ear infection for which he was released to return to work with no limitations after just two days. (SUMF ¶ 5, 9-13.) The fact that Plaintiff chose to return to work the *very next day* after he received treatment of his ear infection shows that his ear infection was a "mild" condition which had "little or no residual effects." 2 Cal. Code Regs. § 11065(d)(9)(b); (SUMF ¶ 9-10.) Plaintiff admits that he did not suffer from any other medical condition which impacted his ability to do his job. (SUMF ¶ 13.)

2.    **Plaintiff Never Requested Any Accommodation**

While the "interactive process" required by FEHA imposes burdens on both the employer and employee, generally speaking, "the initial burden rests primarily on the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." Scotch, 173 Cal.App.4th at 1013. Notably, an employer's awareness of a potential disability does not discharge this obligation, insofar as an employee is required to notify her employer of any limitations caused by a disability—"[t]his distinction is important because the [FEHA] requires employers to reasonably accommodate limitations, not disabilities." Id.

Here, it is undisputed that Plaintiff never requested any accommodation related to his ear infection. (SUMF ¶ 11-13.) Plaintiff was released to return to work with no restrictions two days after he received treatment for his ear infection, and chose to return to work after only one day off. (SUMF ¶ 9-10.) Plaintiff admits that beyond this short time off for his ear infection, he did not need any accommodation in order to do his job. (SUMF ¶ 12.) Therefore, Plaintiff's claim for failure to accommodate fails as a matter of law.

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

I.      **Plaintiff's Eighth Cause of Action for Discrimination Based on Race Fails as a Matter of Law**

To establish a *prima facie* case of employment discrimination under the Fair Employment and Housing Act , Plaintiff must show that he: (1) is a member of a protected class, (2) competently held his position, (3) suffered an adverse employment action because of his protected status, and (4) can identify a circumstance suggesting discriminatory motive. *See* Guz v. Bechtel National, Inc., 24 Cal.4th 317, 355 (2000); Joaquin v. City of Los Angeles, 202 Cal.App.4th 1207, 1220 (2012).

1.      **Plaintiff Cannot Establish a *Prima Facie* Case of Racial Discrimination**

Here, Plaintiff's race claim is wholly unsupported. Plaintiff cannot substantiate his discrimination claim because there is no evidence that he suffered an adverse employment action as a because of his race. Rather, an unbroken chain of events leading to Plaintiff's termination establishes that Plaintiff was terminated because of his safety violation. (SUMF ¶ 18-31, 35.) It is undisputed that Plaintiff was terminated because he committed a major safety violation when he went up in a lift without a hard hat on, and allowed his crew on the job site without hard hats on. (SUMF ¶ 18-31, 35.) Plaintiff admits that he was terminated "because of [his] not having a hard hat on" and that Defendant's client, "took a picture of that, and, yeah, and that's – I was terminated because of it." (SUMF ¶ 31.)

Additionally, there is no evidence suggesting any discriminatory motive by Defendant. (SUMF ¶ 26-28, 32-35.) Plaintiff worked for Defendant and its predecessor for nearly six years, and never reported any incident of discrimination or other unfair treatment based upon his race. (JSUF ¶ 2-3; SUMF ¶ 53-54.) Plaintiff was terminated solely because he committed major safety violations when he went up in a lift without a hard hat, and was caught with his crew on the job site without hard hats on, thereby forcing Defendant's client to shut down the job site. (SUMF ¶ 18-35.) Defendant's client observed these violations and sent Defendant photos of Plaintiff up in the lift without a hard hat on. (SUMF ¶ 18-25.) Plaintiff does not dispute that this was the reason for his termination. (SUMF ¶ 25, 31.) It is clear that Plaintiff's termination had nothing to do with his race.

2.      **Plaintiff was Terminated for a Legitimate, Non-Discriminatory Reason**

Even if Plaintiff can somehow meet his *prima facie* case, it is clear that Plaintiff was

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA

24

1:20-CV-00890-AWI-SAB

terminated for legitimate, nondiscriminatory reasons. There is no dispute that Plaintiff was observed by Defendant's client in a lift without a hardhat. (SUMF ¶ 18-25, 31.) Plaintiff admits that this was the reason for his termination. (SUMF ¶ 25, 31.) It is also undisputed that Defendant's client reported observing Plaintiff's crew on the job site without wearing hard hats. (SUMF ¶ 23.)

### 3. There is No Evidence of Pretext

To prove pretext, Plaintiff must "offer substantial evidence" that Defendant's "stated nondiscriminatory reason for the adverse action was untrue or pretextual . . . such that a reasonable trier of fact could conclude that [Defendant] engaged in intentional discrimination." Hersant v. Dep't of Soc. Serv., 57 Cal.App.4th 997, 1004-1005 (1997). A plaintiff's "suspicions of improper motives" cannot raise a triable issue of fact. Crosier v. United Parcel Service, Inc., 150 Cal.App.3d 1132, 1139 (1983). Nor is it enough for an employee to raise a triable issue concerning the soundness of an employer's action. See Hersant, 57 Cal.App.4th at 1005 (holding that an employee "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute… is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent"). The burden to prove intentional discrimination remains at all times with the Plaintiff. Guz, 24 Cal.4th at 356.

Here, there is no evidence of pretext. Nothing about Defendant's actions raise the slightest inference of a discriminatory motive, based on race, or any other protected status. The decision to terminate Plaintiff's employment was based solely upon his safety violations as a Foreman. (SUMF ¶ 27-35.) Indeed, Plaintiff admits that this was the reason for his termination. (SUMF ¶ 25, 31.) Accordingly, Plaintiff's race discrimination claim fails.

### J. Plaintiff's Ninth Cause of Action for Opposing Violations of the Fair Employment and Housing Act Fails as a Matter of Law

The Fair Employment and Housing Act "protects employees against retaliation . . . for opposing *conduct made unlawful by the Act*." Gov. Code, § 12940, subd. (h). Plaintiff cannot identify a single instance of opposing conduct which FEHA prohibits. (SUMF ¶ 49-54.) As such, Plaintiff will not be able to sustain a cause of action for opposing violations of FEHA because he never opposed conduct prohibited by FEHA. (SUMF ¶ 49-54.)

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA

25

1:20-CV-00890-AWI-SAB

1    As detailed above, even if he can show that he opposed some conduct prohibited by the

2    FEHA, it is clear that Plaintiff was terminated for a legitimate, non-retaliatory reason. It is undisputed

3    that Plaintiff was terminated because Defendant's client caught him committing serious safety

4    violations which forced the client to shut down the job site. (SUMF ¶ 18-31, 35.) A such, Plaintiff's

5    claim for opposing violations of the FEHA fails.

6    **K.    Plaintiff's Tenth Cause of Action for Wrongful Termination in Violation of**
        **Public Policies Fails as a Matter of Law**

7

8    A claim for wrongful termination in violation of public policy must be predicated on a

9    public policy articulated in a statute or the Constitution. <u>Gantt v. Sentry Ins.</u>, 1 Cal.4th 1083, 1095

10   (1992). A claim for wrongful termination in violation of public policy fails as a matter of law where

11   the plaintiff is unable to establish a violation of the underlying statute. <u>Muller v. Automobile Club of</u>

12   <u>Southern California</u>, 61 Cal.App.4th 431, 450-52 (1998); <u>Sanders v. Arneson Products</u>, 91 F.3d 1351,

13   1354 (9th Cir. 1996); *see also* <u>Stevenson v. Superior Court</u>, 16 Cal.4th 880, 904 (1997) ("when a

14   plaintiff relies upon a statutory prohibition to support a common law cause of action for wrongful

15   termination in violation of public policy, the common law claim is subject to statutory limitations

16   affecting the nature and scope of the statutory prohibition").

17   Plaintiff's claim for wrongful termination in violation of public policy is based entirely

18   on his underlying claims for retaliation and discrimination. (Campos Decl., ¶ 2, Ex. A, ¶ 73.) However,

19   as set forth above, Plaintiff cannot establish any of his first nine causes of action. Accordingly, his

20   claim for wrongful termination must fail as a matter of law. *See* <u>TRW, Inc. v. Superior Court</u>,

21   25 Cal.App.4th 1834, 1854 (1994) (holding that a plaintiff may not assert a wrongful termination in

22   violation of public policy claim as a fallback to a statutory claim where the underlying statutory claim

23   itself fails); <u>Hanson v. Lucky Stores, Inc.</u>, 74 Cal.App.4th 215, 229 (1999) (where the "FEHA claim

24   fails, his claim for wrongful termination in violation of public policy fails").

25   / / /

26   / / /

27   / / /

28   / / /

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively,
MSA                                              26                    1:20-CV-00890-AWI-SAB

# IV. CONCLUSION

For the reasons set forth above, summary judgment must be granted in favor of Defendant as to all of Plaintiff's claims.

Dated: September 13, 2021                    LITTLER MENDELSON P.C.


_Julie R. Campos_
Ryan L. Eddings
Julie R. Campos

Attorneys for Defendant
MASTEC NETWORK SOLUTIONS, INC.

4817-3370-7259.1 / 046446-1254

LITTLER MENDELSON P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO Defendant's MSJ, or Alternatively, MSA                    27                    1:20-CV-00890-AWI-SAB