GEOFFREY C. LYON (Bar No. 132747)
Email: glyon@lyonlawyer.com
**LYON LAW PC**
3605 Long Beach Blvd. Suite 311,
Long Beach, CA 90807
Tel: (562) 426-2112

Attorney for Plaintiff,
GREGG LEE FOSHEE JR.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGG LEE FOSHEE, JR.,<br><br>    Plaintiff,<br><br>    v.<br><br>MASTEC NETWORK SOLUTIONS, INC., and DOES 1 TO 10,<br><br>    Defendants. | Case No. 1:20-cv-00890-AWI-SAB<br><br>**PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION**<br><br>Date:  October 18, 2021<br>Time:  1:30 p.m.<br>Judge:  Hon. Anthony W. Ishii<br>Dept:  Courtroom 2<br><br>Trial Date: May 17, 2022 |

Pursuant to Federal Rule of Civil Procedure 56 Plaintiff Gregg Lee Foshee Jr. hereby submits the following Supporting Separate Statement in support of his Opposition to Defendant Mastec Network Solutions Inc.'s Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment.

/ / /

/ / /

/ / /

/ / /

/ / /

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 1. | Plaintiff worked for Defendant as a Foreman until he was promoted to a Construction Manager in about March 2019.  Cox Decl. ¶ 5. | Disputed.<br><br>Plaintiff requested to step down from the Contruction Manager position on June 17, 2019 and return to his previous role as Foreman. Plaintiff complained about the work environment and illegal behavior of Mastec management to coworkers and Mgr. Jusin Barrie ("Mgr. Barrie").<br><br>(Exh. R; Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 47: 3-48: 3, 57:24-58:18, 66:18-67:19; Exh. F at 20:23-21:4; Exh. I at 35:20-36:6, Exh. H at 54:11-21 Foshee Decl. ¶ 20, 21, 22) |
| 2. | On April 18, 2019, Plaintiff failed to appear for his scheduled shift. Campos Decl. ¶ 4, Ex. C, 48:20-49:23, Exh. 1 thereto | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

2

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |
| | | (Exh. G at 49:1-20, Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶ 13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| | | Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days. |
| | | (Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 3. | Plaintiff's Project Manager, Miguel Galvez ("Galvez"), and Operations Manager, Joseph Ecklind ("Ecklind"), attempted to contact Plaintiff yet they were unable to reach him. Campos Decl., ¶ 4, Ex. C, 40:24-41:8. | Disputed. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

3

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)

Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".

(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)

Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.

(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 4. | As a result, Galvez emailed Plaintiff advising him that he would be written up because he did not call in or appear for his shift.

Campos Decl., ¶ 3-4, Ex. B, 55:7-56:18, Exh. 3 thereto, Ex. C, 48:20-49:23, Exh. 1 thereto. | Disputed.

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶12,13)

Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

4

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | call no show write up around 11:30 AM on April 18, 2019. |
| | | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13, 14) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 5. | Once Plaintiff received this email, he called Galvez and explained that he was receiving medical care for a dual ear infection. Campos Decl., ¶ 3-4, Ex. B, 49:5-12, Ex. C, 41:20-42:12. | Disputed.  Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.  (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)  Despite calling out sick earlier that morning, Plaintiff received an email from |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

5

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |
| | | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |
| | | Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass" |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 6. | Plaintiff and Galvez had a verbal disagreement over the phone regarding Plaintiff's failure to appear for work. Campos Decl., ¶ 3-5, Ex. B, 49:13-20, Ex. C, 43:3-25, Ex. D, 43:6-44:6. | Undisputed, as to the occurrence of the phone call. Disputed, as to categorizing the phone call as a "verbal disagreement"

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) |
| | | Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |
| | | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 7. | Plaintiff's Project Manager, Justin Barrie ("Barrie") met with Galvez and Plaintiff over the phone to work through their disagreement. Campos Decl., ¶ 3-5, Ex. B 50:11-21, Ex. C, 46:18-47:10, Ex. D, 47:6-48:13. | Disputed. Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

7

| | | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| | | | (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16) |
| | | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |
| | | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee Decl. ¶16) |
| | | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | 8. | Ultimately, Barrie, Galvez, and Plaintiff resolved the conflict, and Plaintiff was not disciplined for his failure to call in or appear for work. Campos Decl., ¶ 3-5, Ex. B, 57:2-4, Ex. C, 46:15-47:10, 50:25-51:8, 51:18-52:12, Ex. D, 47:6-48:16. | Disputed. Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 ) Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 9. | Plaintiff was released to return to work on April 20, 2019 with no restrictions.<br>Campos Decl., ¶ 3, Ex. B, 52:8-19, Exh. 2 thereto. | Undisputed. |
| 10. | However, Plaintiff voluntarily chose to return to work on April 19, 2019.<br>Campos Decl., ¶ 3, Ex. B, 52:20-53:8, 53:12-15. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".

(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.

(Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16)

Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.

(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)

Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days.

(Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 11. | Plaintiff never requested any accommodation or leave for his dual ear infection or any other medical condition. Cox Decl., ¶ 7-8; Campos Decl. ¶ 3, Ex. B, 84:23-85:8. | Disputed.

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)

Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass"

(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)

Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.

(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

11

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 12. | Plaintiff admits that aside from this time off to heal from his dual ear infection, he did not need any accommodations to do his job.<br>Campos Decl., ¶ 3, Ex. B, 84:23-85:3. | Disputed.<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

12

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 13. | Plaintiff did not have any other medical condition that impacted his ability to do his job during his employment at Defendant. Campos Decl., ¶ 3, Ex. B, 82:9-16, 85:4-8. | Disputed. Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| 14. | Just a few months after his promotion to Construction Manager Plaintiff voluntarily requested to return to his position as a Foreman. Campos Decl., ¶ 3, Ex. B, 66:11-69:25, Exh. 4 thereto. | Undisputed. Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties and were generally poor communicators as a result of their drug use as well. (Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

13

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 15. | On June 17, 2019, Plaintiff emailed Ecklind "requesting to step back down to a foreman roll [sic]," because "timing and life is playing a big roll [sic] in this interest but I think it is the best decision for everyone at this time. I want our team to win and this is just what's best right now." Campos Decl., ¶ 3, Ex. B, 68:5-22, Exh. 4 thereto. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

14

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 16. | Even though Plaintiff voluntarily requested his demotion back down to a Foreman, Barrie fought for Plaintiff to retain his higher rate of pay because of Plaintiff's management experience.<br>Campos Decl., ¶ 3, 5-6, Ex. B, 66:11-69:25, Exh. 4 thereto, Ex. D, 37:21-38:21, Ex. E, 65:3-20. | Disputed.<br><br>Plaintiff's salary upon returning to his position as foreman was determined by the prevailing market rate.<br><br>(Exh. S) |

| | **MOVING PARTY'S UNDISPUTED FACTS** | **OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE** |
|---|---|---|
| 17. | Accordingly, effective July 6, 2019, Plaintiff returned to his position as a Foreman at a rate of $32.00 per hour, rather than the rate of $28.91 per hour he previously earned as a Foreman just a few months earlier. Campos Decl., ¶ 5, Ex. B, 68:5-22, Ex. E, 65:3-20; Cox Decl., ¶ 6. | Undisputed. |
| 18. | On September 25, 2019, one of Defendant's clients notified Defendant that they observed several issues at Plaintiff's job site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 19. | Specifically, the client reported that they arrived on the site at 10:15 AM and the crew was not yet on site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

16

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 20. | The client returned about 30 minutes later and went over the client's policies and requirements with the crew.<br>Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25) |
| 21. | The client left the crew with a warning.<br>Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25) |
| 22. | Later that day, the client passed by the job site again and observed Plaintiff in a man lift without a hard hat, at which point the decision was made to shut down the site.<br>Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

17

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

18

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 23. | The client also reported that all of Plaintiff's crew were on site without hard hats on nor in the vicinity. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

19

| | | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| | | | Barrie said that an investigation should have been done. |
| | | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | | (Exh. L at: 29:22-30:13) |
| | | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |
| | | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |
| | | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

20

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 24. | The client advised Defendant that all of its policies must be followed.<br><br>Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

21

| | | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| | 25. | The client sent Defendant photographs clearly showing Plaintiff up in the man lift without a hard hat.<br><br>Cox Decl., ¶ 9; Campos Decl., ¶ 3, 6, Ex. B, 74:10-76:13, Exh. 5 thereto, Ex. E, 59:23-61:5, 80:1-9, 81:16-20, Exh.s 2, 5a, 5b thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.<br><br>(Exh. L at: 29:22-30:13)<br><br>Mgr. Barrie was known in the company to eschew safety equipment when working |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

22

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 26. | Following Plaintiff's safety violations, Ecklind and Barrie pushed for Plaintiff to be placed on a performance improvement plan, instead of terminating his employment.<br>Campos Decl., ¶ 5-6, Ex. D, 49:1-7, 49:13-15, Ex. E, 59:23-60:13, 62:25-64:5, 64:6-17. | Disputed.<br><br>Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.<br><br>(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 27. | However, after speaking with Windy Cox ("Cox") of Human Resources, it became clear that Plaintiff's safety violations as a Foreman warranted termination, given that the client caught Plaintiff violating policy multiple times in one day, ultimately had to shut down the site, and submitted photographic evidence of Plaintiff in the man lift without a hard hat.<br>Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

24

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6) |
| | | This contradicts the claims to Plaintiff by Mgr. Ecklind and Mgr. Barrie that Plaintiff's termination had been decided by HR. |
| | | (Exh. J at: 29:1-14; Exh. G at 79:22-25; Exh. I at 48:20-25; Foshee Decl. ¶28) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 28. | Therefore, Cox recommended terminating Plaintiff's employment based upon his safety violations and the position that he held. | Disputed.

Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

25

| | **MOVING PARTY'S UNDISPUTED FACTS** | **OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE** |
|---|---|---|
| | Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>HR representative Cox testified that corrective actions other than termination |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

26

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.<br><br>(Exh. L at: 29:22-30:13)<br><br>Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

27

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)

Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"

(Exh. B, Exh. F at 19:9-20:4) |
| 29. | After receiving Cox's recommendation, Barrie and Ecklind agreed to move forward with Plaintiff's termination.
Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 69:8-13, 69:22-25. | Disputed.

No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.

(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)

No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.

(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

28

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.<br><br>(Exh. L at: 29:22-30:13)<br><br>Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

29

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 30. | On September 30, 2019, Defendant terminated Plaintiff's employment for his failure to enforce and follow safety protocol by not wearing a hard hat while in the man lift, and for allowing his team on the job site without hard hats.<br>Campos Decl., ¶ 3-6, Ex. B, 72:18-74:3, 80:18-82:8, Exh. 6 thereto, Ex. C, 62:13-64:9, Ex. D, 60:20-62:2, Exh. 6 thereto, Ex. E, 76:22-77:19, Exh. 4 thereto. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

30

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

31

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 31. | Plaintiff admits that he was terminated "because of [his] not having a hard hat on" and that Defendant's client, "took a picture of that, and, yeah, and that's – I was terminated because of it."<br>Campos Decl., ¶ 3, Ex. B, 72:18-74:3. | Disputed.<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶ 19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

32

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.<br><br>(Exh. L at: 29:22-30:13)<br><br> Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

33

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | 40' pole in flip flops without a hard hat or safety harness at night. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum". |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 32. | In her role with Human Resources, Cox had access to Defendant's general demographic information. Cox Decl., ¶ 12; Campos Decl., ¶ 6, Ex. E, 121:18-25. | Undisputed. Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 33. | However, Cox did not specifically know the demographics of Plaintiff's location by memory. Cox Decl., ¶ 13; Campos Decl., ¶ 6, Ex. E, 123:3-8, 124:13-20. | Undisputed. |
| 34. | Moreover, Cox did not personally know Plaintiff at the time she recommended his termination. Cox Decl., ¶ 14. | Undisputed. |
| 35. | Cox's recommendation to terminate Plaintiff was based solely on the severity of his safety violations as a Foreman. Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 67:20-68:3, 71:10-15; Cox Decl. ¶ 9-11. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

35

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.

(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4)

In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)

Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

36

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>When enforced, hard hat violations typically resulted in either a verbal warning or write up.<br><br>(Foshee Decl. ¶27 ) |
| 36. | Throughout Plaintiff's employment, Defendant maintained a "zero-tolerance policy for unlawful discrimination, harassment or retaliation and will not tolerate any such conduct."<br>Cox Decl., ¶ 15, Ex. A; Campos Decl., ¶ 6, Ex. E, 112:18-24, 120:3-121:17, Exh. 1 thereto. | Disputed.<br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4)<br><br>In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". |
| | | (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |
| | | When enforced, hard hat violations typically resulted in either a verbal warning or write up. |
| | | (Foshee Decl. ¶27 ) |
| 37. | Defendant's policy specifically provides that: "MasTec provides equal employment opportunities to all qualified individuals without regard to race, color, … national origin, … disability or any other basis or characteristic protected by applicable law. MasTec is also committed to providing a work environment free of harassment on the basis of race, color, national origin … | Disputed. Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. (Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4) In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | or disability or any other characteristic protected by applicable law. It is the responsibility of each and every employee to report unlawful harassment or discrimination when it occurs-whether they are a victim of, or a witness to, unlawful behavior. Employees will be protected from retaliation for opposing unlawful discriminatory practices when they report, in good faith, unlawful harassment or discrimination. Reports of unlawful harassment, discrimination or retaliation can be made to your Human Resources contact or by contacting **Convercent** (formerly **MySafeWorkplace).** Human Resources will investigate all allegations of unlawful harassment and discrimination promptly, impartially and in a confidential manner. If the Company determines that unlawful harassment, discrimination or retaliation has occurred, it will take prompt and effective remedial action." (Emphasis in original.) Cox Decl., ¶ 15, Ex. A. | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

39

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | When enforced, hard hat violations typically resulted in either a verbal warning or write up.<br><br>(Foshee Decl. ¶27 ) |
| 38. | Throughout Plaintiff's employment, Defendant also maintained a Reasonable Accommodation Policy.<br>Cox Decl., ¶ 16, Ex. B. | Undisputed as to the existence of the written policy. Disputed as to its enforcement.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

40

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 39. | Defendant's policy states that: | Undisputed as to the existence of the written policy. Disputed as to its enforcement. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

41

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | "To comply with applicable laws ensuring equal employment opportunities to individuals with disabilities (even if in remission or ameliorated), MasTec will make reasonable accommodations for the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee unless undue hardship and/or a direct threat to the health and/or safety of the individual or others would result. Any applicant or employee who requires an accommodation in order to perform the essential functions of the job should contact your Human Resources Contact and request such an accommodation in writing." <br> Cox Decl., ¶ 16, Ex. B. | Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. <br><br> (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) <br><br> Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. <br><br> (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) <br><br> Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. <br><br> (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) <br><br> Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. <br><br> (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

42

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 40. | At all relevant times, Defendant maintained procedures for complaints of discrimination, mistreatment, and substance abuse.<br>Cox Decl., ¶ 17, Ex. C. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)

Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.

(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Foshee Decl. ¶22) |
| 41. | Employees were advised to report suspected harassment or discrimination to their Human Resources Contact, or by using the online portal Convercent. Cox Decl., ¶ 17, Ex. C. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

45

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 42. | As the handbook provides, "Convercent . . . is a 24-hour incident reporting hotline. Convercent allows you to make reports on a wide variety of topics, including, but not limited to, reports of accounting | Undisputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

46

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | irregularities, fraud, theft, unsafe working conditions, harassment, discrimination, mistreatment . . . safety violations, substance abuse or threats of violence." Cox Decl., ¶ 17, Ex. C. | |
| 43. | Defendant's Open Door Policy instructed employees to speak with their immediate supervisor to address work-related issues. Cox Decl., ¶ 18, Ex. D. | Disputed. Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)

Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.

(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

48

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 44. | However, if an employee felt uncomfortable speaking directly with their supervisor, they could meet directly with their department's manager, Human Resources Contact, general manager, or other appropriate management personnel. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 45. | Employees could also report issues through Defendant's hotline, Convercent. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 46. | During Plaintiff's employment, Defendant strictly prohibited the use of drugs and alcohol in the workplace. Cox Decl., ¶ 19, Ex. E; Campos Decl., ¶ 4-5, Ex. C, 35:10-36:2, Ex. D, 42:5-8. | Disputed. Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well. (Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) Other Mastec employees observed frequent and open drug abuse while at the Fresno office. (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

49

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management |
| | | (Foshee Decl. ¶ 11) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| | | HR representative Cox testified that drug offenses could be immediately escalated beyond Mastec's progressive approach to discipline. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

50

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. J at 47:10-48:10, 85:5-16) |
| 47. | Employees were advised to report any substance abuse through Convercent. Cox Decl., ¶ 17, Ex. C; Campos Decl., ¶ 4, Ex. C, 35:21-36:2. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

51

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 48. | Pursuant to Defendant's Open Door Policy, employees could also report substance abuse issues to their appropriate managers or their Human Resources Contact.<br>Cox Decl., ¶ 18, Ex. D. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

52

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management |
| | | (Foshee Decl. ¶ 11) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 49. | During his employment, Plaintiff never made, or threatened to make, any formal complaint with Defendant or any other entity regarding alleged drug use.<br>Cox Decl., ¶ 20; Campos Decl., ¶ 3-6, Ex. B, 40:4-8, 65:13-19, Ex. C, 35:10-12, 36:18-22, Ex. D, 38:22-39:11, 63:20-64:9, | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

53

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Ex. E, 85:12-21, 86:10-17, 87:6-19, 90:17-24. | (Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Other Mastec employees observed frequent and open drug abuse while at the Fresno office.

(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 50. | The only "complaints" Plaintiff alleges to have made regarding the alleged drug use were to his co-workers, simply stating that the alleged drug users did not do anything and were making his job difficult.<br>Cox Decl., ¶ 20; Campos Decl., ¶ 3, Ex. B, 40:4-8, 47:3-48:3, 65:13-24. | Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 51. | Barrie testified that Plaintiff never expressed to him any concern regarding drinking or drug use at work, or that he wanted to step down from his position as a Construction Manager because of the alleged drinking and drug use.<br>Campos Decl., ¶ 5, Ex. D, 38:22-39:8, 63:20-64:9. | Dispsuted.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 52. | Galvez also testified that Plaintiff never reported any alleged drinking or drug use to him.<br>Campos Decl., ¶ 4, Ex. C, 35:10-12, 36:18-22. | Undisputed. |
| 53. | During his employment, Plaintiff never complained of any unfair treatment or discrimination based upon his race.<br>Cox Decl., ¶ 21. | Disputed.<br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>Plaintiff took a single drug test during his employment with Mastec which came back negative. Plaintiff was never suspected to have been using drugs.<br><br>(Exh. J 94:12-95:96:8, 102:25-103:5; Exh. L at 5:16-56:6, 56:21-24 Foshee Decl. ¶ 2)<br><br>After Plaintiff was terminated a potential employer called Mastec and was told that Plaintiff had failed a drug test. (Exh. M at 21:7-19, 23:4-11; Foshee Decl. ¶ 32) |
| 54. | Plaintiff alleges that he did not receive support from his managers, however none of Plaintiff's allegations are tied to his race. Campos Decl., ¶ 3, Ex. B, 40:4-8, 41:17-43:10, 44:17-45:20, 46:5-48:3, 65:13-24. | Disputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4)<br><br>In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

58

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

59

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

**Issue No. (1) Plaintiff's First Cause of Action for whistleblower retaliation: Plaintiff never engaged in a protected activity, and even if he did, Plaintiff cannot establish a causal link between his alleged protected activity and his termination.**

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 55. | Plaintiff worked for Defendant as a Foreman until he was promoted to a Construction Manager in about March 2019. Cox Decl. ¶ 5. 2019. | Disputed.<br><br>Plaintiff requested to step down from the Contruction Manager position on June 17, 2019 and return to his previous role as Foreman. Plaintiff complained about the work environment and illegal behavior of Mastec management to coworkers and Mgr. Jusin Barrie ("Mgr. Barrie").<br><br>(Exh. R; Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 47: 3-48: 3, 57:24-58:18, 66:18-67:19; Exh. F at 20:23-21:4; Exh. I at 35:20-36:6, Exh. H at 54:11-21 Foshee Decl. ¶ 20, 21, 22) |
| 56. | On April 18, 2019, Plaintiff failed to appear for his scheduled shift.<br> Campos Decl. ¶ 4, Ex. C, 48:20-49:23, Exh. 1 thereto | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶ 13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22)<br><br>Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

61

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 57. | Plaintiff's Project Manager, Miguel Galvez ("Galvez"), and Operations Manager, Joseph Ecklind ("Ecklind"), attempted to contact Plaintiff yet they were unable to reach him.   Campos Decl., ¶ 4, Ex. C, 40:24-41:8. | Disputed. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

62

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 58. | As a result, Galvez emailed Plaintiff advising him that he would be written up because he did not call in or appear for his shift.   Campos Decl., ¶ 3-4, Ex. B, 55:7-56:18, Exh. 3 thereto, Ex. C, 48:20-49:23, Exh. 1 thereto. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶12,13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13, 14) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

63

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 59. | Once Plaintiff received this email, he called Galvez and explained that he was receiving medical care for a dual ear infection. Campos Decl., ¶ 3-4, Ex. B, 49:5-12, Ex. C, 41:20-42:12. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass" |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

64

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 60. | Plaintiff and Galvez had a verbal disagreement over the phone regarding Plaintiff's failure to appear for work. Campos Decl., ¶ 3-5, Ex. B, 49:13-20, Ex. C, 43:3-25, Ex. D, 43:6-44:6. | Undisputed, as to the occurrence of the phone call. Disputed, as to categorizing the phone call as a "verbal disagreement" Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 61. | Plaintiff's Project Manager, Justin Barrie ("Barrie") met with Galvez and Plaintiff over the phone to work through their disagreement. Campos Decl., ¶ 3-5, Ex. B 50:11-21, Ex. C, 46:18-47:10, Ex. D, 47:6-48:13. | Disputed. Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16) Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee Decl. ¶16) Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

66

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 62. | Ultimately, Barrie, Galvez, and Plaintiff resolved the conflict, and Plaintiff was not written up for his failure to call in or appear for work. Campos Decl., ¶ 3-5, Ex. B, 57:2-4, Ex. C, 46:15-47:10, 50:25-51:8, 51:18-52:12, Ex. D, 47:6-48:16. | Disputed. Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 ) Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 63. | Plaintiff was released to return to work on April 20, 2019 with no restrictions. Campos Decl., ¶ 3, Ex. B, 52:8-19, Exh. 2 thereto. | Undisputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

67

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 64. | However, Plaintiff voluntarily chose to return to work on April 19, 2019. Campos Decl., ¶ 3, Ex. B, 52:20-53:8, 53:12-15. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

68

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16)<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days.<br><br>(Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 65. | Plaintiff never requested any accommodation or leave for his dual ear infection or any other medical condition. Cox Decl., ¶ 7-8; Campos Decl. ¶ 3, Ex. B, 84:23-85:8. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass"<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 66. | Plaintiff admits that aside from this time off to heal from his dual ear infection, he did not need any accommodations to do his | Disputed.<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

70

| | **MOVING PARTY'S UNDISPUTED FACTS** | **OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE** |
|---|---|---|
| | job.   Campos Decl., ¶ 3, Ex. B, 84:23-85:3. | Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 67. | Plaintiff did not have any other medical condition that impacted his ability to do his job during his employment at Defendant. Campos Decl., ¶ 3, Ex. B, 82:9-16, 85:4-8. | Disputed.<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| 68. | Just a few months after his promotion to Construction Manager Plaintiff voluntarily requested to return to his position as a Foreman.   Campos Decl., ¶ 3, Ex. B, 66:11-69:25, Exh. 4 thereto. | Undisputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties and were generally poor communicators as a result of their drug use as well. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

71

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 69. | On June 17, 2019, Plaintiff emailed Ecklind "requesting to step back down to a | Disputed.

Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

72

| | **MOVING PARTY'S UNDISPUTED FACTS** | **OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE** |
|---|---|---|
| | foreman roll [sic]," because "timing and life is playing a big roll [sic] in this interest but I think it is the best decision for everyone at this time. I want our team to win and this is just what's best right now." Campos Decl., ¶ 3, Ex. B, 68:5-22, Exh. 4 thereto. | were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

73

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 70. | Even though Plaintiff voluntarily requested his demotion back down to a Foreman, Barrie fought for Plaintiff to retain his higher rate of pay because of Plaintiff's management experience. Campos Decl., ¶ 3, 5-6, Ex. B, 66:11-69:25, Exh. 4 thereto, Ex. D, 37:21-38:21, Ex. E, 65:3-20. | Disputed.<br><br>Plaintiff's salary upon returning to his position as foreman was determined by the prevailing market rate.<br><br>(Exh. S) |
| 71. | Accordingly, effective July 6, 2019, Plaintiff was returned to his position as a Foreman at a rate of $32.00 per hour, rather than the rate of $28.91 per hour he previously earned as a Foreman just a few months earlier.<br>Campos Decl., ¶ 5, Ex. B, 68:5-22, Ex. E, 65:3-20; Cox Decl., ¶ 6. | Undisputed. |
| 72. | On September 25, 2019, one of Defendant's clients notified Defendant that they observed several issues at Plaintiff's job site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Foshee Decl. ¶25) |
| 73. | Specifically, the client reported that they arrived on the site at 10:15 AM and the crew was not yet on site.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 74. | The client returned about 30 minutes later and went over the client's policies and requirements with the crew.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 75. | The client left the crew with a warning. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

75

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 76. | Later that day, the client passed by the job site again and observed Plaintiff in a man lift without a hard hat, at which point the decision was made to shut down the site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

76

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. L at: 29:22-30:13)<br><br>Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 77. | The client also reported that all of Plaintiff's crew were on site without hard hats on nor in the vicinity.    Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

77

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | pretextual basis and usually resulted in a warning.

(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)

No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.

(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.

(Exh. L at: 29:22-30:13)

Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

78

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 78. | The client advised Defendant that all of its policies must be followed.   Cox Decl., ¶ 9; Campos Decl.,  ¶  6,  Ex.  E,  59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | pretextual basis and usually resulted in a warning. |
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| 79. | The client sent Defendant photographs clearly showing Plaintiff up in the man lift without a hard hat.     Cox Decl., ¶ 9; Campos Decl., ¶ 3, 6, Ex. B, 74:10-76:13, Exh. 5 thereto, Ex. E, 59:23-61:5, 80:1-9, 81:16-20, Exh.s 2, 5a, 5b thereto. | Disputed. <br><br> No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. <br><br> (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) <br><br> No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. <br><br> (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) <br><br> Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

80

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.<br><br>(Exh. L at: 29:22-30:13)<br><br>Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

81

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 80. | Following Plaintiff's safety violations, Ecklind and Barrie pushed for Plaintiff to be placed on a performance improvement plan, instead of terminating his employment. Campos Decl., ¶ 5-6, Ex. D, 49:1-7, 49:13-15, Ex. E, 59:23-60:13, 62:25-64:5, 64:6-17. | Disputed.<br><br>Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.<br><br>(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 81. | However, after speaking with Windy Cox ("Cox") of Human Resources, it became clear that Plaintiff's safety violations as a Foreman warranted termination, given that the client caught Plaintiff violating policy multiple times in one day, ultimately had to shut down the site, and submitted | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

82

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | photographic evidence of Plaintiff in the man lift without a hard hat. Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | The client did not provide any guidance or warnings as to safety or hardhat usage.

(Foshee Decl. ¶25)

Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.

(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)

This contradicts the claims to Plaintiff by Mgr. Ecklind and Mgr. Barrie that Plaintiff's termination had been decided by HR.

(Exh. J at: 29:1-14; Exh. G at 79:22-25; Exh. I at 48:20-25; Foshee Decl. ¶28)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

83

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 82. | Therefore, Cox recommended terminating Plaintiff's employment based upon his safety violations and the position that he held.    Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

84

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

85

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 83. | After receiving Cox's recommendation, Barrie and Ecklind agreed to move forward with Plaintiff's termination. Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 69:8-13, 69:22-25. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

86

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 84. | On September 30, 2019, Defendant terminated Plaintiff's employment for his failure to enforce and follow safety protocol by not wearing a hard hat while in the man lift, and for allowing his team on the job site without hard hats. Campos Decl., ¶ 3-6, Ex. B, 72:18-74:3, 80:18-82:8, Exh. 6 thereto, Ex. C, 62:13-64:9, Ex. D, 60:20-62:2, Exh. 6 thereto, Ex. E, 76:22-77:19, Exh. 4 thereto. | Disputed.

Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.

(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )

Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

88

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

89

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.

(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.

(Exh. J at 53:16-25, 62:16-24)

Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"

(Exh. B, Exh. F at 19:9-20:4) |
| 85. | Plaintiff admits that he was terminated "because of [his] not having a hard hat on" and that Defendant's client, "took a picture of that, and, yeah, and that's – I was | Disputed.

Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

90

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | terminated because of it." Campos Decl., ¶ 3, Ex. B, 72:18-74:3. | (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) |
| | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

91

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | violations were selectively issued on a pretextual basis and usually resulted in a warning. |
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

92

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 86. | In her role with Human Resources, Cox had access to Defendant's general demographic information. Cox Decl., ¶ 12; Campos Decl., ¶ 6, Ex. E, 121:18-25. | Undisputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |
| 87. | However, Cox did not specifically know the demographics of Plaintiff's location by memory. Cox Decl., ¶ 13; Campos Decl., ¶ 6, Ex. E, 123:3-8, 124:13-20. | Undisputed. |
| 88. | Moreover, Cox did not personally know Plaintiff at the time she recommended his termination. Cox Decl., ¶ 14. | Undisputed. |
| 89. | Cox's recommendation to terminate Plaintiff was based solely on the severity of his safety violations as a Foreman. Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 67:20-68:3, 71:10-15; Cox Decl. ¶ 9-11. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

93

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.

(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4)

In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)

Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

94

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". |
| | | (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |
| | | When enforced, hard hat violations typically resulted in either a verbal warning or write up. |
| | | (Foshee Decl. ¶27 ) |
| 90. | Throughout Plaintiff's employment, Defendant maintained a "zero-tolerance policy for unlawful discrimination, harassment or retaliation and will not tolerate any such conduct." Cox Decl., ¶ 15, Ex. A; Campos Decl., ¶ 6, Ex. E, 112:18-24, 120:3-121:17, Exh. 1 thereto. | Disputed. |
| | | Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. |
| | | (Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4) |
| | | In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br><br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>When enforced, hard hat violations typically resulted in either a verbal warning or write up.<br><br>(Foshee Decl. ¶27 ) |
| 91. | Defendant's policy specifically provides that:<br>"MasTec provides equal employment opportunities to all qualified individuals without regard to race, color, … national origin, … disability or any other basis or | Disputed.<br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4) |

| MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| characteristic protected by applicable law. MasTec is also committed to providing a work environment free of harassment on the basis of race, color, national origin … or disability or any other characteristic protected by applicable law. It is the responsibility of each and every employee to report unlawful harassment or discrimination when it occurs-whether they are a victim of, or a witness to, unlawful behavior. Employees will be protected from retaliation for opposing unlawful discriminatory practices when they report, in good faith, unlawful harassment or discrimination. Reports of unlawful harassment, discrimination or retaliation can be made to your Human Resources contact or by contacting **Convercent** (formerly **MySafeWorkplace**). Human Resources will investigate all allegations of unlawful harassment and discrimination promptly, impartially and in a confidential manner. If the Company determines that unlawful harassment, discrimination or retaliation has occurred, it will take prompt and effective remedial action." (Emphasis in original.) | In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

97

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". |
| | | (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |
| | | When enforced, hard hat violations typically resulted in either a verbal warning or write up. |
| | | (Foshee Decl. ¶27 ) |
| 92. | Throughout Plaintiff's employment, Defendant also maintained a Reasonable Accommodation Policy. Cox Decl., ¶ 16, Ex. B. | Undisputed as to the existence of the written policy. Disputed as to its enforcement. |
| | | Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. |
| | | (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) |
| | | Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |
| | | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

98

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 93. | Defendant's policy states that:<br>"To comply with applicable laws ensuring equal employment opportunities to individuals with disabilities (even if in remission or ameliorated), MasTec will make reasonable accommodations for the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee unless undue hardship and/or a direct threat to the health and/or safety of the individual or others would result. Any applicant or employee who requires an accommodation in order to perform the essential functions of the job should contact your Human Resources Contact and request such an accommodation in writing." | Undisputed as to the existence of the written policy. Disputed as to its enforcement.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

99

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. <br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) <br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. <br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. <br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 ) <br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. <br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) <br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

100

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 94. | At all relevant times, Defendant maintained procedures for complaints of discrimination, mistreatment, and substance abuse.    Cox Decl., ¶ 17, Ex. C. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

101

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 95. | Employees were advised to report suspected harassment or discrimination to | Disputed. |

| MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| their Human Resources Contact, or by using the online portal Convercent. Cox Decl., ¶ 17, Ex. C. | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..

(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)

Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.

(Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )

Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.

(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)

Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

103

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 96. | As the handbook provides, "Convercent . . . is a 24-hour incident reporting hotline. Convercent allows you to make reports on a wide variety of topics, including, but not limited to, reports of accounting irregularities, fraud, theft, unsafe working conditions, harassment, discrimination, | Undisputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

104

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | mistreatment . . . safety violations, substance abuse or threats of violence." Cox Decl., ¶ 17, Ex. C. | |
| 97. | Defendant's Open Door Policy instructed employees to speak with their immediate supervisor to address work-related issues. Cox Decl., ¶ 18, Ex. D. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 98. | However, if an employee felt uncomfortable speaking directly with their supervisor, they could meet directly with | Undisputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

106

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | their department's manager, Human Resources Contact, general manager, or other appropriate management personnel. Cox Decl., ¶ 18, Ex. D. | |
| 99. | Employees could also report issues through Defendant's hotline, Convercent. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 100. | During Plaintiff's employment, Defendant strictly prohibited the use of drugs and alcohol in the workplace. Cox Decl., ¶ 19, Ex. E; Campos Decl., ¶ 4-5, Ex. C, 35:10-36:2, Ex. D, 42:5-8. | Disputed. Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well. (Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) Other Mastec employees observed frequent and open drug abuse while at the Fresno office. (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19) In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

107

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Foshee Decl. ¶ 11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22)<br><br>HR representative Cox testified that drug offenses could be immediately escalated beyond Mastec's progressive approach to discipline.<br><br>(Exh. J at 47:10-48:10, 85:5-16) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 101. | Employees were advised to report any substance abuse through Convercent. Cox Decl., ¶ 17, Ex. C; Campos Decl., ¶ 4, Ex. C, 35:21-36:2. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

109

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 102. | Pursuant to Defendant's Open Door Policy, employees could also report substance abuse issues to their appropriate managers or their Human Resources Contact. Cox Decl., ¶ 18, Ex. D. | Disputed.

Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)
In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management
(Foshee Decl. ¶ 11)
On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.
(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)
In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.
(Foshee Decl. ¶22) |
| 103. | During his employment, Plaintiff never made, or threatened to make, any formal complaint with Defendant or any other entity regarding alleged drug use.    Cox Decl., ¶ 20; Campos Decl., ¶ 3-6, Ex. B, 40:4-8, 65:13-19, Ex. C, 35:10-12, 36:18-22, Ex. D, 38:22-39:11, 63:20-64:9, Ex. E, 85:12-21, 86:10-17, 87:6-19, 90:17-24. | Disputed.
Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.
(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8- |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

111

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | 11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Other Mastec employees observed frequent and open drug abuse while at the Fresno office.

(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

| | **MOVING PARTY'S UNDISPUTED FACTS** | **OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE** |
|---|---|---|
| | | (Foshee Decl. ¶22) |
| 104. | The only "complaints" Plaintiff alleges to have made regarding the alleged drug use were to his co-workers, simply stating that the alleged drug users did not do anything and were making his job difficult. Cox Decl., ¶ 20; Campos Decl., ¶ 3, Ex. B, 40:4-8, 47:3-48:3, 65:13-24. | Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

113

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 105. | Barrie testified that Plaintiff never expressed to him any concern regarding drinking or drug use at work, or that he wanted to step down from his position as a Construction Manager because of the alleged drinking and drug use.<br>Campos Decl., ¶ 5, Ex. D, 38:22-39:8, 63:20-64:9. | Dispsuted.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 106. | Galvez also testified that Plaintiff never reported any alleged drinking or drug use to him.  Campos Decl., ¶ 4, Ex. C, 35:10-12, 36:18-22. | Undisputed. |
| 107. | During his employment, Plaintiff never complained of any unfair treatment or discrimination based upon his race.  Cox Decl., ¶ 21. | Disputed. Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Barrie say "I never say nigger unless I'm fighting someone or something". (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) Plaintiff took a single drug test during his employment with Mastec which came back negative. Plaintiff was never suspected to have been using drugs. (Exh. J 94:12-95:96:8, 102:25-103:5; Exh. L at 5:16-56:6, 56:21-24 Foshee Decl. ¶ 2) After Plaintiff was terminated a potential employer called Mastec and was told that Plaintiff had failed a drug test. (Exh. M at 21:7-19, 23:4-11; Foshee Decl. ¶ 32) |
| 108. | Plaintiff alleges that he did not receive support from his managers, however none of Plaintiff's allegations are tied to his race. Campos Decl., ¶ 3, Ex. B, 40:4-8, 41:17-43:10, 44:17-45:20, 46:5-48:3, 65:13-24. | Disputed. Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations. (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)

Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".
(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)

No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.

(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)

No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.

(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

/ / /

/ / /

/ / /

**Issue No. (2) Plaintiff's Second Cause of Action for medical leave discrimination in violation of California Government Code Section 12945.2: Plaintiff cannot establish a prima facie case, and even if he could, Defendant terminated Plaintiff's employment for a legitimate, non-discriminatory reason, and Plaintiff cannot establish that Defendant's reason was pretextual.**

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 109. | Plaintiff worked for Defendant as a Foreman until he was promoted to a Construction Manager in about March 2019. Cox Decl. ¶ 5. 2019. | Disputed.<br><br>Plaintiff requested to step down from the Contruction Manager position on June 17, 2019 and return to his previous role as Foreman. Plaintiff complained about the work environment and illegal behavior of Mastec management to coworkers and Mgr. Jusin Barrie ("Mgr. Barrie").<br><br>(Exh. R; Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 47: 3-48: 3, 57:24-58:18, 66:18-67:19; Exh. F at 20:23-21:4; Exh. I at 35:20-36:6, Exh. H at 54:11-21 Foshee Decl. ¶ 20, 21, 22) |
| 110. | On April 18, 2019, Plaintiff failed to appear for his scheduled shift. Campos Decl. ¶ 4, Ex. C, 48:20-49:23, Exh. 1 thereto | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | come in that day as a result of the ear infection. |
| | | (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) |
| | | Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |
| | | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |
| | | (Exh. G at 49:1-20, Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶ 13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| | | Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days. |
| | | (Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

119

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 111. | Plaintiff's Project Manager, Miguel Galvez ("Galvez"), and Operations Manager, Joseph Ecklind ("Ecklind"), attempted to contact Plaintiff yet they were unable to reach him. Campos Decl., ¶ 4, Ex. C, 40:24-41:8. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 112. | As a result, Galvez emailed Plaintiff advising him that he would be written up because he did not call in or appear for his shift.   Campos Decl., ¶ 3-4, Ex. B, 55:7-56:18, Exh. 3 thereto, Ex. C, 48:20-49:23, Exh. 1 thereto. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶12,13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13, 14)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

121

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 113. | Once Plaintiff received this email, he called Galvez and explained that he was receiving medical care for a dual ear infection. Campos Decl., ¶ 3-4, Ex. B, 49:5-12, Ex. C, 41:20-42:12. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass"<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

122

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 114. | Plaintiff and Galvez had a verbal disagreement over the phone regarding Plaintiff's failure to appear for work. Campos Decl., ¶ 3-5, Ex. B, 49:13-20, Ex. C, 43:3-25, Ex. D, 43:6-44:6. | Undisputed, as to the occurrence of the phone call. Disputed, as to categorizing the phone call as a "verbal disagreement"<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)

Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.

(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 115. | Plaintiff's Project Manager, Justin Barrie ("Barrie") met with Galvez and Plaintiff over the phone to work through their disagreement.  Campos Decl., ¶ 3-5, Ex. B 50:11-21, Ex. C, 46:18-47:10, Ex. D, 47:6-48:13. | Disputed.

Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.

(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16)

Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.

(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee Decl. ¶16)

Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.

(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

124

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 116. | Ultimately, Barrie, Galvez, and Plaintiff resolved the conflict, and Plaintiff was not written up for his failure to call in or appear for work. Campos Decl., ¶ 3-5, Ex. B, 57:2-4, Ex. C, 46:15-47:10, 50:25-51:8, 51:18-52:12, Ex. D, 47:6-48:16. Campos Decl., ¶ 3-5, Ex. B, 57:2-4, Ex. C, 46:15-47:10, 50:25-51:8, 51:18-52:12, Ex. D, 47:6-48:16. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 117. | Plaintiff was released to return to work on April 20, 2019 with no restrictions. Campos Decl., ¶ 3, Ex. B, 52:8-19, Exh. 2 thereto. | Undisputed. |
| 118. | However, Plaintiff voluntarily chose to return to work on April 19, 2019. Campos Decl., ¶ 3, Ex. B, 52:20-53:8, 53:12-15. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

125

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

126

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days.<br><br>(Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 119. | Plaintiff never requested any accommodation or leave for his dual ear infection or any other medical condition. Cox Decl., ¶ 7-8; Campos Decl. ¶ 3, Ex. B, 84:23-85:8. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass" |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 120. | Plaintiff admits that aside from this time off to heal from his dual ear infection, he did not need any accommodations to do his job.   Campos Decl., ¶ 3, Ex. B, 84:23-85:3. | Disputed.<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 121. | Plaintiff did not have any other medical condition that impacted his ability to do his job during his employment at Defendant. Campos Decl., ¶ 3, Ex. B, 82:9-16, 85:4-8. | Disputed. |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| 122. | Just a few months after his promotion to Construction Manager Plaintiff voluntarily requested to return to his position as a Foreman. Campos Decl., ¶ 3, Ex. B, 66:11-69:25, Exh. 4 thereto. | Undisputed. |
| | | Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties and were generally poor communicators as a result of their drug use as well. |
| | | (Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

129

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 123. | On June 17, 2019, Plaintiff emailed Ecklind "requesting to step back down to a foreman roll [sic]," because "timing and life is playing a big roll [sic] in this interest but I think it is the best decision for everyone at this time. I want our team to | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

130

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | win and this is just what's best right now." Campos Decl., ¶ 3, Ex. B, 68:5-22, Exh. 4 thereto. | communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

131

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 124. | Even though Plaintiff voluntarily requested his demotion back down to a Foreman, Barrie fought for Plaintiff to retain his higher rate of pay because of Plaintiff's management experience. Campos Decl., ¶ 3, 5-6, Ex. B, 66:11-69:25, Exh. 4 thereto, Ex. D, 37:21-38:21, Ex. E, 65:3-20. | Disputed.<br><br>Plaintiff's salary upon returning to his position as foreman was determined by the prevailing market rate.<br><br>(Exh. S) |
| 125. | Accordingly, effective July 6, 2019, Plaintiff was returned to his position as a Foreman at a rate of $32.00 per hour, rather than the rate of $28.91 per hour he previously earned as a Foreman just a few months earlier. Campos Decl., ¶ 5, Ex. B, 68:5-22, Ex. E, 65:3-20; Cox Decl., ¶ 6. | Undisputed. |
| 126. | On September 25, 2019, one of Defendant's clients notified Defendant that they observed several issues at Plaintiff's job site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 127. | Specifically, the client reported that they arrived on the site at 10:15 AM and the crew was not yet on site. Cox Decl., ¶ 9; | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety. (Foshee Decl. ¶25) |
| 128. | The client returned about 30 minutes later and went over the client's policies and requirements with the crew. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed. Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety. (Foshee Decl. ¶25) |
| 129. | The client left the crew with a warning. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed. Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety. (Foshee Decl. ¶25) |
| 130. | Later that day, the client passed by the job site again and observed Plaintiff in a man | Disputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

133

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | lift without a hard hat, at which point the decision was made to shut down the site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. (Exh. L at: 29:22-30:13) Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | flip flops without a hard hat or safety harness at night. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 131. | The client also reported that all of Plaintiff's crew were on site without hard hats on nor in the vicinity.    Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

135

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.<br><br>(Exh. L at: 29:22-30:13)<br><br>Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

136

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 132. | The client advised Defendant that all of its policies must be followed. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

137

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| 133. | The client sent Defendant photographs clearly showing Plaintiff up in the man lift without a hard hat.     Cox Decl., ¶ 9; Campos Decl., ¶ 3, 6, Ex. B, 74:10-76:13, Exh. 5 thereto, Ex. E, 59:23-61:5, 80:1-9, 81:16-20, Exh.s 2, 5a, 5b thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

138

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. L at: 29:22-30:13)

 Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 134. | Following Plaintiff's safety violations, Ecklind and Barrie pushed for Plaintiff to be placed on a performance improvement plan, instead of terminating his employment.   Campos Decl., ¶ 5-6, Ex. D, 49:1-7, 49:13-15, Ex. E, 59:23-60:13, 62:25-64:5, 64:6-17. | Disputed.

Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

139

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | their prerogative to administer less severe disciplinary measures.

(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)

HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.

(Exh. J at 53:16-25, 62:16-24)

Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"

(Exh. B, Exh. F at 19:9-20:4) |
| 135. | However, after speaking with Windy Cox ("Cox") of Human Resources, it became clear that Plaintiff's safety violations as a Foreman warranted termination, given that the client caught Plaintiff violating policy multiple times in one day, ultimately had to shut down the site, and submitted photographic evidence of Plaintiff in the man lift without a hard hat.    Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | Disputed.

Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.

(Foshee Decl. ¶25)

Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and |

| | | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| | | | Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures. |
| | | | (Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6) |
| | | | This contradicts the claims to Plaintiff by Mgr. Ecklind and Mgr. Barrie that Plaintiff's termination had been decided by HR. |
| | | | (Exh. J at: 29:1-14; Exh. G at 79:22-25; Exh. I at 48:20-25; Foshee Decl. ¶28) |
| | | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | | (Exh. J at 53:16-25, 62:16-24) |
| | | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | | (Exh. B, Exh. F at 19:9-20:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

141

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 136. | Therefore, Cox recommended terminating Plaintiff's employment based upon his safety violations and the position that he held.    Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

143

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)

Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"

(Exh. B, Exh. F at 19:9-20:4) |
| 137. | After receiving Cox's recommendation, Barrie and Ecklind agreed to move forward with Plaintiff's termination.    Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 69:8-13, 69:22-25. | Disputed.

No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.

(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)

No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.

(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

144

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.

(Exh. J at 53:16-25, 62:16-24)

Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.

(Exh. L at: 29:22-30:13)

 Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

145

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 138. | On September 30, 2019, Defendant terminated Plaintiff's employment for his failure to enforce and follow safety protocol by not wearing a hard hat while in the man lift, and for allowing his team on the job site without hard hats.    Campos Decl., ¶ 3-6, Ex. B, 72:18-74:3, 80:18-82:8, Exh. 6 thereto, Ex. C, 62:13-64:9, Ex. D, 60:20-62:2, Exh. 6 thereto, Ex. E, 76:22-77:19, Exh. 4 thereto. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

146

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.

(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)

No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.

(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)

Mastec did not investigate the incident by speaking to crew members or the |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

147

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 139. | Plaintiff admits that he was terminated "because of [his] not having a hard hat on" and that Defendant's client, "took a picture of that, and, yeah, and that's – I was terminated because of it." Campos Decl., ¶ 3, Ex. B, 72:18-74:3. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

149

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 140. | In her role with Human Resources, Cox had access to Defendant's general demographic information.  Cox Decl., ¶ 12; Campos Decl., ¶ 6, Ex. E, 121:18-25. | Undisputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 141. | However, Cox did not specifically know the demographics of Plaintiff's location by memory.   Cox Decl., ¶ 13; Campos Decl., ¶ 6, Ex. E, 123:3-8, 124:13-20. | Undisputed. |
| 142. | Moreover, Cox did not personally know Plaintiff at the time she recommended his termination.   Cox Decl., ¶ 14. | Undisputed. |
| 143. | Cox's recommendation to terminate Plaintiff was based solely on the severity of his safety violations as a Foreman. Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 67:20-68:3, 71:10-15; Cox Decl. ¶ 9-11. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

151

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. |
| | | (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |
| | | In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| | | Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". |
| | | (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

152

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | When enforced, hard hat violations typically resulted in either a verbal warning or write up.<br><br>(Foshee Decl. ¶27 ) |
| 144. | Throughout Plaintiff's employment, Defendant maintained a "zero-tolerance policy for unlawful discrimination, harassment or retaliation and will not tolerate any such conduct." Cox Decl., ¶ 15, Ex. A; Campos Decl., ¶ 6, Ex. E, 112:18-24, 120:3-121:17, Exh. 1 thereto. | Disputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4)<br><br>In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

153

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".

(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)

When enforced, hard hat violations typically resulted in either a verbal warning or write up.

(Foshee Decl. ¶27 ) |
| 145. | Defendant's policy specifically provides that:

"MasTec provides equal employment opportunities to all qualified individuals without regard to race, color, … national origin, … disability or any other basis or characteristic protected by applicable law. MasTec is also committed to providing a work environment free of harassment on the basis of race, color, national origin … | Disputed.

Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.

(Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4)

In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

154

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | or disability or any other characteristic protected by applicable law. It is the responsibility of each and every employee to report unlawful harassment or discrimination when it occurs-whether they are a victim of, or a witness to, unlawful behavior. Employees will be protected from retaliation for opposing unlawful discriminatory practices when they report, in good faith, unlawful harassment or discrimination. Reports of unlawful harassment, discrimination or retaliation can be made to your Human Resources contact or by contacting **Convercent** (formerly **MySafeWorkplace).** Human Resources will investigate all allegations of unlawful harassment and discrimination promptly, impartially and in a confidential manner. If the Company determines that unlawful harassment, discrimination or retaliation has occurred, it will take prompt and effective remedial action." (Emphasis in original.) | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | When enforced, hard hat violations typically resulted in either a verbal warning or write up.<br><br>(Foshee Decl. ¶27 ) |
| 146. | Throughout Plaintiff's employment, Defendant also maintained a Reasonable Accommodation Policy.   Cox Decl., ¶ 16, Ex. B. | Undisputed as to the existence of the written policy. Disputed as to its enforcement.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

156

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 147. | Defendant's policy states that: "To comply with applicable laws ensuring equal employment opportunities to individuals with disabilities (even if in remission or ameliorated), MasTec will make reasonable accommodations for the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee unless undue hardship and/or a direct threat to the health and/or safety of the individual or others would result. Any applicant or employee who requires an accommodation in order to perform the essential functions of the job should contact your Human Resources Contact and request such an accommodation in writing." | Undisputed as to the existence of the written policy. Disputed as to its enforcement. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

157

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..

(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)

Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.

(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.

(Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 )

Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.

(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)

Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.

(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

158

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 148. | At all relevant times, Defendant maintained procedures for complaints of discrimination, mistreatment, and substance abuse.    Cox Decl., ¶ 17, Ex. C. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 149. | Employees were advised to report suspected harassment or discrimination to their Human Resources Contact, or by using the online portal Convercent. Cox Decl., ¶ 17, Ex. C. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

161

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 150. | As the handbook provides, "Convercent . . . is a 24-hour incident reporting hotline. Convercent allows you to make reports on a wide variety of topics, including, but not limited to, reports of accounting irregularities, fraud, theft, unsafe working conditions, harassment, discrimination, mistreatment . . . safety violations, substance abuse or threats of violence." Cox Decl., ¶ 17, Ex. C. | Undisputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

162

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 151. | Defendant's Open Door Policy instructed employees to speak with their immediate supervisor to address work-related issues. Cox Decl., ¶ 18, Ex. D. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

163

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 152. | However, if an employee felt uncomfortable speaking directly with their supervisor, they could meet directly with their department's manager, Human Resources Contact, general manager, or | Undisputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

164

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | other appropriate management personnel. Cox Decl., ¶ 18, Ex. D. | |
| 153. | Employees could also report issues through Defendant's hotline, Convercent. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 154. | During Plaintiff's employment, Defendant strictly prohibited the use of drugs and alcohol in the workplace. Cox Decl., ¶ 19, Ex. E; Campos Decl., ¶ 4-5, Ex. C, 35:10-36:2, Ex. D, 42:5-8. | Disputed. Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well. (Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) Other Mastec employees observed frequent and open drug abuse while at the Fresno office. (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19) In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management (Foshee Decl. ¶ 11) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22)<br><br>HR representative Cox testified that drug offenses could be immediately escalated beyond Mastec's progressive approach to discipline.<br><br>(Exh. J at 47:10-48:10, 85:5-16) |
| 155. | Employees were advised to report any substance abuse through Convercent. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Cox Decl., ¶ 17, Ex. C; Campos Decl., ¶ 4, Ex. C, 35:21-36:2. | were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

167

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 156. | Pursuant to Defendant's Open Door Policy, employees could also report substance abuse issues to their appropriate managers or their Human Resources Contact.   Cox Decl., ¶ 18, Ex. D. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

168

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management

(Foshee Decl. ¶ 11)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 157. | During his employment, Plaintiff never made, or threatened to make, any formal complaint with Defendant or any other entity regarding alleged drug use.    Cox Decl., ¶ 20; Campos Decl., ¶ 3-6, Ex. B, 40:4-8, 65:13-19, Ex. C, 35:10-12, 36:18-22, Ex. D, 38:22-39:11, 63:20-64:9, Ex. E, 85:12-21, 86:10-17, 87:6-19, 90:17-24. | Disputed.

Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18- |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | 62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) |
| | | Other Mastec employees observed frequent and open drug abuse while at the Fresno office. |
| | | (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Foshee Decl. ¶22) |
| 158. | The only "complaints" Plaintiff alleges to have made regarding the alleged drug use were to his co-workers, simply stating that the alleged drug users did not do anything and were making his job difficult.    Cox Decl., ¶ 20; Campos Decl., ¶ 3, Ex. B, 40:4-8, 47:3-48:3, 65:13-24. | Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

171

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 159. | Barrie testified that Plaintiff never expressed to him any concern regarding drinking or drug use at work, or that he wanted to step down from his position as a Construction Manager because of the alleged drinking and drug use.<br>Campos Decl., ¶ 5, Ex. D, 38:22-39:8, 63:20-64:9. | Dispsuted.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 160. | Galvez also testified that Plaintiff never reported any alleged drinking or drug use to him. Campos Decl., ¶ 4, Ex. C, 35:10-12, 36:18-22. | Undisputed. |
| 161. | During his employment, Plaintiff never complained of any unfair treatment or discrimination based upon his race. Cox Decl., ¶ 21. | Disputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Barrie say "I never say nigger unless I'm fighting someone or something". |
| | | (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |
| | | Plaintiff took a single drug test during his employment with Mastec which came back negative. Plaintiff was never suspected to have been using drugs. |
| | | (Exh. J 94:12-95:96:8, 102:25-103:5; Exh. L at 5:16-56:6, 56:21-24 Foshee Decl. ¶ 2) |
| | | After Plaintiff was terminated a potential employer called Mastec and was told that Plaintiff had failed a drug test. |
| | | (Exh. M at 21:7-19, 23:4-11; Foshee Decl. ¶ 32) |
| 162. | Plaintiff alleges that he did not receive support from his managers, however none of Plaintiff's allegations are tied to his race. Campos Decl., ¶ 3, Ex. B, 40:4-8, 41:17-43:10, 44:17-45:20, 46:5-48:3, 65:13-24. | Disputed. Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations. (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

**Issue No. (3) Plaintiff's Third Cause of Action for medical leave retaliation in violation of California Government Code Section 12945.2: Plaintiff cannot establish a prima facie case, and even if he could, Defendant terminated Plaintiff's employment for a legitimate, non-retaliatory reason, and Plaintiff cannot establish that Defendant's reason was pretextual.**

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 163. | Plaintiff worked for Defendant as a Foreman until he was promoted to a Construction Manager in about March 2019. Cox Decl. ¶ 5. 2019. | Disputed.<br><br>Plaintiff requested to step down from the Contruction Manager position on June 17, 2019 and return to his previous role as Foreman. Plaintiff complained about the work environment and illegal behavior of Mastec management to coworkers and Mgr. Jusin Barrie ("Mgr. Barrie").<br><br>(Exh. R; Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 47: 3-48: 3, 57:24-58:18, 66:18-67:19; Exh. F at 20:23-21:4; Exh. I at 35:20-36:6, Exh. H at 54:11-21 Foshee Decl. ¶ 20, 21, 22) |
| 164. | On April 18, 2019, Plaintiff failed to appear for his scheduled shift. Campos Decl. ¶ 4, Ex. C, 48:20-49:23, Exh. 1 thereto | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to |

| MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | inform Mastec that he would be unable to come in that day as a result of the ear infection. |
| | (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) |
| | Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |
| | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |
| | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |
| | (Exh. G at 49:1-20, Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶ 13) |
| | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| | Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

177

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 165. | Plaintiff's Project Manager, Miguel Galvez ("Galvez"), and Operations Manager, Joseph Ecklind ("Ecklind"), attempted to contact Plaintiff yet they were unable to reach him. Campos Decl., ¶ 4, Ex. C, 40:24-41:8. | Disputed. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

178

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.

(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 166. | As a result, Galvez emailed Plaintiff advising him that he would be written up because he did not call in or appear for his shift.    Campos Decl., ¶ 3-4, Ex. B, 55:7-56:18, Exh. 3 thereto, Ex. C, 48:20-49:23, Exh. 1 thereto. | Disputed.

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶12,13)

Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.

(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)

Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".

(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13, 14) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

179

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 167. | Once Plaintiff received this email, he called Galvez and explained that he was receiving medical care for a dual ear infection.  Campos Decl., ¶ 3-4, Ex. B, 49:5-12, Ex. C, 41:20-42:12. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass" |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

180

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)

Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.

(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 168. | Plaintiff and Galvez had a verbal disagreement over the phone regarding Plaintiff's failure to appear for work. Campos Decl., ¶ 3-5, Ex. B, 49:13-20, Ex. C, 43:3-25, Ex. D, 43:6-44:6. | Undisputed, as to the occurrence of the phone call. Disputed, as to categorizing the phone call as a "verbal disagreement"

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)

Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.

(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)

Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

181

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 169. | Plaintiff's Project Manager, Justin Barrie ("Barrie") met with Galvez and Plaintiff over the phone to work through their disagreement.   Campos Decl., ¶ 3-5, Ex. B 50:11-21, Ex. C, 46:18-47:10, Ex. D, 47:6-48:13. | Disputed.

Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.

(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16)

Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.

(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee Decl. ¶16)

Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

182

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 170. | Ultimately, Barrie, Galvez, and Plaintiff resolved the conflict, and Plaintiff was not written up for his failure to call in or appear for work.    Campos Decl., ¶ 3-5, Ex. B, 57:2-4, Ex. C, 46:15-47:10, 50:25-51:8, 51:18-52:12, Ex. D, 47:6-48:16. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 171. | Plaintiff was released to return to work on April 20, 2019 with no restrictions. Campos Decl., ¶ 3, Ex. B, 52:8-19, Exh. 2 thereto. | Undisputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

183

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 172. | However, Plaintiff voluntarily chose to return to work on April 19, 2019. Campos Decl., ¶ 3, Ex. B, 52:20-53:8, 53:12-15. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

184

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16)<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days.<br><br>(Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 173. | Plaintiff never requested any accommodation or leave for his dual ear infection or any other medical condition. Cox Decl., ¶ 7-8; Campos Decl. ¶ 3, Ex. B, 84:23-85:8. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

185

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass" |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 174. | Plaintiff admits that aside from this time off to heal from his dual ear infection, he did not need any accommodations to do his | Disputed. Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

186

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | job.     Campos Decl., ¶ 3, Ex. B, 84:23-85:3. | Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 175. | Plaintiff did not have any other medical condition that impacted his ability to do his job during his employment at Defendant. Campos Decl., ¶ 3, Ex. B, 82:9-16, 85:4-8. | Disputed.<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| 176. | Just a few months after his promotion to Construction Manager Plaintiff voluntarily requested to return to his position as a Foreman.     Campos Decl., ¶ 3, Ex. B, 66:11-69:25, Exh. 4 thereto. | Undisputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties and were generally poor communicators as a result of their drug use as well. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

187

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 177. | On June 17, 2019, Plaintiff emailed Ecklind "requesting to step back down to a | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

188

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | foreman roll [sic]," because "timing and life is playing a big roll [sic] in this interest but I think it is the best decision for everyone at this time. I want our team to win and this is just what's best right now." Campos Decl., ¶ 3, Ex. B, 68:5-22, Exh. 4 thereto. | were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

189

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 178. | Even though Plaintiff voluntarily requested his demotion back down to a Foreman, Barrie fought for Plaintiff to retain his higher rate of pay because of Plaintiff's management experience. Campos Decl., ¶ 3, 5-6, Ex. B, 66:11-69:25, Exh. 4 thereto, Ex. D, 37:21-38:21, Ex. E, 65:3-20. | Disputed.<br><br>Plaintiff's salary upon returning to his position as foreman was determined by the prevailing market rate.<br><br>(Exh. S) |
| 179. | Accordingly, effective July 6, 2019, Plaintiff was returned to his position as a Foreman at a rate of $32.00 per hour, rather than the rate of $28.91 per hour he previously earned as a Foreman just a few months earlier. Campos Decl., ¶ 5, Ex. B, 68:5-22, Ex. E, 65:3-20; Cox Decl., ¶ 6. | Undisputed. |
| 180. | On September 25, 2019, one of Defendant's clients notified Defendant that they observed several issues at Plaintiff's job site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

190

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 181. | Specifically, the client reported that they arrived on the site at 10:15 AM and the crew was not yet on site.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 182. | The client returned about 30 minutes later and went over the client's policies and requirements with the crew.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 183. | The client left the crew with a warning. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Foshee Decl. ¶25) |
| 184. | Later that day, the client passed by the job site again and observed Plaintiff in a man lift without a hard hat, at which point the decision was made to shut down the site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.

No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.

(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)

No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.

(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.

(Exh. L at: 29:22-30:13) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

192

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 185. | The client also reported that all of Plaintiff's crew were on site without hard hats on nor in the vicinity.     Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.

No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

194

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 186. | The client advised Defendant that all of its policies must be followed.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

195

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| 187. | The client sent Defendant photographs clearly showing Plaintiff up in the man lift without a hard hat. Cox Decl., ¶ 9; Campos Decl., ¶ 3, 6, Ex. B, 74:10-76:13, Exh. 5 thereto, Ex. E, 59:23-61:5, 80:1-9, 81:16-20, Exh.s 2, 5a, 5b thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 188. | Following Plaintiff's safety violations, Ecklind and Barrie pushed for Plaintiff to be placed on a performance improvement plan, instead of terminating his | Disputed.<br><br>Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

197

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | employment.    Campos Decl., ¶ 5-6, Ex. D, 49:1-7, 49:13-15, Ex. E, 59:23-60:13, 62:25-64:5, 64:6-17. | authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.<br><br>(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 189. | However, after speaking with Windy Cox ("Cox") of Human Resources, it became clear that Plaintiff's safety violations as a Foreman warranted termination, given that the client caught Plaintiff violating policy multiple times in one day, ultimately had to shut down the site, and submitted photographic evidence of Plaintiff in the man lift without a hard hat.    Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>Mastec HR has the authority to make recommendations regarding terminations. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

198

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.

(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)

This contradicts the claims to Plaintiff by Mgr. Ecklind and Mgr. Barrie that Plaintiff's termination had been decided by HR.

(Exh. J at: 29:1-14; Exh. G at 79:22-25; Exh. I at 48:20-25; Foshee Decl. ¶28)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.

(Exh. J at 53:16-25, 62:16-24)

Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

199

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 190. | Therefore, Cox recommended terminating Plaintiff's employment based upon his safety violations and the position that he held.    Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | Disputed. Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage. (Foshee Decl. ¶25) No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) Mastec did not investigate the incident by speaking to crew members or the |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

200

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.<br><br>(Exh. L at: 29:22-30:13)<br><br>Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

201

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 191. | After receiving Cox's recommendation, Barrie and Ecklind agreed to move forward with Plaintiff's termination. Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 69:8-13, 69:22-25. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)

Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"

(Exh. B, Exh. F at 19:9-20:4) |
| 192. | On September 30, 2019, Defendant terminated Plaintiff's employment for his failure to enforce and follow safety protocol by not wearing a hard hat while in the man lift, and for allowing his team on the job site without hard hats.    Campos Decl., ¶ 3-6, Ex. B, 72:18-74:3, 80:18-82:8, Exh. 6 thereto, Ex. C, 62:13-64:9, Ex. D, 60:20-62:2, Exh. 6 thereto, Ex. E, 76:22-77:19, Exh. 4 thereto. | Disputed.

Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.

(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3; 47: 3-24, Foshee Decl. ¶16 )

Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.

(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

204

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

205

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 193. | Plaintiff admits that he was terminated "because of [his] not having a hard hat on" and that Defendant's client, "took a picture of that, and, yeah, and that's – I was terminated because of it." Campos Decl., ¶ 3, Ex. B, 72:18-74:3. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

206

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

207

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 194. | In her role with Human Resources, Cox had access to Defendant's general demographic information. Cox Decl., ¶ 12; Campos Decl., ¶ 6, Ex. E, 121:18-25. | Undisputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

208

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |
| 195. | However, Cox did not specifically know the demographics of Plaintiff's location by memory.   Cox Decl., ¶ 13; Campos Decl., ¶ 6, Ex. E, 123:3-8, 124:13-20. | Undisputed. |
| 196. | Moreover, Cox did not personally know Plaintiff at the time she recommended his termination.   Cox Decl., ¶ 14. | Undisputed. |
| 197. | Cox's recommendation to terminate Plaintiff was based solely on the severity of his safety violations as a Foreman. Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 67:20-68:3, 71:10-15; Cox Decl. ¶ 9-11. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

209

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. |
| | | (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |
| | | In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| | | Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". |
| | | (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

210

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | When enforced, hard hat violations typically resulted in either a verbal warning or write up. |
| | | (Foshee Decl. ¶27 ) |
| 198. | Throughout Plaintiff's employment, Defendant maintained a "zero-tolerance policy for unlawful discrimination, harassment or retaliation and will not tolerate any such conduct." Cox Decl., ¶ 15, Ex. A; Campos Decl., ¶ 6, Ex. E, 112:18-24, 120:3-121:17, Exh. 1 thereto. | Disputed. |
| | | Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. |
| | | (Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4) |
| | | In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

211

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".

(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)

When enforced, hard hat violations typically resulted in either a verbal warning or write up.

(Foshee Decl. ¶27 ) |
| 199. | Defendant's policy specifically provides that:

"MasTec provides equal employment opportunities to all qualified individuals without regard to race, color, … national origin, … disability or any other basis or characteristic protected by applicable law. MasTec is also committed to providing a work environment free of harassment on the basis of race, color, national origin … | Disputed.

Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.

(Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4)

In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

212

| MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| or disability or any other characteristic protected by applicable law. It is the responsibility of each and every employee to report unlawful harassment or discrimination when it occurs-whether they are a victim of, or a witness to, unlawful behavior. Employees will be protected from retaliation for opposing unlawful discriminatory practices when they report, in good faith, unlawful harassment or discrimination.<br><br>Reports of unlawful harassment, discrimination or retaliation can be made to your Human Resources contact or by contacting **Convercent** (formerly **MySafeWorkplace). Human Resources** will investigate all allegations of unlawful harassment and discrimination promptly, impartially and in a confidential manner. If the Company determines that unlawful harassment, discrimination or retaliation has occurred, it will take prompt and effective remedial action."<br>(Emphasis in original.) | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br><br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | When enforced, hard hat violations typically resulted in either a verbal warning or write up.<br><br>(Foshee Decl. ¶27 ) |
| 200. | Throughout Plaintiff's employment, Defendant also maintained a Reasonable Accommodation Policy.   Cox Decl., ¶ 16, Ex. B. | Undisputed as to the existence of the written policy. Disputed as to its enforcement.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

214

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)

Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.

(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 201. | Defendant's policy states that:

"To comply with applicable laws ensuring equal employment opportunities to individuals with disabilities (even if in remission or ameliorated), MasTec will make reasonable accommodations for the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee unless undue hardship and/or a direct threat to the health and/or safety of the individual or others would result. Any applicant or employee who requires an accommodation in order to perform the essential functions of the job should contact your Human Resources Contact and request such an accommodation in writing." | Undisputed as to the existence of the written policy. Disputed as to its enforcement.

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)

Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.

(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)

Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

215

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |
| | | (Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 ) |
| | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

216

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 202. | At all relevant times, Defendant maintained procedures for complaints of discrimination, mistreatment, and substance abuse.    Cox Decl., ¶ 17, Ex. C. | Disputed. <br><br> Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. <br><br> (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) <br><br> Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. <br><br> (Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) <br><br> Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. <br><br> (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) <br><br> Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

217

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 203. | Employees were advised to report suspected harassment or discrimination to their Human Resources Contact, or by using the online portal Convercent. Cox Decl., ¶ 17, Ex. C. | Disputed. Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

218

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |
| | | (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) |
| | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

219

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 204. | As the handbook provides, "Convercent . . . is a 24-hour incident reporting hotline. Convercent allows you to make reports on a wide variety of topics, including, but not limited to, reports of accounting irregularities, fraud, theft, unsafe working conditions, harassment, discrimination, mistreatment . . . safety violations, substance abuse or threats of violence." Cox Decl., ¶ 17, Ex. C. | Undisputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

220

| | **MOVING PARTY'S UNDISPUTED FACTS** | **OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE** |
|---|---|---|
| 205. | Defendant's Open Door Policy instructed employees to speak with their immediate supervisor to address work-related issues. Cox Decl., ¶ 18, Ex. D. | Disputed.

Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..

(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)

Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.

(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )

Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.

(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)

Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

221

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | did not persist for fear that he would be written up by Mgr. Barrie.

(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 206. | However, if an employee felt uncomfortable speaking directly with their supervisor, they could meet directly with their department's manager, Human Resources Contact, general manager, or | Undisputed. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | other appropriate management personnel. Cox Decl., ¶ 18, Ex. D. | |
| 207. | Employees could also report issues through Defendant's hotline, Convercent. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 208. | During Plaintiff's employment, Defendant strictly prohibited the use of drugs and alcohol in the workplace. Cox Decl., ¶ 19, Ex. E; Campos Decl., ¶ 4-5, Ex. C, 35:10-36:2, Ex. D, 42:5-8. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management<br><br>(Foshee Decl. ¶ 11) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

223

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22)<br><br>HR representative Cox testified that drug offenses could be immediately escalated beyond Mastec's progressive approach to discipline.<br><br>(Exh. J at 47:10-48:10, 85:5-16) |
| 209. | Employees were advised to report any substance abuse through Convercent. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

224

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Cox Decl., ¶ 17, Ex. C; Campos Decl., ¶ 4, Ex. C, 35:21-36:2. | were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 210. | Pursuant to Defendant's Open Door Policy, employees could also report substance abuse issues to their appropriate managers or their Human Resources Contact.   Cox Decl., ¶ 18, Ex. D. | Disputed. Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well. (Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

226

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management |
| | | (Foshee Decl. ¶ 11) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 211. | During his employment, Plaintiff never made, or threatened to make, any formal complaint with Defendant or any other entity regarding alleged drug use.    Cox Decl., ¶ 20; Campos Decl., ¶ 3-6, Ex. B, 40:4-8, 65:13-19, Ex. C, 35:10-12, 36:18-22, Ex. D, 38:22-39:11, 63:20-64:9, Ex. E, 85:12-21, 86:10-17, 87:6-19, 90:17-24. | Disputed.

Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18- |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

227

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | 62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Other Mastec employees observed frequent and open drug abuse while at the Fresno office.

(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

228

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Foshee Decl. ¶22) |
| 212. | The only "complaints" Plaintiff alleges to have made regarding the alleged drug use were to his co-workers, simply stating that the alleged drug users did not do anything and were making his job difficult.     Cox Decl., ¶ 20; Campos Decl., ¶ 3, Ex. B, 40:4-8, 47:3-48:3, 65:13-24. | Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

229

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 213. | Barrie testified that Plaintiff never expressed to him any concern regarding drinking or drug use at work, or that he wanted to step down from his position as a Construction Manager because of the alleged drinking and drug use.<br>Campos Decl., ¶ 5, Ex. D, 38:22-39:8, 63:20-64:9. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 214. | Galvez also testified that Plaintiff never reported any alleged drinking or drug use to him.   Campos Decl., ¶ 4, Ex. C, 35:10-12, 36:18-22. | Undisputed. |
| 215. | During his employment, Plaintiff never complained of any unfair treatment or discrimination based upon his race.   Cox Decl., ¶ 21. | Disputed.

Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.

(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4)

Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Barrie say "I never say nigger unless I'm fighting someone or something". |
| | | (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |
| | | Plaintiff took a single drug test during his employment with Mastec which came back negative. Plaintiff was never suspected to have been using drugs. |
| | | (Exh. J 94:12-95:96:8, 102:25-103:5; Exh. L at 5:16-56:6, 56:21-24 Foshee Decl. ¶ 2) |
| | | After Plaintiff was terminated a potential employer called Mastec and was told that Plaintiff had failed a drug test. |
| | | (Exh. M at 21:7-19, 23:4-11; Foshee Decl. ¶ 32) |
| 216. | Plaintiff alleges that he did not receive support from his managers, however none of Plaintiff's allegations are tied to his race. Campos Decl., ¶ 3, Ex. B, 40:4-8, 41:17-43:10, 44:17-45:20, 46:5-48:3, 65:13-24. | Disputed. Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations. (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

232

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

233

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

**Issue No. (4) Plaintiff's Fourth Cause of Action for disability discrimination: Plaintiff cannot establish a prima facie case, and even if he could, Defendant terminated Plaintiff's employment for a legitimate, non-discriminatory reason, and Plaintiff cannot establish that Defendant's reason was pretextual.**

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 217. | Plaintiff worked for Defendant as a Foreman until he was promoted to a Construction Manager in about March 2019. Cox Decl. ¶ 5. 2019. | Disputed. Plaintiff requested to step down from the Contruction Manager position on June 17, 2019 and return to his previous role as Foreman. Plaintiff complained about the work environment and illegal behavior of Mastec management to coworkers and Mgr. Jusin Barrie ("Mgr. Barrie"). (Exh. R; Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 47: 3-48: 3, 57:24-58:18, 66:18-67:19; Exh. F at 20:23-21:4; Exh. I at 35:20-36:6, Exh. H at 54:11-21 Foshee Decl. ¶ 20, 21, 22) |
| 218. | On April 18, 2019, Plaintiff failed to appear for his scheduled shift. Campos | Disputed. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

234

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Decl. ¶ 4, Ex. C, 48:20-49:23, Exh. 1 thereto | chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶ 13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22)<br><br>Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

235

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 219. | Plaintiff's Project Manager, Miguel Galvez ("Galvez"), and Operations Manager, Joseph Ecklind ("Ecklind"), attempted to contact Plaintiff yet they were unable to reach him.    Campos Decl., ¶ 4, Ex. C, 40:24-41:8. | Disputed. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

236

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 220. | As a result, Galvez emailed Plaintiff advising him that he would be written up because he did not call in or appear for his shift.   Campos Decl., ¶ 3-4, Ex. B, 55:7-56:18, Exh. 3 thereto, Ex. C, 48:20-49:23, Exh. 1 thereto. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶12,13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13, 14) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

237

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 221. | Once Plaintiff received this email, he called Galvez and explained that he was receiving medical care for a dual ear infection. Campos Decl., ¶ 3-4, Ex. B, 49:5-12, Ex. C, 41:20-42:12. | Disputed.

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)

Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.

(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)

Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass" |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 222. | Plaintiff and Galvez had a verbal disagreement over the phone regarding Plaintiff's failure to appear for work. Campos Decl., ¶ 3-5, Ex. B, 49:13-20, Ex. C, 43:3-25, Ex. D, 43:6-44:6. | Undisputed, as to the occurrence of the phone call. Disputed, as to categorizing the phone call as a "verbal disagreement"<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

239

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 223. | Plaintiff's Project Manager, Justin Barrie ("Barrie") met with Galvez and Plaintiff over the phone to work through their disagreement.   Campos Decl., ¶ 3-5, Ex. B 50:11-21, Ex. C, 46:18-47:10, Ex. D, 47:6-48:13. | Disputed.

Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.

(Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16)

Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.

(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee Decl. ¶16)

Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

240

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 224. | Ultimately, Barrie, Galvez, and Plaintiff resolved the conflict, and Plaintiff was not written up for his failure to call in or appear for work. Campos Decl., ¶ 3-5, Ex. B, 57:2-4, Ex. C, 46:15-47:10, 50:25-51:8, 51:18-52:12, Ex. D, 47:6-48:16. | Disputed. Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 ) Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 225. | Plaintiff was released to return to work on April 20, 2019 with no restrictions. Campos Decl., ¶ 3, Ex. B, 52:8-19, Exh. 2 thereto. | Undisputed. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 226. | However, Plaintiff voluntarily chose to return to work on April 19, 2019.  Campos Decl., ¶ 3, Ex. B, 52:20-53:8, 53:12-15. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16)

Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.

(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)

Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days.

(Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 227. | Plaintiff never requested any accommodation or leave for his dual ear infection or any other medical condition. Cox Decl., ¶ 7-8; Campos Decl. ¶ 3, Ex. B, 84:23-85:8. | Disputed.

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)

Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

243

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass"<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 228. | Plaintiff admits that aside from this time off to heal from his dual ear infection, he did not need any accommodations to do his | Disputed.<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

244

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | job. Campos Decl., ¶ 3, Ex. B, 84:23-85:3. | Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 229. | Plaintiff did not have any other medical condition that impacted his ability to do his job during his employment at Defendant. Campos Decl., ¶ 3, Ex. B, 82:9-16, 85:4-8. | Disputed.<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| 230. | Just a few months after his promotion to Construction Manager Plaintiff voluntarily requested to return to his position as a Foreman. Campos Decl., ¶ 3, Ex. B, 66:11-69:25, Exh. 4 thereto. | Undisputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties and were generally poor communicators as a result of their drug use as well. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

245

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 231. | On June 17, 2019, Plaintiff emailed Ecklind "requesting to step back down to a | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

246

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | foreman roll [sic]," because "timing and life is playing a big roll [sic] in this interest but I think it is the best decision for everyone at this time. I want our team to win and this is just what's best right now." Campos Decl., ¶ 3, Ex. B, 68:5-22, Exh. 4 thereto. | were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

247

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 232. | Even though Plaintiff voluntarily requested his demotion back down to a Foreman, Barrie fought for Plaintiff to retain his higher rate of pay because of Plaintiff's management experience. Campos Decl., ¶ 3, 5-6, Ex. B, 66:11-69:25, Exh. 4 thereto, Ex. D, 37:21-38:21, Ex. E, 65:3-20. | Disputed.<br><br>Plaintiff's salary upon returning to his position as foreman was determined by the prevailing market rate.<br><br>(Exh. S) |
| 233. | Accordingly, effective July 6, 2019, Plaintiff was returned to his position as a Foreman at a rate of $32.00 per hour, rather than the rate of $28.91 per hour he previously earned as a Foreman just a few months earlier. Campos Decl., ¶ 5, Ex. B, 68:5-22, Ex. E, 65:3-20; Cox Decl., ¶ 6. | Undisputed. |
| 234. | On September 25, 2019, one of Defendant's clients notified Defendant that they observed several issues at Plaintiff's job site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

248

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 235. | Specifically, the client reported that they arrived on the site at 10:15 AM and the crew was not yet on site.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 236. | The client returned about 30 minutes later and went over the client's policies and requirements with the crew.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 237. | The client left the crew with a warning. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Foshee Decl. ¶25) |
| 238. | Later that day, the client passed by the job site again and observed Plaintiff in a man lift without a hard hat, at which point the decision was made to shut down the site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.<br><br>(Exh. L at: 29:22-30:13) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

250

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 239. | The client also reported that all of Plaintiff's crew were on site without hard hats on nor in the vicinity. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed. No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

251

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)

No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.

(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.

(Exh. L at: 29:22-30:13)

Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

252

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 240. | The client advised Defendant that all of its policies must be followed.  Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

253

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| 241. | The client sent Defendant photographs clearly showing Plaintiff up in the man lift without a hard hat. Cox Decl., ¶ 9; Campos Decl., ¶ 3, 6, Ex. B, 74:10-76:13, Exh. 5 thereto, Ex. E, 59:23-61:5, 80:1-9, 81:16-20, Exh.s 2, 5a, 5b thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

254

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.<br><br>(Exh. L at: 29:22-30:13)<br><br>Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 242. | Following Plaintiff's safety violations, Ecklind and Barrie pushed for Plaintiff to be placed on a performance improvement plan, instead of terminating his | Disputed.<br><br>Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

255

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | employment. Campos Decl., ¶ 5-6, Ex. D, 49:1-7, 49:13-15, Ex. E, 59:23-60:13, 62:25-64:5, 64:6-17. | authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.<br><br>(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 243. | However, after speaking with Windy Cox ("Cox") of Human Resources, it became clear that Plaintiff's safety violations as a Foreman warranted termination, given that the client caught Plaintiff violating policy multiple times in one day, ultimately had to shut down the site, and submitted photographic evidence of Plaintiff in the man lift without a hard hat. Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>Mastec HR has the authority to make recommendations regarding terminations. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

256

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.<br><br>(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)<br><br>This contradicts the claims to Plaintiff by Mgr. Ecklind and Mgr. Barrie that Plaintiff's termination had been decided by HR.<br><br>(Exh. J at: 29:1-14; Exh. G at 79:22-25; Exh. I at 48:20-25; Foshee Decl. ¶28)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

257

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 244. | Therefore, Cox recommended terminating Plaintiff's employment based upon his safety violations and the position that he held.  Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.<br><br>(Exh. L at: 29:22-30:13)<br><br>Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

259

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)

Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"

(Exh. B, Exh. F at 19:9-20:4) |
| 245. | After receiving Cox's recommendation, Barrie and Ecklind agreed to move forward with Plaintiff's termination. Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 69:8-13, 69:22-25. | Disputed.

No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.

(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)

No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.

(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

260

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.<br><br>(Exh. L at: 29:22-30:13)<br><br> Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

261

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 246. | On September 30, 2019, Defendant terminated Plaintiff's employment for his failure to enforce and follow safety protocol by not wearing a hard hat while in the man lift, and for allowing his team on the job site without hard hats. Campos Decl., ¶ 3-6, Ex. B, 72:18-74:3, 80:18-82:8, Exh. 6 thereto, Ex. C, 62:13-64:9, Ex. D, 60:20-62:2, Exh. 6 thereto, Ex. E, 76:22-77:19, Exh. 4 thereto. | Disputed. |
| | | Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |
| | | (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3; 47: 3-24, Foshee Decl. ¶16 ) |
| | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. (Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20) On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

263

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 247. | Plaintiff admits that he was terminated "because of [his] not having a hard hat on" and that Defendant's client, "took a picture of that, and, yeah, and that's – I was terminated because of it." Campos Decl., ¶ 3, Ex. B, 72:18-74:3. | Disputed. Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

264

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

265

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 248. | In her role with Human Resources, Cox had access to Defendant's general demographic information. Cox Decl., ¶ 12; Campos Decl., ¶ 6, Ex. E, 121:18-25. | Undisputed. Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

266

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |
| 249. | However, Cox did not specifically know the demographics of Plaintiff's location by memory. Cox Decl., ¶ 13; Campos Decl., ¶ 6, Ex. E, 123:3-8, 124:13-20. | Undisputed. |
| 250. | Moreover, Cox did not personally know Plaintiff at the time she recommended his termination. Cox Decl., ¶ 14. | Undisputed. |
| 251. | Cox's recommendation to terminate Plaintiff was based solely on the severity of his safety violations as a Foreman. Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 67:20-68:3, 71:10-15; Cox Decl. ¶ 9-11. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

267

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.

(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4)

In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)

Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".

(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

268

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | When enforced, hard hat violations typically resulted in either a verbal warning or write up.<br><br>(Foshee Decl. ¶27 ) |
| 252. | Throughout Plaintiff's employment, Defendant maintained a "zero-tolerance policy for unlawful discrimination, harassment or retaliation and will not tolerate any such conduct." Cox Decl., ¶ 15, Ex. A; Campos Decl., ¶ 6, Ex. E, 112:18-24, 120:3-121:17, Exh. 1 thereto. | Disputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4)<br><br>In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

269

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".

(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)

When enforced, hard hat violations typically resulted in either a verbal warning or write up.

(Foshee Decl. ¶27 ) |
| 253. | Defendant's policy specifically provides that:

"MasTec provides equal employment opportunities to all qualified individuals without regard to race, color, … national origin, … disability or any other basis or characteristic protected by applicable law. MasTec is also committed to providing a work environment free of harassment on the basis of race, color, national origin … | Disputed.

Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.

(Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4)

In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | or disability or any other characteristic protected by applicable law. It is the responsibility of each and every employee to report unlawful harassment or discrimination when it occurs-whether they are a victim of, or a witness to, unlawful behavior. Employees will be protected from retaliation for opposing unlawful discriminatory practices when they report, in good faith, unlawful harassment or discrimination. Reports of unlawful harassment, discrimination or retaliation can be made to your Human Resources contact or by contacting **Convercent** (formerly **MySafeWorkplace).** Human Resources will investigate all allegations of unlawful harassment and discrimination promptly, impartially and in a confidential manner. If the Company determines that unlawful harassment, discrimination or retaliation has occurred, it will take prompt and effective remedial action." (Emphasis in original.) | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br><br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

271

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | When enforced, hard hat violations typically resulted in either a verbal warning or write up.<br><br>(Foshee Decl. ¶27 ) |
| 254. | Throughout Plaintiff's employment, Defendant also maintained a Reasonable Accommodation Policy. Cox Decl., ¶ 16, Ex. B. | Undisputed as to the existence of the written policy. Disputed as to its enforcement.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 255. | Defendant's policy states that: "To comply with applicable laws ensuring equal employment opportunities to individuals with disabilities (even if in remission or ameliorated), MasTec will make reasonable accommodations for the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee unless undue hardship and/or a direct threat to the health and/or safety of the individual or others would result. Any applicant or employee who requires an accommodation in order to perform the essential functions of the job should contact your Human Resources Contact and request such an accommodation in writing." | Undisputed as to the existence of the written policy. Disputed as to its enforcement. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

273

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |
| | | (Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 ) |
| | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 256. | At all relevant times, Defendant maintained procedures for complaints of discrimination, mistreatment, and substance abuse. Cox Decl., ¶ 17, Ex. C. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 257. | Employees were advised to report suspected harassment or discrimination to their Human Resources Contact, or by using the online portal Convercent. Cox Decl., ¶ 17, Ex. C. | Disputed. Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |
| | | (Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) |
| | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

277

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 258. | As the handbook provides, "Convercent . . . is a 24-hour incident reporting hotline. Convercent allows you to make reports on a wide variety of topics, including, but not limited to, reports of accounting irregularities, fraud, theft, unsafe working conditions, harassment, discrimination, mistreatment . . . safety violations, substance abuse or threats of violence." Cox Decl., ¶ 17, Ex. C. | Undisputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

278

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 259. | Defendant's Open Door Policy instructed employees to speak with their immediate supervisor to address work-related issues. Cox Decl., ¶ 18, Ex. D. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

279

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 260. | However, if an employee felt uncomfortable speaking directly with their supervisor, they could meet directly with their department's manager, Human Resources Contact, general manager, or | Undisputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

280

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | other appropriate management personnel. Cox Decl., ¶ 18, Ex. D. | |
| 261. | Employees could also report issues through Defendant's hotline, Convercent. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 262. | During Plaintiff's employment, Defendant strictly prohibited the use of drugs and alcohol in the workplace. Cox Decl., ¶ 19, Ex. E; Campos Decl., ¶ 4-5, Ex. C, 35:10-36:2, Ex. D, 42:5-8. | Disputed. <br><br> Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well. <br><br> (Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) <br><br> Other Mastec employees observed frequent and open drug abuse while at the Fresno office. <br><br> (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19) <br><br> In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management <br><br> (Foshee Decl. ¶ 11) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

281

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| | | HR representative Cox testified that drug offenses could be immediately escalated beyond Mastec's progressive approach to discipline. |
| | | (Exh. J at 47:10-48:10, 85:5-16) |
| 263. | Employees were advised to report any substance abuse through Convercent. | Disputed. Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

282

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Cox Decl., ¶ 17, Ex. C; Campos Decl., ¶ 4, Ex. C, 35:21-36:2. | were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Other Mastec employees observed frequent and open drug abuse while at the Fresno office.

(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 264. | Pursuant to Defendant's Open Door Policy, employees could also report substance abuse issues to their appropriate managers or their Human Resources Contact.   Cox Decl., ¶ 18, Ex. D. | Disputed.

Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

284

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management

(Foshee Decl. ¶ 11)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 265. | During his employment, Plaintiff never made, or threatened to make, any formal complaint with Defendant or any other entity regarding alleged drug use.   Cox Decl., ¶ 20; Campos Decl., ¶ 3-6, Ex. B, 40:4-8, 65:13-19, Ex. C, 35:10-12, 36:18-22, Ex. D, 38:22-39:11, 63:20-64:9, Ex. E, 85:12-21, 86:10-17, 87:6-19, 90:17-24. | Disputed.

Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18- |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

285

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | 62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) |
| | | Other Mastec employees observed frequent and open drug abuse while at the Fresno office. |
| | | (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

286

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Foshee Decl. ¶22) |
| 266. | The only "complaints" Plaintiff alleges to have made regarding the alleged drug use were to his co-workers, simply stating that the alleged drug users did not do anything and were making his job difficult. Cox Decl., ¶ 20; Campos Decl., ¶ 3, Ex. B, 40:4-8, 47:3-48:3, 65:13-24. | Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 267. | Barrie testified that Plaintiff never expressed to him any concern regarding drinking or drug use at work, or that he wanted to step down from his position as a Construction Manager because of the alleged drinking and drug use.<br>Campos Decl., ¶ 5, Ex. D, 38:22-39:8, 63:20-64:9. | Dispsuted.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

288

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 268. | Galvez also testified that Plaintiff never reported any alleged drinking or drug use to him.   Campos Decl., ¶ 4, Ex. C, 35:10-12, 36:18-22. | Undisputed. |
| 269. | During his employment, Plaintiff never complained of any unfair treatment or discrimination based upon his race.   Cox Decl., ¶ 21. | Disputed.

Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.

(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4)

Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

289

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Barrie say "I never say nigger unless I'm fighting someone or something". |
| | | (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |
| | | Plaintiff took a single drug test during his employment with Mastec which came back negative. Plaintiff was never suspected to have been using drugs. |
| | | (Exh. J 94:12-95:96:8, 102:25-103:5; Exh. L at 5:16-56:6, 56:21-24 Foshee Decl. ¶ 2) |
| | | After Plaintiff was terminated a potential employer called Mastec and was told that Plaintiff had failed a drug test. |
| | | (Exh. M at 21:7-19, 23:4-11; Foshee Decl. ¶ 32) |
| 270. | Plaintiff alleges that he did not receive support from his managers, however none of Plaintiff's allegations are tied to his race. Campos Decl., ¶ 3, Ex. B, 40:4-8, 41:17-43:10, 44:17-45:20, 46:5-48:3, 65:13-24. | Disputed. |
| | | Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. |
| | | (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |
| | | In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

290

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br><br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

291

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

**Issue No. (5) Plaintiff's Fifth Cause of Action for retaliation for requesting and using accommodations for disabilities:  Plaintiff did not engage in a protected activity, and even if he did, there is no causal link between Plaintiff's alleged protected activity and his termination.**

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 271. | Plaintiff worked for Defendant as a Foreman until he was promoted to a Construction Manager in about March 2019.  Cox Decl. ¶ 5. 2019. | Disputed. Plaintiff requested to step down from the Contruction Manager position on June 17, 2019 and return to his previous role as Foreman. Plaintiff complained about the work environment and illegal behavior of |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

292

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mastec management to coworkers and Mgr. Jusin Barrie ("Mgr. Barrie"). |
| | | (Exh. R; Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 47: 3-48: 3, 57:24-58:18, 66:18-67:19; Exh. F at 20:23-21:4; Exh. I at 35:20-36:6, Exh. H at 54:11-21 Foshee Decl. ¶ 20, 21, 22) |
| 272. | On April 18, 2019, Plaintiff failed to appear for his scheduled shift. Campos Decl. ¶ 4, Ex. C, 48:20-49:23, Exh. 1 thereto | Disputed.

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)

Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.

(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)

Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

293

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:1-20, Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶ 13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22)<br><br>Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days.<br><br>(Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 273. | Plaintiff's Project Manager, Miguel Galvez ("Galvez"), and Operations Manager, Joseph Ecklind ("Ecklind"), attempted to contact Plaintiff yet they were unable to reach him.    Campos Decl., ¶ 4, Ex. C, 40:24-41:8. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

294

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 274. | As a result, Galvez emailed Plaintiff advising him that he would be written up because he did not call in or appear for his shift. Campos Decl., ¶ 3-4, Ex. B, 55:7-56:18, Exh. 3 thereto, Ex. C, 48:20-49:23, Exh. 1 thereto. | Disputed. <br><br> Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. <br><br> (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶12,13) <br><br> Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. <br><br> (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) <br><br> Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13, 14) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 275. | Once Plaintiff received this email, he called Galvez and explained that he was receiving medical care for a dual ear infection. Campos Decl., ¶ 3-4, Ex. B, 49:5-12, Ex. C, 41:20-42:12. | Disputed. |
| | | Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. |
| | | (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) |
| | | Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |
| | | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |
| | | Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

296

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass"<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 276. | Plaintiff and Galvez had a verbal disagreement over the phone regarding Plaintiff's failure to appear for work. Campos Decl., ¶ 3-5, Ex. B, 49:13-20, Ex. C, 43:3-25, Ex. D, 43:6-44:6. | Undisputed, as to the occurrence of the phone call. Disputed, as to categorizing the phone call as a "verbal disagreement"<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

297

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 277. | Plaintiff's Project Manager, Justin Barrie ("Barrie") met with Galvez and Plaintiff over the phone to work through their disagreement. Campos Decl., ¶ 3-5, Ex. B 50:11-21, Ex. C, 46:18-47:10, Ex. D, 47:6-48:13. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16)<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

298

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee Decl. ¶16) |
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 278. | Ultimately, Barrie, Galvez, and Plaintiff resolved the conflict, and Plaintiff was not written up for his failure to call in or appear for work.    Campos Decl., ¶ 3-5, Ex. B, 57:2-4, Ex. C, 46:15-47:10, 50:25-51:8, 51:18-52:12, Ex. D, 47:6-48:16. | Disputed. |
| | | Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |
| | | (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 ) |
| | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

299

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 279. | Plaintiff was released to return to work on April 20, 2019 with no restrictions. Campos Decl., ¶ 3, Ex. B, 52:8-19, Exh. 2 thereto. | Undisputed. |
| 280. | However, Plaintiff voluntarily chose to return to work on April 19, 2019. Campos Decl., ¶ 3, Ex. B, 52:20-53:8, 53:12-15. | Disputed. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

300

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |
| | | (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16) |
| | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days. |
| | | (Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 281. | Plaintiff never requested any accommodation or leave for his dual ear infection or any other medical condition. Cox Decl., ¶ 7-8; Campos Decl. ¶ 3, Ex. B, 84:23-85:8. | Disputed.

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

301

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass"<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

302

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 282. | Plaintiff admits that aside from this time off to heal from his dual ear infection, he did not need any accommodations to do his job.    Campos Decl., ¶ 3, Ex. B, 84:23-85:3. | Disputed.

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 283. | Plaintiff did not have any other medical condition that impacted his ability to do his job during his employment at Defendant. Campos Decl., ¶ 3, Ex. B, 82:9-16, 85:4-8. | Disputed.

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

303

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 284. | Just a few months after his promotion to Construction Manager Plaintiff voluntarily requested to return to his position as a Foreman. Campos Decl., ¶ 3, Ex. B, 66:11-69:25, Exh. 4 thereto. | Undisputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

304

| | | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| | | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| | 285. | On June 17, 2019, Plaintiff emailed Ecklind "requesting to step back down to a foreman roll [sic]," because "timing and life is playing a big roll [sic] in this interest but I think it is the best decision for everyone at this time. I want our team to win and this is just what's best right now." Campos Decl., ¶ 3, Ex. B, 68:5-22, Exh. 4 thereto. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

305

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 286. | Even though Plaintiff voluntarily requested his demotion back down to a Foreman, Barrie fought for Plaintiff to retain his higher rate of pay because of Plaintiff's management experience. Campos Decl., ¶ 3, 5-6, Ex. B, 66:11-69:25, Exh. 4 thereto, Ex. D, 37:21-38:21, Ex. E, 65:3-20. | Disputed.<br><br>Plaintiff's salary upon returning to his position as foreman was determined by the prevailing market rate.<br><br>(Exh. S) |
| 287. | Accordingly, effective July 6, 2019, Plaintiff was returned to his position as a Foreman at a rate of $32.00 per hour, rather than the rate of $28.91 per hour he previously earned as a Foreman just a few months earlier. Campos Decl., ¶ 5, Ex. B, 68:5-22, Ex. E, 65:3-20; Cox Decl., ¶ 6. | Undisputed. |
| 288. | On September 25, 2019, one of Defendant's clients notified Defendant that they observed several issues at Plaintiff's | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning |

| MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| job site.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 289. Specifically, the client reported that they arrived on the site at 10:15 AM and the crew was not yet on site.    Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 290. The client returned about 30 minutes later and went over the client's policies and requirements with the crew.    Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

307

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 291. | The client left the crew with a warning. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 292. | Later that day, the client passed by the job site again and observed Plaintiff in a man lift without a hard hat, at which point the decision was made to shut down the site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

308

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.

(Exh. L at: 29:22-30:13)

Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

309

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 293. | The client also reported that all of Plaintiff's crew were on site without hard hats on nor in the vicinity.    Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.<br><br>(Exh. L at: 29:22-30:13)<br><br> Mgr. Barrie was known in the company to eschew safety equipment when working |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

310

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 294. | The client advised Defendant that all of its policies must be followed.  Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

311

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| 295. | The client sent Defendant photographs clearly showing Plaintiff up in the man lift without a hard hat.    Cox Decl., ¶ 9; Campos Decl., ¶ 3, 6, Ex. B, 74:10-76:13, Exh. 5 thereto, Ex. E, 59:23-61:5, 80:1-9, 81:16-20, Exh.s 2, 5a, 5b thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position:<br><br>(Exh. L at: 29:22-30:13)<br><br>Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

313

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 296. | Following Plaintiff's safety violations, Ecklind and Barrie pushed for Plaintiff to be placed on a performance improvement plan, instead of terminating his employment. Campos Decl., ¶ 5-6, Ex. D, 49:1-7, 49:13-15, Ex. E, 59:23-60:13, 62:25-64:5, 64:6-17. | Disputed.<br><br>Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.<br><br>(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 297. | However, after speaking with Windy Cox ("Cox") of Human Resources, it became | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

314

| MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| clear that Plaintiff's safety violations as a Foreman warranted termination, given that the client caught Plaintiff violating policy multiple times in one day, ultimately had to shut down the site, and submitted photographic evidence of Plaintiff in the man lift without a hard hat.    Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.

(Foshee Decl. ¶25)

Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.

(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)

This contradicts the claims to Plaintiff by Mgr. Ecklind and Mgr. Barrie that Plaintiff's termination had been decided by HR.

(Exh. J at: 29:1-14; Exh. G at 79:22-25; Exh. I at 48:20-25; Foshee Decl. ¶28)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

315

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 298. | Therefore, Cox recommended terminating Plaintiff's employment based upon his safety violations and the position that he held. Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

317

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 299. | After receiving Cox's recommendation, Barrie and Ecklind agreed to move forward with Plaintiff's termination.      Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 69:8-13, 69:22-25. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | pretextual basis and usually resulted in a warning. |
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

319

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 300. | On September 30, 2019, Defendant terminated Plaintiff's employment for his failure to enforce and follow safety protocol by not wearing a hard hat while in the man lift, and for allowing his team on the job site without hard hats. Campos | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

320

| MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Decl., ¶ 3-6, Ex. B, 72:18-74:3, 80:18-82:8, Exh. 6 thereto, Ex. C, 62:13-64:9, Ex. D, 60:20-62:2, Exh. 6 thereto, Ex. E, 76:22-77:19, Exh. 4 thereto. | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

321

| | | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| | | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | | (Exh. J at 53:16-25, 62:16-24) |
| | | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | | (Exh. B, Exh. F at 19:9-20:4) |
| 301. | | Plaintiff admits that he was terminated "because of [his] not having a hard hat on" | Disputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

322

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | and that Defendant's client, "took a picture of that, and, yeah, and that's – I was terminated because of it." Campos Decl., ¶ 3, Ex. B, 72:18-74:3. | Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

323

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

324

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 302. | In her role with Human Resources, Cox had access to Defendant's general demographic information. Cox Decl., ¶ 12; Campos Decl., ¶ 6, Ex. E, 121:18-25. | Undisputed.

Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.

(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |
| 303. | However, Cox did not specifically know the demographics of Plaintiff's location by memory. Cox Decl., ¶ 13; Campos Decl., ¶ 6, Ex. E, 123:3-8, 124:13-20. | Undisputed. |
| 304. | Moreover, Cox did not personally know Plaintiff at the time she recommended his termination. Cox Decl., ¶ 14. | Undisputed. |
| 305. | Cox's recommendation to terminate Plaintiff was based solely on the severity of his safety violations as a Foreman. Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 67:20-68:3, 71:10-15; Cox Decl. ¶ 9-11. | Disputed.

No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.

(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)

No other Mastec employees, including the site construction manager, were |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

325

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. |
| | | (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |
| | | In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

326

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| | | Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". |
| | | (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |
| | | When enforced, hard hat violations typically resulted in either a verbal warning or write up. |
| | | (Foshee Decl. ¶27 ) |
| 306. | Throughout Plaintiff's employment, Defendant maintained a "zero-tolerance policy for unlawful discrimination, harassment or retaliation and will not tolerate any such conduct." Cox Decl., ¶ 15, Ex. A; Campos Decl., ¶ 6, Ex. E, 112:18-24, 120:3-121:17, Exh. 1 thereto. | Disputed. Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. (Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4) In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

327

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". |
| | | (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |
| | | When enforced, hard hat violations typically resulted in either a verbal warning or write up. |
| | | (Foshee Decl. ¶27 ) |
| 307. | Defendant's policy specifically provides that: | Disputed. Plaintiff was one of five black employees in the Fresno office and the only black |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

328

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | "MasTec provides equal employment opportunities to all qualified individuals without regard to race, color, … national origin, … disability or any other basis or characteristic protected by applicable law. MasTec is also committed to providing a work environment free of harassment on the basis of race, color, national origin … or disability or any other characteristic protected by applicable law. It is the responsibility of each and every employee to report unlawful harassment or discrimination when it occurs-whether they are a victim of, or a witness to, unlawful behavior. Employees will be protected from retaliation for opposing unlawful discriminatory practices when they report, in good faith, unlawful harassment or discrimination. Reports of unlawful harassment, discrimination or retaliation can be made to your Human Resources contact or by contacting **Convercent** (formerly **MySafeWorkplace).** Human Resources will investigate all allegations of unlawful harassment and discrimination promptly, impartially and in a confidential manner. If the Company determines that unlawful | employee in upper management during his time as a CM. (Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4) In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

329

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | harassment, discrimination or retaliation has occurred, it will take prompt and effective remedial action." (Emphasis in original.) | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br><br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>When enforced, hard hat violations typically resulted in either a verbal warning or write up.<br><br>(Foshee Decl. ¶27 ) |
| 308. | Throughout Plaintiff's employment, Defendant also maintained a Reasonable Accommodation Policy.  Cox Decl., ¶ 16, Ex. B. | Undisputed as to the existence of the written policy. Disputed as to its enforcement.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

330

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 309. | Defendant's policy states that:<br>"To comply with applicable laws ensuring equal employment opportunities to individuals with disabilities (even if in remission or ameliorated), MasTec will make reasonable accommodations for the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee unless undue hardship and/or a direct threat to the health and/or safety of the individual or others would result. Any applicant or employee who requires an accommodation in order to perform the | Undisputed as to the existence of the written policy. Disputed as to its enforcement.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |

| | **MOVING PARTY'S UNDISPUTED FACTS** | **OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE** |
|---|---|---|
| | essential functions of the job should contact your Human Resources Contact and request such an accommodation in writing." | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) <br><br> Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. <br><br> (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) <br><br> Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. <br><br> (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. <br><br> (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 ) <br><br> Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. <br><br> (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

332

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 310. | At all relevant times, Defendant maintained procedures for complaints of discrimination, mistreatment, and substance abuse.    Cox Decl., ¶ 17, Ex. C. | Disputed. |
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |
| | | (Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) |
| | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

333

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

334

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 311. | Employees were advised to report suspected harassment or discrimination to their Human Resources Contact, or by using the online portal Convercent.   Cox Decl., ¶ 17, Ex. C. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

335

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 312. | As the handbook provides, "Convercent . . . is a 24-hour incident reporting hotline. Convercent allows you to make reports on | Undisputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

336

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | a wide variety of topics, including, but not limited to, reports of accounting irregularities, fraud, theft, unsafe working conditions, harassment, discrimination, mistreatment . . . safety violations, substance abuse or threats of violence." Cox Decl., ¶ 17, Ex. C. | |
| 313. | Defendant's Open Door Policy instructed employees to speak with their immediate supervisor to address work-related issues. Cox Decl., ¶ 18, Ex. D. | Disputed. Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. (Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

337

| MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | them up if they did not settle the issue themselves. |
| | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time. |
| | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

338

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 314. | However, if an employee felt uncomfortable speaking directly with their supervisor, they could meet directly with their department's manager, Human Resources Contact, general manager, or other appropriate management personnel. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 315. | Employees could also report issues through Defendant's hotline, Convercent. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 316. | During Plaintiff's employment, Defendant strictly prohibited the use of drugs and alcohol in the workplace. Cox Decl., ¶ 19, Ex. E; Campos Decl., ¶ 4-5, Ex. C, 35:10-36:2, Ex. D, 42:5-8. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

339

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)

In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management

(Foshee Decl. ¶ 11)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

340

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | HR representative Cox testified that drug offenses could be immediately escalated beyond Mastec's progressive approach to discipline.<br><br>(Exh. J at 47:10-48:10, 85:5-16) |
| 317. | Employees were advised to report any substance abuse through Convercent. Cox Decl., ¶ 17, Ex. C; Campos Decl., ¶ 4, Ex. C, 35:21-36:2. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 318. | Pursuant to Defendant's Open Door Policy, employees could also report substance abuse issues to their appropriate managers or their Human Resources Contact.   Cox Decl., ¶ 18, Ex. D. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

342

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management |
| | | (Foshee Decl. ¶ 11) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 319. | During his employment, Plaintiff never made, or threatened to make, any formal complaint with Defendant or any other | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

343

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | entity regarding alleged drug use. Cox Decl., ¶ 20; Campos Decl., ¶ 3-6, Ex. B, 40:4-8, 65:13-19, Ex. C, 35:10-12, 36:18-22, Ex. D, 38:22-39:11, 63:20-64:9, Ex. E, 85:12-21, 86:10-17, 87:6-19, 90:17-24. | drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Other Mastec employees observed frequent and open drug abuse while at the Fresno office.

(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 320. | The only "complaints" Plaintiff alleges to have made regarding the alleged drug use were to his co-workers, simply stating that the alleged drug users did not do anything and were making his job difficult. Cox Decl., ¶ 20; Campos Decl., ¶ 3, Ex. B, 40:4-8, 47:3-48:3, 65:13-24. | Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

345

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 321. | Barrie testified that Plaintiff never expressed to him any concern regarding drinking or drug use at work, or that he wanted to step down from his position as a Construction Manager because of the alleged drinking and drug use.<br>Campos Decl., ¶ 5, Ex. D, 38:22-39:8, 63:20-64:9. | Dispsuted.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 322. | Galvez also testified that Plaintiff never reported any alleged drinking or drug use to him.   Campos Decl., ¶ 4, Ex. C, 35:10-12, 36:18-22. | Undisputed. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 323. | During his employment, Plaintiff never complained of any unfair treatment or discrimination based upon his race. Cox Decl., ¶ 21. | Disputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br><br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>Plaintiff took a single drug test during his employment with Mastec which came back negative. Plaintiff was never suspected to have been using drugs.<br><br>(Exh. J 94:12-95:96:8, 102:25-103:5; Exh. L at 5:16-56:6, 56:21-24 Foshee Decl. ¶ 2)<br><br>After Plaintiff was terminated a potential employer called Mastec and was told that Plaintiff had failed a drug test.<br><br>(Exh. M at 21:7-19, 23:4-11; Foshee Decl. ¶ 32) |
| 324. | Plaintiff alleges that he did not receive support from his managers, however none of Plaintiff's allegations are tied to his race. | Disputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

348

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Campos Decl., ¶ 3, Ex. B, 40:4-8, 41:17-43:10, 44:17-45:20, 46:5-48:3, 65:13-24. | (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4)<br><br>In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

349

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

**Issue No. (6) Plaintiff's Sixth Cause of Action for failure to engage in a timely, good faith, interactive process to determine reasonable accommodation for disability: Plaintiff never initiated the interactive process.**

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 325. | Plaintiff worked for Defendant as a Foreman until he was promoted to a Construction Manager in about March 2019. Cox Decl. ¶ 5. 2019. | Disputed.<br><br>Plaintiff requested to step down from the Contruction Manager position on June 17, 2019 and return to his previous role as Foreman. Plaintiff complained about the work environment and illegal behavior of Mastec management to coworkers and Mgr. Jusin Barrie ("Mgr. Barrie"). |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

350

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. R; Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 47: 3-48: 3, 57:24-58:18, 66:18-67:19; Exh. F at 20:23-21:4; Exh. I at 35:20-36:6, Exh. H at 54:11-21 Foshee Decl. ¶ 20, 21, 22) |
| 326. | On April 18, 2019, Plaintiff failed to appear for his scheduled shift. Campos Decl. ¶ 4, Ex. C, 48:20-49:23, Exh. 1 thereto | Disputed.

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)

Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.

(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)

Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".

(Exh. G at 49:1-20, Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶ 13) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

351

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22)<br><br>Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days.<br><br>(Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 327. | Plaintiff's Project Manager, Miguel Galvez ("Galvez"), and Operations Manager, Joseph Ecklind ("Ecklind"), attempted to contact Plaintiff yet they were unable to reach him. Campos Decl., ¶ 4, Ex. C, 40:24-41:8. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

352

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 328. | As a result, Galvez emailed Plaintiff advising him that he would be written up because he did not call in or appear for his shift. Campos Decl., ¶ 3-4, Ex. B, 55:7-56:18, Exh. 3 thereto, Ex. C, 48:20-49:23, Exh. 1 thereto. | Disputed.

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶12,13)

Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.

(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)

Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he |

| | **MOVING PARTY'S UNDISPUTED FACTS** | **OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE** |
|---|---|---|
| | | called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13, 14)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 329. | Once Plaintiff received this email, he called Galvez and explained that he was receiving medical care for a dual ear infection. Campos Decl., ¶ 3-4, Ex. B, 49:5-12, Ex. C, 41:20-42:12. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

354

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass" |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 330. | Plaintiff and Galvez had a verbal disagreement over the phone regarding Plaintiff's failure to appear for work. Campos Decl., ¶ 3-5, Ex. B, 49:13-20, Ex. C, 43:3-25, Ex. D, 43:6-44:6. | Undisputed, as to the occurrence of the phone call. Disputed, as to categorizing the phone call as a "verbal disagreement"<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 331. | Plaintiff's Project Manager, Justin Barrie ("Barrie") met with Galvez and Plaintiff over the phone to work through their disagreement. Campos Decl., ¶ 3-5, Ex. B 50:11-21, Ex. C, 46:18-47:10, Ex. D, 47:6-48:13. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16)<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee Decl. ¶16) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 332. | Ultimately, Barrie, Galvez, and Plaintiff resolved the conflict, and Plaintiff was not written up for his failure to call in or appear for work.    Campos Decl., ¶ 3-5, Ex. B, 57:2-4, Ex. C, 46:15-47:10, 50:25-51:8, 51:18-52:12, Ex. D, 47:6-48:16. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

357

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 333. | Plaintiff was released to return to work on April 20, 2019 with no restrictions. Campos Decl., ¶ 3, Ex. B, 52:8-19, Exh. 2 thereto. | Undisputed. |
| 334. | However, Plaintiff voluntarily chose to return to work on April 19, 2019. Campos Decl., ¶ 3, Ex. B, 52:20-53:8, 53:12-15. | Disputed. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

358

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16) Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days. (Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 335. | Plaintiff never requested any accommodation or leave for his dual ear infection or any other medical condition. Cox Decl., ¶ 7-8; Campos Decl. ¶ 3, Ex. B, 84:23-85:8. | Disputed. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass"<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

360

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 336. | Plaintiff admits that aside from this time off to heal from his dual ear infection, he did not need any accommodations to do his job. Campos Decl., ¶ 3, Ex. B, 84:23-85:3. | Disputed.<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 337. | Plaintiff did not have any other medical condition that impacted his ability to do his job during his employment at Defendant. Campos Decl., ¶ 3, Ex. B, 82:9-16, 85:4-8. | Disputed.<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

361

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 338. | Just a few months after his promotion to Construction Manager Plaintiff voluntarily requested to return to his position as a Foreman. Campos Decl., ¶ 3, Ex. B, 66:11-69:25, Exh. 4 thereto. | Undisputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

362

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 339. | On June 17, 2019, Plaintiff emailed Ecklind "requesting to step back down to a foreman roll [sic]," because "timing and life is playing a big roll [sic] in this interest but I think it is the best decision for everyone at this time. I want our team to win and this is just what's best right now." Campos Decl., ¶ 3, Ex. B, 68:5-22, Exh. 4 thereto. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 340. | Even though Plaintiff voluntarily requested his demotion back down to a Foreman, Barrie fought for Plaintiff to retain his higher rate of pay because of Plaintiff's management experience. Campos Decl., ¶ 3, 5-6, Ex. B, 66:11-69:25, Exh. 4 thereto, Ex. D, 37:21-38:21, Ex. E, 65:3-20. | Disputed.<br><br>Plaintiff's salary upon returning to his position as foreman was determined by the prevailing market rate.<br><br>(Exh. S) |
| 341. | Accordingly, effective July 6, 2019, Plaintiff was returned to his position as a Foreman at a rate of $32.00 per hour, rather than the rate of $28.91 per hour he previously earned as a Foreman just a few months earlier.   Campos Decl., ¶ 5, Ex. B, 68:5-22, Ex. E, 65:3-20; Cox Decl., ¶ 6. | Undisputed. |
| 342. | On September 25, 2019, one of Defendant's clients notified Defendant that they observed several issues at Plaintiff's | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

364

| MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| job site.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 343.   Specifically, the client reported that they arrived on the site at 10:15 AM and the crew was not yet on site.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 344.   The client returned about 30 minutes later and went over the client's policies and requirements with the crew.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 345. | The client left the crew with a warning. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 346. | Later that day, the client passed by the job site again and observed Plaintiff in a man lift without a hard hat, at which point the decision was made to shut down the site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Barrie said that an investigation should have been done. (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. (Exh. L at: 29:22-30:13) Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

367

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | |
| 347. | The client also reported that all of Plaintiff's crew were on site without hard hats on nor in the vicinity. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed. No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. (Exh. L at: 29:22-30:13) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 348. | The client advised Defendant that all of its policies must be followed.   Cox Decl., ¶ 9; Campos Decl.,  ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

369

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Foshee Decl. ¶25)

No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.

(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)

No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.

(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| 349. | The client sent Defendant photographs clearly showing Plaintiff up in the man lift without a hard hat.    Cox Decl., ¶ 9; Campos Decl., ¶ 3, 6, Ex. B, 74:10-76:13, Exh. 5 thereto, Ex. E, 59:23-61:5, 80:1-9, 81:16-20, Exh.s 2, 5a, 5b thereto. | Disputed.

No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.

(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)

No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

370

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | hard hats at the Fresno job site on September 25, 2019.

(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.

(Exh. L at: 29:22-30:13)

 Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

371

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 350. | Following Plaintiff's safety violations, Ecklind and Barrie pushed for Plaintiff to be placed on a performance improvement plan, instead of terminating his employment.    Campos Decl., ¶ 5-6, Ex. D, 49:1-7, 49:13-15, Ex. E, 59:23-60:13, 62:25-64:5, 64:6-17. | Disputed.<br><br>Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.<br><br>(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 351. | However, after speaking with Windy Cox ("Cox") of Human Resources, it became | Disputed. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | clear that Plaintiff's safety violations as a Foreman warranted termination, given that the client caught Plaintiff violating policy multiple times in one day, ultimately had to shut down the site, and submitted photographic evidence of Plaintiff in the man lift without a hard hat. Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.<br><br>(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)<br><br>This contradicts the claims to Plaintiff by Mgr. Ecklind and Mgr. Barrie that Plaintiff's termination had been decided by HR.<br><br>(Exh. J at: 29:1-14; Exh. G at 79:22-25; Exh. I at 48:20-25; Foshee Decl. ¶28)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

373

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.

(Exh. J at 53:16-25, 62:16-24)

Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"

(Exh. B, Exh. F at 19:9-20:4) |
| 352. | Therefore, Cox recommended terminating Plaintiff's employment based upon his safety violations and the position that he held.  Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | Disputed.

Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.

(Foshee Decl. ¶25)

No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

374

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | pretextual basis and usually resulted in a warning. |
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | (Exh. L at: 29:22-30:13) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19- 59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 353. | After receiving Cox's recommendation, Barrie and Ecklind agreed to move forward with Plaintiff's termination. Campos | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

376

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 69:8-13, 69:22-25. | management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.

(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)

No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.

(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.

(Exh. J at 53:16-25, 62:16-24)

Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.

(Exh. L at: 29:22-30:13) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

377

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 354. | On September 30, 2019, Defendant terminated Plaintiff's employment for his failure to enforce and follow safety protocol by not wearing a hard hat while in | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

378

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | the man lift, and for allowing his team on the job site without hard hats. Campos Decl., ¶ 3-6, Ex. B, 72:18-74:3, 80:18-82:8, Exh. 6 thereto, Ex. C, 62:13-64:9, Ex. D, 60:20-62:2, Exh. 6 thereto, Ex. E, 76:22-77:19, Exh. 4 thereto. | (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

379

| | | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| | | | violations were selectively issued on a pretextual basis and usually resulted in a warning. |
| | | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | | (Exh. J at 53:16-25, 62:16-24) |
| | | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | | (Exh. B, Exh. F at 19:9-20:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

380

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 355. | Plaintiff admits that he was terminated "because of [his] not having a hard hat on" and that Defendant's client, "took a picture of that, and, yeah, and that's – I was terminated because of it." Campos Decl., ¶ 3, Ex. B, 72:18-74:3. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

381

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 356. | In her role with Human Resources, Cox had access to Defendant's general demographic information. Cox Decl., ¶ 12; Campos Decl., ¶ 6, Ex. E, 121:18-25. | Undisputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |
| 357. | However, Cox did not specifically know the demographics of Plaintiff's location by memory. Cox Decl., ¶ 13; Campos Decl., ¶ 6, Ex. E, 123:3-8, 124:13-20. | Undisputed. |
| 358. | Moreover, Cox did not personally know Plaintiff at the time she recommended his termination. Cox Decl., ¶ 14. | Undisputed. |
| 359. | Cox's recommendation to terminate Plaintiff was based solely on the severity of his safety violations as a Foreman. Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 67:20-68:3, 71:10-15; Cox Decl. ¶ 9-11. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4)<br><br>In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

384

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br><br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>When enforced, hard hat violations typically resulted in either a verbal warning or write up.<br><br>(Foshee Decl. ¶27 ) |
| 360. | Throughout Plaintiff's employment, Defendant maintained a "zero-tolerance policy for unlawful discrimination, harassment or retaliation and will not tolerate any such conduct." Cox Decl., ¶ 15, Ex. A; Campos Decl., ¶ 6, Ex. E, 112:18-24, 120:3-121:17, Exh. 1 thereto. | Disputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4)<br><br>In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

385

| | | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| | | | Foreman Hutchinson was not terminated. By Mastec for these violations. |
| | | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| | | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | | Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". |
| | | | (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |
| | | | When enforced, hard hat violations typically resulted in either a verbal warning or write up. |
| | | | (Foshee Decl. ¶27 ) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

386

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 361. | Defendant's policy specifically provides that:<br><br>"MasTec provides equal employment opportunities to all qualified individuals without regard to race, color, … national origin, … disability or any other basis or characteristic protected by applicable law. MasTec is also committed to providing a work environment free of harassment on the basis of race, color, national origin … or disability or any other characteristic protected by applicable law. It is the responsibility of each and every employee to report unlawful harassment or discrimination when it occurs-whether they are a victim of, or a witness to, unlawful behavior. Employees will be protected from retaliation for opposing unlawful discriminatory practices when they report, in good faith, unlawful harassment or discrimination.<br><br>Reports of unlawful harassment, discrimination or retaliation can be made to your Human Resources contact or by contacting **Convercent** (formerly **MySafeWorkplace**). Human Resources will investigate all allegations of unlawful harassment and discrimination promptly, | Disputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4)<br><br>In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

387

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | impartially and in a confidential manner. If the Company determines that unlawful harassment, discrimination or retaliation has occurred, it will take prompt and effective remedial action." (Emphasis in original.) | Barrie said that an investigation should have been done. (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) When enforced, hard hat violations typically resulted in either a verbal warning or write up. (Foshee Decl. ¶27 ) |
| 362. | Throughout Plaintiff's employment, Defendant also maintained a Reasonable Accommodation Policy.   Cox Decl., ¶ 16, Ex. B. | Undisputed as to the existence of the written policy. Disputed as to its enforcement. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

388

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 363. | Defendant's policy states that: "To comply with applicable laws ensuring equal employment opportunities to individuals with disabilities (even if in remission or ameliorated), MasTec will make reasonable accommodations for the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee unless undue hardship and/or a direct threat to the health and/or safety of the individual or others would result. Any | Undisputed as to the existence of the written policy. Disputed as to its enforcement. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

389

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | applicant or employee who requires an accommodation in order to perform the essential functions of the job should contact your Human Resources Contact and request such an accommodation in writing." | call no show write up around 11:30 AM on April 18, 2019. |
| | | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |
| | | (Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 ) |
| | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

390

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 364. | At all relevant times, Defendant maintained procedures for complaints of discrimination, mistreatment, and substance abuse.  Cox Decl., ¶ 17, Ex. C. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

391

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

392

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 365. | Employees were advised to report suspected harassment or discrimination to their Human Resources Contact, or by using the online portal Convercent.   Cox Decl., ¶ 17, Ex. C. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 366. | As the handbook provides, "Convercent . . . is a 24-hour incident reporting hotline. | Undisputed. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Convercent allows you to make reports on a wide variety of topics, including, but not limited to, reports of accounting irregularities, fraud, theft, unsafe working conditions, harassment, discrimination, mistreatment . . . safety violations, substance abuse or threats of violence." Cox Decl., ¶ 17, Ex. C. | |
| 367. | Defendant's Open Door Policy instructed employees to speak with their immediate supervisor to address work-related issues. Cox Decl., ¶ 18, Ex. D. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

395

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

396

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 368. | However, if an employee felt uncomfortable speaking directly with their supervisor, they could meet directly with their department's manager, Human Resources Contact, general manager, or other appropriate management personnel. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 369. | Employees could also report issues through Defendant's hotline, Convercent. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 370. | During Plaintiff's employment, Defendant strictly prohibited the use of drugs and alcohol in the workplace. Cox Decl., ¶ 19, Ex. E; Campos Decl., ¶ 4-5, Ex. C, 35:10-36:2, Ex. D, 42:5-8. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

397

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)

In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management

(Foshee Decl. ¶ 11)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

398

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | HR representative Cox testified that drug offenses could be immediately escalated beyond Mastec's progressive approach to discipline.<br><br>(Exh. J at 47:10-48:10, 85:5-16) |
| 371. | Employees were advised to report any substance abuse through Convercent. Cox Decl., ¶ 17, Ex. C; Campos Decl., ¶ 4, Ex. C, 35:21-36:2. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

399

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 372. | Pursuant to Defendant's Open Door Policy, employees could also report substance abuse issues to their appropriate managers or their Human Resources Contact. Cox Decl., ¶ 18, Ex. D. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management

(Foshee Decl. ¶ 11)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 373. | During his employment, Plaintiff never made, or threatened to make, any formal complaint with Defendant or any other | Disputed.

Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

401

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | entity regarding alleged drug use. Cox Decl., ¶ 20; Campos Decl., ¶ 3-6, Ex. B, 40:4-8, 65:13-19, Ex. C, 35:10-12, 36:18-22, Ex. D, 38:22-39:11, 63:20-64:9, Ex. E, 85:12-21, 86:10-17, 87:6-19, 90:17-24. | drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

402

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 374. | The only "complaints" Plaintiff alleges to have made regarding the alleged drug use were to his co-workers, simply stating that the alleged drug users did not do anything and were making his job difficult.     Cox Decl., ¶ 20; Campos Decl., ¶ 3, Ex. B, 40:4-8, 47:3-48:3, 65:13-24. | Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

403

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 375. | Barrie testified that Plaintiff never expressed to him any concern regarding drinking or drug use at work, or that he wanted to step down from his position as a Construction Manager because of the alleged drinking and drug use.<br>Campos Decl., ¶ 5, Ex. D, 38:22-39:8, 63:20-64:9. | Dispsuted.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 376. | Galvez also testified that Plaintiff never reported any alleged drinking or drug use to him.   Campos Decl., ¶ 4, Ex. C, 35:10-12, 36:18-22. | Undisputed. |

| | **MOVING PARTY'S UNDISPUTED FACTS** | **OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE** |
|---|---|---|
| 377. | During his employment, Plaintiff never complained of any unfair treatment or discrimination based upon his race. Cox Decl., ¶ 21. | Disputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br><br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>Plaintiff took a single drug test during his employment with Mastec which came back negative. Plaintiff was never suspected to have been using drugs.<br><br>(Exh. J 94:12-95:96:8, 102:25-103:5; Exh. L at 5:16-56:6, 56:21-24 Foshee Decl. ¶ 2)<br><br>After Plaintiff was terminated a potential employer called Mastec and was told that Plaintiff had failed a drug test.<br><br>(Exh. M at 21:7-19, 23:4-11; Foshee Decl. ¶ 32) |
| 378. | Plaintiff alleges that he did not receive support from his managers, however none of Plaintiff's allegations are tied to his race. | Disputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Campos Decl., ¶ 3, Ex. B, 40:4-8, 41:17-43:10, 44:17-45:20, 46:5-48:3, 65:13-24. | (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4)<br><br>In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

**Issue No. (7) Plaintiff's Seventh Cause of Action for failure to reasonable accommodate disabilities: Plaintiff did not suffer from a disability as defined under the Fair Employment and Housing Act, and Plaintiff never requested an accommodation.**

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 379. | Plaintiff worked for Defendant as a Foreman until he was promoted to a Construction Manager in about March 2019. Cox Decl. ¶ 5. 2019. | Disputed.<br><br>Plaintiff requested to step down from the Contruction Manager position on June 17, 2019 and return to his previous role as Foreman. Plaintiff complained about the work environment and illegal behavior of Mastec management to coworkers and Mgr. Jusin Barrie ("Mgr. Barrie"). |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. R; Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 47: 3-48: 3, 57:24-58:18, 66:18-67:19; Exh. F at 20:23-21:4; Exh. I at 35:20-36:6, Exh. H at 54:11-21 Foshee Decl. ¶ 20, 21, 22) |
| 380. | On April 18, 2019, Plaintiff failed to appear for his scheduled shift. Campos Decl. ¶ 4, Ex. C, 48:20-49:23, Exh. 1 thereto | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶ 13) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| | | Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days. |
| | | (Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 381. | Plaintiff's Project Manager, Miguel Galvez ("Galvez"), and Operations Manager, Joseph Ecklind ("Ecklind"), attempted to contact Plaintiff yet they were unable to reach him.    Campos Decl., ¶ 4, Ex. C, 40:24-41:8. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

410

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". <br><br> (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) <br><br> Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. <br><br> (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 382. | As a result, Galvez emailed Plaintiff advising him that he would be written up because he did not call in or appear for his shift. Campos Decl., ¶ 3-4, Ex. B, 55:7-56:18, Exh. 3 thereto, Ex. C, 48:20-49:23, Exh. 1 thereto. | Disputed. <br><br> Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. <br><br> (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶12,13) <br><br> Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. <br><br> (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) <br><br> Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13, 14) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 383. | Once Plaintiff received this email, he called Galvez and explained that he was receiving medical care for a dual ear infection. Campos Decl., ¶ 3-4, Ex. B, 49:5-12, Ex. C, 41:20-42:12. | Disputed.

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)

Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.

(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)

Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass" |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 384. | Plaintiff and Galvez had a verbal disagreement over the phone regarding Plaintiff's failure to appear for work. Campos Decl., ¶ 3-5, Ex. B, 49:13-20, Ex. C, 43:3-25, Ex. D, 43:6-44:6. | Undisputed, as to the occurrence of the phone call. Disputed, as to categorizing the phone call as a "verbal disagreement"

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)

Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.

(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 385. | Plaintiff's Project Manager, Justin Barrie ("Barrie") met with Galvez and Plaintiff over the phone to work through their disagreement. Campos Decl., ¶ 3-5, Ex. B 50:11-21, Ex. C, 46:18-47:10, Ex. D, 47:6-48:13. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16)<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee Decl. ¶16) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

414

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 386. | Ultimately, Barrie, Galvez, and Plaintiff resolved the conflict, and Plaintiff was not written up for his failure to call in or appear for work.    Campos Decl., ¶ 3-5, Ex. B, 57:2-4, Ex. C, 46:15-47:10, 50:25-51:8, 51:18-52:12, Ex. D, 47:6-48:16. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

415

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 387. | Plaintiff was released to return to work on April 20, 2019 with no restrictions. Campos Decl., ¶ 3, Ex. B, 52:8-19, Exh. 2 thereto. | Undisputed. |
| 388. | However, Plaintiff voluntarily chose to return to work on April 19, 2019. Campos Decl., ¶ 3, Ex. B, 52:20-53:8, 53:12-15. | Disputed.

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)

Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.

(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)

Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |
| | | (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16) |
| | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days. |
| | | (Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 389. | Plaintiff never requested any accommodation or leave for his dual ear infection or any other medical condition. Cox Decl., ¶ 7-8; Campos Decl. ¶ 3, Ex. B, 84:23-85:8. | Disputed. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

417

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass"

(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)

Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.

(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

418

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 390. | Plaintiff admits that aside from this time off to heal from his dual ear infection, he did not need any accommodations to do his job. Campos Decl., ¶ 3, Ex. B, 84:23-85:3. | Disputed. Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 391. | Plaintiff did not have any other medical condition that impacted his ability to do his job during his employment at Defendant. Campos Decl., ¶ 3, Ex. B, 82:9-16, 85:4-8. | Disputed. Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

419

| | **MOVING PARTY'S UNDISPUTED FACTS** | **OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE** |
|---|---|---|
| 392. | Just a few months after his promotion to Construction Manager Plaintiff voluntarily requested to return to his position as a Foreman. Campos Decl., ¶ 3, Ex. B, 66:11-69:25, Exh. 4 thereto. | Undisputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

420

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 393. | On June 17, 2019, Plaintiff emailed Ecklind "requesting to step back down to a foreman roll [sic]," because "timing and life is playing a big roll [sic] in this interest but I think it is the best decision for everyone at this time. I want our team to win and this is just what's best right now." Campos Decl., ¶ 3, Ex. B, 68:5-22, Exh. 4 thereto. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and |

| | | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| | | | because of Mastec's failure to address his concerns. (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. (Foshee Decl. ¶22) |
| 394. | | Even though Plaintiff voluntarily requested his demotion back down to a Foreman, Barrie fought for Plaintiff to retain his higher rate of pay because of Plaintiff's management experience. Campos Decl., ¶ 3, 5-6, Ex. B, 66:11-69:25, Exh. 4 thereto, Ex. D, 37:21-38:21, Ex. E, 65:3-20. | Disputed. Plaintiff's salary upon returning to his position as foreman was determined by the prevailing market rate. (Exh. S) |
| 395. | | Accordingly, effective July 6, 2019, Plaintiff was returned to his position as a Foreman at a rate of $32.00 per hour, rather than the rate of $28.91 per hour he previously earned as a Foreman just a few months earlier.   Campos Decl., ¶ 5, Ex. B, 68:5-22, Ex. E, 65:3-20; Cox Decl., ¶ 6. | Undisputed. |
| 396. | | On September 25, 2019, one of Defendant's clients notified Defendant that they observed several issues at Plaintiff's | Disputed. Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

422

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | job site.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 397. | Specifically, the client reported that they arrived on the site at 10:15 AM and the crew was not yet on site.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 398. | The client returned about 30 minutes later and went over the client's policies and requirements with the crew.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

423

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 399. | The client left the crew with a warning. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 400. | Later that day, the client passed by the job site again and observed Plaintiff in a man lift without a hard hat, at which point the decision was made to shut down the site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

424

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.

(Exh. L at: 29:22-30:13)

Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

425

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 401. | The client also reported that all of Plaintiff's crew were on site without hard hats on nor in the vicinity. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.<br><br>(Exh. L at: 29:22-30:13)<br><br>Mgr. Barrie was known in the company to eschew safety equipment when working |

| MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 402. The client advised Defendant that all of its policies must be followed.  Cox Decl., ¶ 9; Campos  Decl.,  ¶  6,  Ex.  E,  59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.

Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.

(Foshee Decl. ¶25) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.

(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)

No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.

(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| 403. | The client sent Defendant photographs clearly showing Plaintiff up in the man lift without a hard hat.    Cox Decl., ¶ 9; Campos Decl., ¶ 3, 6, Ex. B, 74:10-76:13, Exh. 5 thereto, Ex. E, 59:23-61:5, 80:1-9, 81:16-20, Exh.s 2, 5a, 5b thereto. | Disputed.

No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.

(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)

No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position:<br><br>(Exh. L at: 29:22-30:13)<br><br> Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

429

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 404. | Following Plaintiff's safety violations, Ecklind and Barrie pushed for Plaintiff to be placed on a performance improvement plan, instead of terminating his employment. Campos Decl., ¶ 5-6, Ex. D, 49:1-7, 49:13-15, Ex. E, 59:23-60:13, 62:25-64:5, 64:6-17. | Disputed.<br><br>Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.<br><br>(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 405. | However, after speaking with Windy Cox ("Cox") of Human Resources, it became | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

430

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | clear that Plaintiff's safety violations as a Foreman warranted termination, given that the client caught Plaintiff violating policy multiple times in one day, ultimately had to shut down the site, and submitted photographic evidence of Plaintiff in the man lift without a hard hat. Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.<br><br>(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)<br><br>This contradicts the claims to Plaintiff by Mgr. Ecklind and Mgr. Barrie that Plaintiff's termination had been decided by HR.<br><br>(Exh. J at: 29:1-14; Exh. G at 79:22-25; Exh. I at 48:20-25; Foshee Decl. ¶28)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

431

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 406. | Therefore, Cox recommended terminating Plaintiff's employment based upon his safety violations and the position that he held. Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | Disputed. |
| | | Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage. |
| | | (Foshee Decl. ¶25) |
| | | No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

432

| MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | (Exh. J at 53:16-25, 62:16-24) |
| | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | (Exh. L at: 29:22-30:13) |
| | Mgr. Barrie was known in the company to eschew safety equipment when working |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

433

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 407. | After receiving Cox's recommendation, Barrie and Ecklind agreed to move forward with Plaintiff's termination. Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 69:8-13, 69:22-25. | Disputed. No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | pretextual basis and usually resulted in a warning. |
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

435

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 408. | On September 30, 2019, Defendant terminated Plaintiff's employment for his failure to enforce and follow safety protocol by not wearing a hard hat while in the man lift, and for allowing his team on the job site without hard hats. Campos | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Decl., ¶ 3-6, Ex. B, 72:18-74:3, 80:18-82:8, Exh. 6 thereto, Ex. C, 62:13-64:9, Ex. D, 60:20-62:2, Exh. 6 thereto, Ex. E, 76:22-77:19, Exh. 4 thereto. | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.

(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 409. | Plaintiff admits that he was terminated "because of [his] not having a hard hat on" | Disputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

438

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | and that Defendant's client, "took a picture of that, and, yeah, and that's – I was terminated because of it." Campos Decl., ¶ 3, Ex. B, 72:18-74:3. | Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

439

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 410. | In her role with Human Resources, Cox had access to Defendant's general demographic information. Cox Decl., ¶ 12; Campos Decl., ¶ 6, Ex. E, 121:18-25. | Undisputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |
| 411. | However, Cox did not specifically know the demographics of Plaintiff's location by memory. Cox Decl., ¶ 13; Campos Decl., ¶ 6, Ex. E, 123:3-8, 124:13-20. | Undisputed. |
| 412. | Moreover, Cox did not personally know Plaintiff at the time she recommended his termination. Cox Decl., ¶ 14. | Undisputed. |
| 413. | Cox's recommendation to terminate Plaintiff was based solely on the severity of his safety violations as a Foreman. Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 67:20-68:3, 71:10-15; Cox Decl. ¶ 9-11. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

441

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. |
| | | (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |
| | | In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

442

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| | | Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". |
| | | (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |
| | | When enforced, hard hat violations typically resulted in either a verbal warning or write up. |
| | | (Foshee Decl. ¶27 ) |
| 414. | Throughout Plaintiff's employment, Defendant maintained a "zero-tolerance policy for unlawful discrimination, harassment or retaliation and will not tolerate any such conduct."   Cox Decl., ¶ 15, Ex. A; Campos Decl., ¶ 6, Ex. E, 112:18-24, 120:3-121:17, Exh. 1 thereto. | Disputed. |
| | | Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. |
| | | (Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4) |
| | | In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

443

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)

No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.

(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".

(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)

When enforced, hard hat violations typically resulted in either a verbal warning or write up.

(Foshee Decl. ¶27 ) |
| 415. | Defendant's policy specifically provides that: | Disputed.

Plaintiff was one of five black employees in the Fresno office and the only black |

| MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| "MasTec provides equal employment opportunities to all qualified individuals without regard to race, color, … national origin, … disability or any other basis or characteristic protected by applicable law. MasTec is also committed to providing a work environment free of harassment on the basis of race, color, national origin … or disability or any other characteristic protected by applicable law. It is the responsibility of each and every employee to report unlawful harassment or discrimination when it occurs-whether they are a victim of, or a witness to, unlawful behavior. Employees will be protected from retaliation for opposing unlawful discriminatory practices when they report, in good faith, unlawful harassment or discrimination. Reports of unlawful harassment, discrimination or retaliation can be made to your Human Resources contact or by contacting **Convercent** (formerly **MySafeWorkplace).** Human Resources will investigate all allegations of unlawful harassment and discrimination promptly, impartially and in a confidential manner. If the Company determines that unlawful | employee in upper management during his time as a CM. (Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4) In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

445

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | harassment, discrimination or retaliation has occurred, it will take prompt and effective remedial action." (Emphasis in original.) | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) When enforced, hard hat violations typically resulted in either a verbal warning or write up. (Foshee Decl. ¶27 ) |
| 416. | Throughout Plaintiff's employment, Defendant also maintained a Reasonable Accommodation Policy.   Cox Decl., ¶ 16, Ex. B. | Undisputed as to the existence of the written policy. Disputed as to its enforcement. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 417. | Defendant's policy states that:<br>"To comply with applicable laws ensuring equal employment opportunities to individuals with disabilities (even if in remission or ameliorated), MasTec will make reasonable accommodations for the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee unless undue hardship and/or a direct threat to the health and/or safety of the individual or others would result. Any applicant or employee who requires an accommodation in order to perform the | Undisputed as to the existence of the written policy. Disputed as to its enforcement.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | essential functions of the job should contact your Human Resources Contact and request such an accommodation in writing." | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

448

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. <br><br> (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 418. | At all relevant times, Defendant maintained procedures for complaints of discrimination, mistreatment, and substance abuse.   Cox Decl., ¶ 17, Ex. C. | Disputed. <br><br> Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. <br><br> (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) <br><br> Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. <br><br> (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) <br><br> Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

450

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 419. | Employees were advised to report suspected harassment or discrimination to their Human Resources Contact, or by using the online portal Convercent. Cox Decl., ¶ 17, Ex. C. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

451

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.

(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 420. | As the handbook provides, "Convercent . . . is a 24-hour incident reporting hotline. Convercent allows you to make reports on | Undisputed. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | a wide variety of topics, including, but not limited to, reports of accounting irregularities, fraud, theft, unsafe working conditions, harassment, discrimination, mistreatment . . . safety violations, substance abuse or threats of violence." Cox Decl., ¶ 17, Ex. C. | |
| 421. | Defendant's Open Door Policy instructed employees to speak with their immediate supervisor to address work-related issues. Cox Decl., ¶ 18, Ex. D. | Disputed. Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. (Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | them up if they did not settle the issue themselves.

(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)

Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.

(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 422. | However, if an employee felt uncomfortable speaking directly with their supervisor, they could meet directly with their department's manager, Human Resources Contact, general manager, or other appropriate management personnel. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 423. | Employees could also report issues through Defendant's hotline, Convercent. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 424. | During Plaintiff's employment, Defendant strictly prohibited the use of drugs and alcohol in the workplace. Cox Decl., ¶ 19, Ex. E; Campos Decl., ¶ 4-5, Ex. C, 35:10-36:2, Ex. D, 42:5-8. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION
455

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19) |
| | | In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management |
| | | (Foshee Decl. ¶ 11) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

456

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | HR representative Cox testified that drug offenses could be immediately escalated beyond Mastec's progressive approach to discipline.<br><br>(Exh. J at 47:10-48:10, 85:5-16) |
| 425. | Employees were advised to report any substance abuse through Convercent. Cox Decl., ¶ 17, Ex. C; Campos Decl., ¶ 4, Ex. C, 35:21-36:2. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

457

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 426. | Pursuant to Defendant's Open Door Policy, employees could also report substance abuse issues to their appropriate managers or their Human Resources Contact. Cox Decl., ¶ 18, Ex. D. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management

(Foshee Decl. ¶ 11)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 427. | During his employment, Plaintiff never made, or threatened to make, any formal complaint with Defendant or any other | Disputed.

Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their |

| MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| entity regarding alleged drug use. Cox Decl., ¶ 20; Campos Decl., ¶ 3-6, Ex. B, 40:4-8, 65:13-19, Ex. C, 35:10-12, 36:18-22, Ex. D, 38:22-39:11, 63:20-64:9, Ex. E, 85:12-21, 86:10-17, 87:6-19, 90:17-24. | drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Other Mastec employees observed frequent and open drug abuse while at the Fresno office.

(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

460

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 428. | The only "complaints" Plaintiff alleges to have made regarding the alleged drug use were to his co-workers, simply stating that the alleged drug users did not do anything and were making his job difficult.    Cox Decl., ¶ 20; Campos Decl., ¶ 3, Ex. B, 40:4-8, 47:3-48:3, 65:13-24. | Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well. |
| | | (Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 429. | Barrie testified that Plaintiff never expressed to him any concern regarding drinking or drug use at work, or that he wanted to step down from his position as a Construction Manager because of the alleged drinking and drug use.<br>Campos Decl., ¶ 5, Ex. D, 38:22-39:8, 63:20-64:9. | Dispsuted.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 430. | Galvez also testified that Plaintiff never reported any alleged drinking or drug use to him. Campos Decl., ¶ 4, Ex. C, 35:10-12, 36:18-22. | Undisputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

463

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 431. | During his employment, Plaintiff never complained of any unfair treatment or discrimination based upon his race. Cox Decl., ¶ 21. | Disputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br><br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>Plaintiff took a single drug test during his employment with Mastec which came back negative. Plaintiff was never suspected to have been using drugs.<br><br>(Exh. J 94:12-95:96:8, 102:25-103:5; Exh. L at 5:16-56:6, 56:21-24 Foshee Decl. ¶ 2)<br><br>After Plaintiff was terminated a potential employer called Mastec and was told that Plaintiff had failed a drug test.<br><br>(Exh. M at 21:7-19, 23:4-11; Foshee Decl. ¶ 32) |
| 432. | Plaintiff alleges that he did not receive support from his managers, however none of Plaintiff's allegations are tied to his race. | Disputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

464

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Campos Decl., ¶ 3, Ex. B, 40:4-8, 41:17-43:10, 44:17-45:20, 46:5-48:3, 65:13-24. | (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4)

In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)

Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".
(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)

No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

**Issue No. (8) Plaintiff's Eighth Cause of Action for discrimination based on race: Plaintiff cannot establish a prima facie case, and even if he could, Defendant terminated Plaintiff's employment for a legitimate, non-discriminatory reason, and Plaintiff cannot establish that Defendant's reason was pretextual.**

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 433. | Plaintiff worked for Defendant as a Foreman until he was promoted to a Construction Manager in about March 2019. Cox Decl. ¶ 5. 2019. | Disputed. Plaintiff requested to step down from the Contruction Manager position on June 17, 2019 and return to his previous role as Foreman. Plaintiff complained about the work environment and illegal behavior of |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mastec management to coworkers and Mgr. Jusin Barrie ("Mgr. Barrie"). |
| | | (Exh. R; Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 47: 3-48: 3, 57:24-58:18, 66:18-67:19; Exh. F at 20:23-21:4; Exh. I at 35:20-36:6, Exh. H at 54:11-21 Foshee Decl. ¶ 20, 21, 22) |
| 434. | On April 18, 2019, Plaintiff failed to appear for his scheduled shift. Campos Decl. ¶ 4, Ex. C, 48:20-49:23, Exh. 1 thereto | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

467

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:1-20, Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶ 13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22)<br><br>Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days.<br><br>(Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 435. | Plaintiff's Project Manager, Miguel Galvez ("Galvez"), and Operations Manager, Joseph Ecklind ("Ecklind"), attempted to contact Plaintiff yet they were unable to reach him.    Campos Decl., ¶ 4, Ex. C, 40:24-41:8. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".

(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)

Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.

(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 436. | As a result, Galvez emailed Plaintiff advising him that he would be written up because he did not call in or appear for his shift. Campos Decl., ¶ 3-4, Ex. B, 55:7-56:18, Exh. 3 thereto, Ex. C, 48:20-49:23, Exh. 1 thereto. | Disputed.

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶12,13)

Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.

(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)

Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13, 14) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 437. | Once Plaintiff received this email, he called Galvez and explained that he was receiving medical care for a dual ear infection. Campos Decl., ¶ 3-4, Ex. B, 49:5-12, Ex. C, 41:20-42:12. | Disputed.

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)

Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.

(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)

Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

470

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, "stop acting like a fucking pussy, and I'll beat your ass"

(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)

Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.

(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 438. | Plaintiff and Galvez had a verbal disagreement over the phone regarding Plaintiff's failure to appear for work. Campos Decl., ¶ 3-5, Ex. B, 49:13-20, Ex. C, 43:3-25, Ex. D, 43:6-44:6. | Undisputed, as to the occurrence of the phone call. Disputed, as to categorizing the phone call as a "verbal disagreement"

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)

Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 439. | Plaintiff's Project Manager, Justin Barrie ("Barrie") met with Galvez and Plaintiff over the phone to work through their disagreement. Campos Decl., ¶ 3-5, Ex. B 50:11-21, Ex. C, 46:18-47:10, Ex. D, 47:6-48:13. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16)<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee Decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 440. | Ultimately, Barrie, Galvez, and Plaintiff resolved the conflict, and Plaintiff was not written up for his failure to call in or appear for work.    Campos Decl., ¶ 3-5, Ex. B, 57:2-4, Ex. C, 46:15-47:10, 50:25-51:8, 51:18-52:12, Ex. D, 47:6-48:16. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 441. | Plaintiff was released to return to work on April 20, 2019 with no restrictions. Campos Decl., ¶ 3, Ex. B, 52:8-19, Exh. 2 thereto. | Undisputed. |
| 442. | However, Plaintiff voluntarily chose to return to work on April 19, 2019. Campos Decl., ¶ 3, Ex. B, 52:20-53:8, 53:12-15. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

474

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16)<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days.<br><br>(Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 443. | Plaintiff never requested any accommodation or leave for his dual ear infection or any other medical condition. Cox Decl., ¶ 7-8; Campos Decl. ¶ 3, Ex. B, 84:23-85:8. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass"<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 444. | Plaintiff admits that aside from this time off to heal from his dual ear infection, he did not need any accommodations to do his job. Campos Decl., ¶ 3, Ex. B, 84:23-85:3. | Disputed. Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 445. | Plaintiff did not have any other medical condition that impacted his ability to do his job during his employment at Defendant. Campos Decl., ¶ 3, Ex. B, 82:9-16, 85:4-8. | Disputed. Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 446. | Just a few months after his promotion to Construction Manager Plaintiff voluntarily requested to return to his position as a Foreman. Campos Decl., ¶ 3, Ex. B, 66:11-69:25, Exh. 4 thereto. | Undisputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 447. | On June 17, 2019, Plaintiff emailed Ecklind "requesting to step back down to a foreman roll [sic]," because "timing and life is playing a big roll [sic] in this interest but I think it is the best decision for everyone at this time. I want our team to win and this is just what's best right now." Campos Decl., ¶ 3, Ex. B, 68:5-22, Exh. 4 thereto. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

479

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 448. | Even though Plaintiff voluntarily requested his demotion back down to a Foreman, Barrie fought for Plaintiff to retain his higher rate of pay because of Plaintiff's management experience. Campos Decl., ¶ 3, 5-6, Ex. B, 66:11-69:25, Exh. 4 thereto, Ex. D, 37:21-38:21, Ex. E, 65:3-20. | Disputed.<br><br>Plaintiff's salary upon returning to his position as foreman was determined by the prevailing market rate.<br><br>(Exh. S) |
| 449. | Accordingly, effective July 6, 2019, Plaintiff was returned to his position as a Foreman at a rate of $32.00 per hour, rather than the rate of $28.91 per hour he previously earned as a Foreman just a few months earlier. Campos Decl., ¶ 5, Ex. B, 68:5-22, Ex. E, 65:3-20; Cox Decl., ¶ 6. | Undisputed. |
| 450. | On September 25, 2019, one of Defendant's clients notified Defendant that | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | they observed several issues at Plaintiff's job site.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.

(Foshee Decl. ¶25) |
| 451. | Specifically, the client reported that they arrived on the site at 10:15 AM and the crew was not yet on site.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.

Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.

(Foshee Decl. ¶25) |
| 452. | The client returned about 30 minutes later and went over the client's policies and requirements with the crew.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.

Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.

(Foshee Decl. ¶25) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

481

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 453. | The client left the crew with a warning. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 454. | Later that day, the client passed by the job site again and observed Plaintiff in a man lift without a hard hat, at which point the decision was made to shut down the site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.

(Exh. L at: 29:22-30:13)

Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

483

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 455. | The client also reported that all of Plaintiff's crew were on site without hard hats on nor in the vicinity. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.<br><br>(Exh. L at: 29:22-30:13)<br><br>Mgr. Barrie was known in the company to eschew safety equipment when working |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

484

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 456. | The client advised Defendant that all of its policies must be followed.  Cox Decl., ¶ 9; Campos Decl.,  ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

485

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| 457. | The client sent Defendant photographs clearly showing Plaintiff up in the man lift without a hard hat.    Cox Decl., ¶ 9; Campos Decl., ¶ 3, 6, Ex. B, 74:10-76:13, Exh. 5 thereto, Ex. E, 59:23-61:5, 80:1-9, 81:16-20, Exh.s 2, 5a, 5b thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position:<br><br>(Exh. L at: 29:22-30:13)<br><br> Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

487

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 458. | Following Plaintiff's safety violations, Ecklind and Barrie pushed for Plaintiff to be placed on a performance improvement plan, instead of terminating his employment. Campos Decl., ¶ 5-6, Ex. D, 49:1-7, 49:13-15, Ex. E, 59:23-60:13, 62:25-64:5, 64:6-17. | Disputed.<br><br>Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.<br><br>(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 459. | However, after speaking with Windy Cox ("Cox") of Human Resources, it became | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

488

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | clear that Plaintiff's safety violations as a Foreman warranted termination, given that the client caught Plaintiff violating policy multiple times in one day, ultimately had to shut down the site, and submitted photographic evidence of Plaintiff in the man lift without a hard hat. Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.

(Foshee Decl. ¶25)

Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.

(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)

This contradicts the claims to Plaintiff by Mgr. Ecklind and Mgr. Barrie that Plaintiff's termination had been decided by HR.

(Exh. J at: 29:1-14; Exh. G at 79:22-25; Exh. I at 48:20-25; Foshee Decl. ¶28)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

489

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 460. | Therefore, Cox recommended terminating Plaintiff's employment based upon his safety violations and the position that he held.    Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

491

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)

Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"

(Exh. B, Exh. F at 19:9-20:4) |
| 461. | After receiving Cox's recommendation, Barrie and Ecklind agreed to move forward with Plaintiff's termination. Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 69:8-13, 69:22-25. | Disputed.

No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | pretextual basis and usually resulted in a warning. |
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

493

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)

Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"

(Exh. B, Exh. F at 19:9-20:4) |
| 462. | On September 30, 2019, Defendant terminated Plaintiff's employment for his failure to enforce and follow safety protocol by not wearing a hard hat while in the man lift, and for allowing his team on the job site without hard hats. Campos | Disputed.

Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.

(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

494

| MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Decl., ¶ 3-6, Ex. B, 72:18-74:3, 80:18-82:8, Exh. 6 thereto, Ex. C, 62:13-64:9, Ex. D, 60:20-62:2, Exh. 6 thereto, Ex. E, 76:22-77:19, Exh. 4 thereto. | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.

(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

495

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 463. | Plaintiff admits that he was terminated "because of [his] not having a hard hat on" | Disputed. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | and that Defendant's client, "took a picture of that, and, yeah, and that's – I was terminated because of it." Campos Decl., ¶ 3, Ex. B, 72:18-74:3. | Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.

(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )

Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.

(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

No Mastec employees were wearing their hard hats at the Fresno job site on |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

497

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 464. | In her role with Human Resources, Cox had access to Defendant's general demographic information. Cox Decl., ¶ 12; Campos Decl., ¶ 6, Ex. E, 121:18-25. | Undisputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |
| 465. | However, Cox did not specifically know the demographics of Plaintiff's location by memory. Cox Decl., ¶ 13; Campos Decl., ¶ 6, Ex. E, 123:3-8, 124:13-20. | Undisputed. |
| 466. | Moreover, Cox did not personally know Plaintiff at the time she recommended his termination. Cox Decl., ¶ 14. | Undisputed. |
| 467. | Cox's recommendation to terminate Plaintiff was based solely on the severity of his safety violations as a Foreman. Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 67:20-68:3, 71:10-15; Cox Decl. ¶ 9-11. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. |
| | | (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |
| | | In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

500

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)

Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".

(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)

When enforced, hard hat violations typically resulted in either a verbal warning or write up.

(Foshee Decl. ¶27 ) |
| 468. | Throughout Plaintiff's employment, Defendant maintained a "zero-tolerance policy for unlawful discrimination, harassment or retaliation and will not tolerate any such conduct."   Cox Decl., ¶ 15, Ex. A; Campos Decl., ¶ 6, Ex. E, 112:18-24, 120:3-121:17, Exh. 1 thereto. | Disputed.

Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.

(Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4)

In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br><br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>When enforced, hard hat violations typically resulted in either a verbal warning or write up.<br><br>(Foshee Decl. ¶27 ) |
| 469. | Defendant's policy specifically provides that: | Disputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

502

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | "MasTec provides equal employment opportunities to all qualified individuals without regard to race, color, … national origin, … disability or any other basis or characteristic protected by applicable law. MasTec is also committed to providing a work environment free of harassment on the basis of race, color, national origin … or disability or any other characteristic protected by applicable law. It is the responsibility of each and every employee to report unlawful harassment or discrimination when it occurs-whether they are a victim of, or a witness to, unlawful behavior. Employees will be protected from retaliation for opposing unlawful discriminatory practices when they report, in good faith, unlawful harassment or discrimination. Reports of unlawful harassment, discrimination or retaliation can be made to your Human Resources contact or by contacting **Convercent** (formerly **MySafeWorkplace).** Human Resources will investigate all allegations of unlawful harassment and discrimination promptly, impartially and in a confidential manner. If the Company determines that unlawful | employee in upper management during his time as a CM. (Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4) In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

503

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | harassment, discrimination or retaliation has occurred, it will take prompt and effective remedial action." (Emphasis in original.) | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) When enforced, hard hat violations typically resulted in either a verbal warning or write up. (Foshee Decl. ¶27 ) |
| 470. | Throughout Plaintiff's employment, Defendant also maintained a Reasonable Accommodation Policy.   Cox Decl., ¶ 16, Ex. B. | Undisputed as to the existence of the written policy. Disputed as to its enforcement. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

504

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 471. | Defendant's policy states that:<br>"To comply with applicable laws ensuring equal employment opportunities to individuals with disabilities (even if in remission or ameliorated), MasTec will make reasonable accommodations for the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee unless undue hardship and/or a direct threat to the health and/or safety of the individual or others would result. Any applicant or employee who requires an accommodation in order to perform the | Undisputed as to the existence of the written policy. Disputed as to its enforcement.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

505

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | essential functions of the job should contact your Human Resources Contact and request such an accommodation in writing." | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 472. | At all relevant times, Defendant maintained procedures for complaints of discrimination, mistreatment, and substance abuse.   Cox Decl., ¶ 17, Ex. C. | Disputed. |
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |
| | | (Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) |
| | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

508

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 473. | Employees were advised to report suspected harassment or discrimination to their Human Resources Contact, or by using the online portal Convercent. Cox Decl., ¶ 17, Ex. C. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.

(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 474. | As the handbook provides, "Convercent . . . is a 24-hour incident reporting hotline. Convercent allows you to make reports on | Undisputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

510

| MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| a wide variety of topics, including, but not limited to, reports of accounting irregularities, fraud, theft, unsafe working conditions, harassment, discrimination, mistreatment . . . safety violations, substance abuse or threats of violence." Cox Decl., ¶ 17, Ex. C. | |
| 475. Defendant's Open Door Policy instructed employees to speak with their immediate supervisor to address work-related issues. Cox Decl., ¶ 18, Ex. D. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

512

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 476. | However, if an employee felt uncomfortable speaking directly with their supervisor, they could meet directly with their department's manager, Human Resources Contact, general manager, or other appropriate management personnel. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 477. | Employees could also report issues through Defendant's hotline, Convercent. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 478. | During Plaintiff's employment, Defendant strictly prohibited the use of drugs and alcohol in the workplace. Cox Decl., ¶ 19, Ex. E; Campos Decl., ¶ 4-5, Ex. C, 35:10-36:2, Ex. D, 42:5-8. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)

In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management

(Foshee Decl. ¶ 11)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

514

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | HR representative Cox testified that drug offenses could be immediately escalated beyond Mastec's progressive approach to discipline.<br><br>(Exh. J at 47:10-48:10, 85:5-16) |
| 479. | Employees were advised to report any substance abuse through Convercent. Cox Decl., ¶ 17, Ex. C; Campos Decl., ¶ 4, Ex. C, 35:21-36:2. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 480. | Pursuant to Defendant's Open Door Policy, employees could also report substance abuse issues to their appropriate managers or their Human Resources Contact.   Cox Decl., ¶ 18, Ex. D. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

516

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management |
| | | (Foshee Decl. ¶ 11) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 481. | During his employment, Plaintiff never made, or threatened to make, any formal complaint with Defendant or any other | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

517

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | entity regarding alleged drug use. Cox Decl., ¶ 20; Campos Decl., ¶ 3-6, Ex. B, 40:4-8, 65:13-19, Ex. C, 35:10-12, 36:18-22, Ex. D, 38:22-39:11, 63:20-64:9, Ex. E, 85:12-21, 86:10-17, 87:6-19, 90:17-24. | drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Other Mastec employees observed frequent and open drug abuse while at the Fresno office.

(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 482. | The only "complaints" Plaintiff alleges to have made regarding the alleged drug use were to his co-workers, simply stating that the alleged drug users did not do anything and were making his job difficult. Cox Decl., ¶ 20; Campos Decl., ¶ 3, Ex. B, 40:4-8, 47:3-48:3, 65:13-24. | Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

519

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 483. | Barrie testified that Plaintiff never expressed to him any concern regarding drinking or drug use at work, or that he wanted to step down from his position as a Construction Manager because of the alleged drinking and drug use.
Campos Decl., ¶ 5, Ex. D, 38:22-39:8, 63:20-64:9. | Dispsuted.

Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Other Mastec employees observed frequent and open drug abuse while at the Fresno office. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 484. | Galvez also testified that Plaintiff never reported any alleged drinking or drug use to him.  Campos Decl., ¶ 4, Ex. C, 35:10-12, 36:18-22. | Undisputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

521

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 485. | During his employment, Plaintiff never complained of any unfair treatment or discrimination based upon his race. Cox Decl., ¶ 21. | Disputed. Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) Plaintiff took a single drug test during his employment with Mastec which came back negative. Plaintiff was never suspected to have been using drugs. (Exh. J 94:12-95:96:8, 102:25-103:5; Exh. L at 5:16-56:6, 56:21-24 Foshee Decl. ¶ 2) After Plaintiff was terminated a potential employer called Mastec and was told that Plaintiff had failed a drug test. (Exh. M at 21:7-19, 23:4-11; Foshee Decl. ¶ 32) |
| 486. | Plaintiff alleges that he did not receive support from his managers, however none of Plaintiff's allegations are tied to his race. | Disputed. Plaintiff was one of five black employees in the Fresno office and the only black |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

522

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Campos Decl., ¶ 3, Ex. B, 40:4-8, 41:17-43:10, 44:17-45:20, 46:5-48:3, 65:13-24. | employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4)<br><br>In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br><br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

523

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

**Issue No. (9) Plaintiff's Ninth Cause of Action for opposing violations of the Fair Employment and Housing Act: Plaintiff never opposed any conduct prohibited by the Fair Employment and**

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

524

**Housing Act, and even if he did, Defendant terminated Plaintiff's employment for a legitimate, non-retaliatory reason, and Plaintiff cannot show that Defendant's reason was pretextual.**

| | | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| | 487. | Plaintiff worked for Defendant as a Foreman until he was promoted to a Construction Manager in about March 2019. Cox Decl. ¶ 5. 2019. | Disputed. <br><br> Plaintiff requested to step down from the Contruction Manager position on June 17, 2019 and return to his previous role as Foreman. Plaintiff complained about the work environment and illegal behavior of Mastec management to coworkers and Mgr. Jusin Barrie ("Mgr. Barrie"). <br><br> (Exh. R; Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 47: 3-48: 3, 57:24-58:18, 66:18-67:19; Exh. F at 20:23-21:4; Exh. I at 35:20-36:6, Exh. H at 54:11-21 Foshee Decl. ¶ 20, 21, 22) |
| | 488. | On April 18, 2019, Plaintiff failed to appear for his scheduled shift. Campos Decl. ¶ 4, Ex. C, 48:20-49:23, Exh. 1 thereto | Disputed. <br><br> Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. <br><br> (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) <br><br> Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. <br><br> (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

525

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶ 13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22)<br><br>Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days.<br><br>(Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 489. | Plaintiff's Project Manager, Miguel Galvez ("Galvez"), and Operations Manager, Joseph Ecklind ("Ecklind"), attempted to contact Plaintiff yet they were unable to reach him. Campos Decl., ¶ 4, Ex. C, 40:24-41:8. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

526

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.

(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)

Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".

(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)

Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.

(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 490. | As a result, Galvez emailed Plaintiff advising him that he would be written up because he did not call in or appear for his shift. Campos Decl., ¶ 3-4, Ex. B, 55:7-56:18, Exh. 3 thereto, Ex. C, 48:20-49:23, Exh. 1 thereto. | Disputed.

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶12,13) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

527

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13, 14)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 491. | Once Plaintiff received this email, he called Galvez and explained that he was receiving medical care for a dual ear infection. Campos Decl., ¶ 3-4, Ex. B, 49:5-12, Ex. C, 41:20-42:12. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass"<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 492. | Plaintiff and Galvez had a verbal disagreement over the phone regarding Plaintiff's failure to appear for work. Campos Decl., ¶ 3-5, Ex. B, 49:13-20, Ex. C, 43:3-25, Ex. D, 43:6-44:6. | Undisputed, as to the occurrence of the phone call. Disputed, as to categorizing the phone call as a "verbal disagreement"<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | inform Mastec that he would be unable to come in that day as a result of the ear infection. |
| | | (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) |
| | | Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |
| | | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 493. | Plaintiff's Project Manager, Justin Barrie ("Barrie") met with Galvez and Plaintiff over the phone to work through their disagreement. Campos Decl., ¶ 3-5, Ex. | Disputed.

Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

530

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | B 50:11-21, Ex. C, 46:18-47:10, Ex. D, 47:6-48:13. | several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16)<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee Decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 494. | Ultimately, Barrie, Galvez, and Plaintiff resolved the conflict, and Plaintiff was not written up for his failure to call in or appear for work.    Campos Decl., ¶ 3-5, Ex. B, 57:2-4, Ex. C, 46:15-47:10, 50:25-51:8, 51:18-52:12, Ex. D, 47:6-48:16. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

531

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 495. | Plaintiff was released to return to work on April 20, 2019 with no restrictions. Campos Decl., ¶ 3, Ex. B, 52:8-19, Exh. 2 thereto. | Undisputed. |
| 496. | However, Plaintiff voluntarily chose to return to work on April 19, 2019.  Campos Decl., ¶ 3, Ex. B, 52:20-53:8, 53:12-15. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16)<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

533

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 497. | Plaintiff never requested any accommodation or leave for his dual ear infection or any other medical condition. Cox Decl., ¶ 7-8; Campos Decl. ¶ 3, Ex. B, 84:23-85:8. | Disputed. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass" (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) Plaintiff complained about Mastec's toxic work environment and related illicit behavior by Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 498. | Plaintiff admits that aside from this time off to heal from his dual ear infection, he did not need any accommodations to do his job. Campos Decl., ¶ 3, Ex. B, 84:23-85:3. | Disputed.<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

535

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 499. | Plaintiff did not have any other medical condition that impacted his ability to do his job during his employment at Defendant. Campos Decl., ¶ 3, Ex. B, 82:9-16, 85:4-8. | Disputed.<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| 500. | Just a few months after his promotion to Construction Manager Plaintiff voluntarily requested to return to his position as a Foreman.     Campos Decl., ¶ 3, Ex. B, 66:11-69:25, Exh. 4 thereto. | Undisputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

536

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 501. | On June 17, 2019, Plaintiff emailed Ecklind "requesting to step back down to a foreman roll [sic]," because "timing and life is playing a big roll [sic] in this interest but I think it is the best decision for everyone at this time. I want our team to win and this is just what's best right now." Campos Decl., ¶ 3, Ex. B, 68:5-22, Exh. 4 thereto. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 502. | Even though Plaintiff voluntarily requested his demotion back down to a Foreman, Barrie fought for Plaintiff to retain his higher rate of pay because of Plaintiff's management experience. Campos Decl., ¶ 3, 5-6, Ex. B, 66:11-69:25, Exh. 4 thereto, Ex. D, 37:21-38:21, Ex. E, 65:3-20. | Disputed. Plaintiff's salary upon returning to his position as foreman was determined by the prevailing market rate. (Exh. S) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

538

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 503. | Accordingly, effective July 6, 2019, Plaintiff was returned to his position as a Foreman at a rate of $32.00 per hour, rather than the rate of $28.91 per hour he previously earned as a Foreman just a few months earlier. Campos Decl., ¶ 5, Ex. B, 68:5-22, Ex. E, 65:3-20; Cox Decl., ¶ 6. | Undisputed. |
| 504. | On September 25, 2019, one of Defendant's clients notified Defendant that they observed several issues at Plaintiff's job site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 505. | Specifically, the client reported that they arrived on the site at 10:15 AM and the crew was not yet on site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 506. | The client returned about 30 minutes later and went over the client's policies and requirements with the crew.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 507. | The client left the crew with a warning. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 508. | Later that day, the client passed by the job site again and observed Plaintiff in a man lift without a hard hat, at which point the decision was made to shut down the site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.<br><br>(Exh. L at: 29:22-30:13)<br><br>Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

541

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 509. | The client also reported that all of Plaintiff's crew were on site without hard hats on nor in the vicinity.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

543

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 510. | The client advised Defendant that all of its policies must be followed.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| 511. | The client sent Defendant photographs clearly showing Plaintiff up in the man lift without a hard hat.        Cox Decl., ¶ 9; | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

544

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Campos Decl., ¶ 3, 6, Ex. B, 74:10-76:13, Exh. 5 thereto, Ex. E, 59:23-61:5, 80:1-9, 81:16-20, Exh.s 2, 5a, 5b thereto. | the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

545

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 512. | Following Plaintiff's safety violations, Ecklind and Barrie pushed for Plaintiff to be placed on a performance improvement plan, instead of terminating his employment. Campos Decl., ¶ 5-6, Ex. D, 49:1-7, 49:13-15, Ex. E, 59:23-60:13, 62:25-64:5, 64:6-17. | Disputed.

Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.

(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)

HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. (Exh. J at 53:16-25, 62:16-24) Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" (Exh. B, Exh. F at 19:9-20:4) |
| 513. | However, after speaking with Windy Cox ("Cox") of Human Resources, it became clear that Plaintiff's safety violations as a Foreman warranted termination, given that the client caught Plaintiff violating policy multiple times in one day, ultimately had to shut down the site, and submitted photographic evidence of Plaintiff in the man lift without a hard hat. Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | Disputed. Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage. (Foshee Decl. ¶25) Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures. (Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

547

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | This contradicts the claims to Plaintiff by Mgr. Ecklind and Mgr. Barrie that Plaintiff's termination had been decided by HR. |
| | | (Exh. J at: 29:1-14; Exh. G at 79:22-25; Exh. I at 48:20-25; Foshee Decl. ¶28) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 514. | Therefore, Cox recommended terminating Plaintiff's employment based upon his safety violations and the position that he held.  Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

548

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | The client did not provide any guidance or warnings as to safety or hardhat usage. |
| | | (Foshee Decl. ¶25) |
| | | No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

549

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.

(Exh. J at 53:16-25, 62:16-24)

Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.

(Exh. L at: 29:22-30:13)

Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

550

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 515. | After receiving Cox's recommendation, Barrie and Ecklind agreed to move forward with Plaintiff's termination. Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 69:8-13, 69:22-25. | Disputed. No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) HR representative Cox testified that corrective actions other than termination were available for the kind of offense |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

551

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

552

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 516. | On September 30, 2019, Defendant terminated Plaintiff's employment for his failure to enforce and follow safety protocol by not wearing a hard hat while in the man lift, and for allowing his team on the job site without hard hats.    Campos Decl., ¶ 3-6, Ex. B, 72:18-74:3, 80:18-82:8, Exh. 6 thereto, Ex. C, 62:13-64:9, Ex. D, 60:20-62:2, Exh. 6 thereto, Ex. E, 76:22-77:19, Exh. 4 thereto. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

554

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 517. | Plaintiff admits that he was terminated "because of [his] not having a hard hat on" and that Defendant's client, "took a picture of that, and, yeah, and that's – I was terminated because of it." Campos Decl., ¶ 3, Ex. B, 72:18-74:3. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.

(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)

No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.

(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

556

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 518. | In her role with Human Resources, Cox had access to Defendant's general demographic information. Cox Decl., ¶ 12; Campos Decl., ¶ 6, Ex. E, 121:18-25. | Undisputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |
| 519. | However, Cox did not specifically know the demographics of Plaintiff's location by memory. Cox Decl., ¶ 13; Campos Decl., ¶ 6, Ex. E, 123:3-8, 124:13-20. | Undisputed. |
| 520. | Moreover, Cox did not personally know Plaintiff at the time she recommended his termination. Cox Decl., ¶ 14. | Undisputed. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 521. | Cox's recommendation to terminate Plaintiff was based solely on the severity of his safety violations as a Foreman. Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 67:20-68:3, 71:10-15; Cox Decl. ¶ 9-11. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| | | Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". |
| | | (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |
| | | When enforced, hard hat violations typically resulted in either a verbal warning or write up. |
| | | (Foshee Decl. ¶27 ) |
| 522. | Throughout Plaintiff's employment, Defendant maintained a "zero-tolerance policy for unlawful discrimination, harassment or retaliation and will not | Disputed. Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

559

| MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| tolerate any such conduct." Cox Decl., ¶ 15, Ex. A; Campos Decl., ¶ 6, Ex. E, 112:18-24, 120:3-121:17, Exh. 1 thereto. | (Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4)<br><br>In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

560

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) When enforced, hard hat violations typically resulted in either a verbal warning or write up. (Foshee Decl. ¶27 ) |
| 523. | Defendant's policy specifically provides that: "MasTec provides equal employment opportunities to all qualified individuals without regard to race, color, … national origin, … disability or any other basis or characteristic protected by applicable law. MasTec is also committed to providing a work environment free of harassment on the basis of race, color, national origin … or disability or any other characteristic protected by applicable law. It is the responsibility of each and every employee to report unlawful harassment or discrimination when it occurs-whether they are a victim of, or a witness to, unlawful behavior. Employees will be protected from retaliation for opposing | Disputed. Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. (Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4) In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

561

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | unlawful discriminatory practices when they report, in good faith, unlawful harassment or discrimination.<br><br>Reports of unlawful harassment, discrimination or retaliation can be made to your Human Resources contact or by contacting **Convercent** (formerly **MySafeWorkplace**). Human Resources will investigate all allegations of unlawful harassment and discrimination promptly, impartially and in a confidential manner. If the Company determines that unlawful harassment, discrimination or retaliation has occurred, it will take prompt and effective remedial action."<br><br>(Emphasis in original.) | 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br><br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>When enforced, hard hat violations typically resulted in either a verbal warning or write up.<br><br>(Foshee Decl. ¶27 ) |
| 524. | Throughout Plaintiff's employment, Defendant also maintained a Reasonable Accommodation Policy. Cox Decl., ¶ 16, Ex. B. | Undisputed as to the existence of the written policy. Disputed as to its enforcement.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 525. | Defendant's policy states that: | Undisputed as to the existence of the written policy. Disputed as to its enforcement. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

563

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | "To comply with applicable laws ensuring equal employment opportunities to individuals with disabilities (even if in remission or ameliorated), MasTec will make reasonable accommodations for the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee unless undue hardship and/or a direct threat to the health and/or safety of the individual or others would result. Any applicant or employee who requires an accommodation in order to perform the essential functions of the job should contact your Human Resources Contact and request such an accommodation in writing." | Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

564

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 526. | At all relevant times, Defendant maintained procedures for complaints of discrimination, mistreatment, and substance abuse.   Cox Decl., ¶ 17, Ex. C. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

565

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |
| | | (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) |
| | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

566

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 527. | Employees were advised to report suspected harassment or discrimination to their Human Resources Contact, or by using the online portal Convercent. Cox Decl., ¶ 17, Ex. C. | Disputed.

Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..

(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)

Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | several harassing and threatening comments to him. |
| | | (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) |
| | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

568

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 528. | As the handbook provides, "Convercent . . . is a 24-hour incident reporting hotline. Convercent allows you to make reports on a wide variety of topics, including, but not limited to, reports of accounting irregularities, fraud, theft, unsafe working conditions, harassment, discrimination, mistreatment . . . safety violations, substance abuse or threats of violence." Cox Decl., ¶ 17, Ex. C. | Undisputed. |
| 529. | Defendant's Open Door Policy instructed employees to speak with their immediate supervisor to address work-related issues. Cox Decl., ¶ 18, Ex. D. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)

Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.

(Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )

Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.

(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)

Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.

(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

570

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 530. | However, if an employee felt uncomfortable speaking directly with their supervisor, they could meet directly with their department's manager, Human Resources Contact, general manager, or other appropriate management personnel. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 531. | Employees could also report issues through Defendant's hotline, Convercent. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 532. | During Plaintiff's employment, Defendant strictly prohibited the use of drugs and alcohol in the workplace. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Cox Decl., ¶ 19, Ex. E; Campos Decl., ¶ 4-5, Ex. C, 35:10-36:2, Ex. D, 42:5-8. | failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management<br><br>(Foshee Decl. ¶ 11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22)<br><br>HR representative Cox testified that drug offenses could be immediately escalated beyond Mastec's progressive approach to discipline.<br><br>(Exh. J at 47:10-48:10, 85:5-16) |
| 533. | Employees were advised to report any substance abuse through Convercent. Cox Decl., ¶ 17, Ex. C; Campos Decl., ¶ 4, Ex. C, 35:21-36:2. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

573

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Other Mastec employees observed frequent and open drug abuse while at the Fresno office. |
| | | (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 534. | Pursuant to Defendant's Open Door Policy, employees could also report | Disputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

574

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | substance abuse issues to their appropriate managers or their Human Resources Contact.   Cox Decl., ¶ 18, Ex. D. | Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management

(Foshee Decl. ¶ 11)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

575

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 535. | During his employment, Plaintiff never made, or threatened to make, any formal complaint with Defendant or any other entity regarding alleged drug use.    Cox Decl., ¶ 20; Campos Decl., ¶ 3-6, Ex. B, 40:4-8, 65:13-19, Ex. C, 35:10-12, 36:18-22, Ex. D, 38:22-39:11, 63:20-64:9, Ex. E, 85:12-21, 86:10-17, 87:6-19, 90:17-24. | Disputed. Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well. (Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) Other Mastec employees observed frequent and open drug abuse while at the Fresno office. (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19) Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

576

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 536. | The only "complaints" Plaintiff alleges to have made regarding the alleged drug use were to his co-workers, simply stating that the alleged drug users did not do anything and were making his job difficult.    Cox Decl., ¶ 20; Campos Decl., ¶ 3, Ex. B, 40:4-8, 47:3-48:3, 65:13-24. | Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well. |
| | | (Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

577

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 537. | Barrie testified that Plaintiff never expressed to him any concern regarding drinking or drug use at work, or that he wanted to step down from his position as a Construction Manager because of the alleged drinking and drug use. | Dispsuted.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Campos Decl., ¶ 5, Ex. D, 38:22-39:8, 63:20-64:9. | (Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) |
| | | Other Mastec employees observed frequent and open drug abuse while at the Fresno office. |
| | | (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

579

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 538. | Galvez also testified that Plaintiff never reported any alleged drinking or drug use to him.   Campos Decl., ¶ 4, Ex. C, 35:10-12, 36:18-22. | Undisputed. |
| 539. | During his employment, Plaintiff never complained of any unfair treatment or discrimination based upon his race.   Cox Decl., ¶ 21. | Disputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br><br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>Plaintiff took a single drug test during his employment with Mastec which came back negative. Plaintiff was never suspected to have been using drugs.<br><br>(Exh. J 94:12-95:96:8, 102:25-103:5; Exh. L at 5:16-56:6, 56:21-24 Foshee Decl. ¶ 2) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

580

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | After Plaintiff was terminated a potential employer called Mastec and was told that Plaintiff had failed a drug test. (Exh. M at 21:7-19, 23:4-11; Foshee Decl. ¶ 32) |
| 540. | Plaintiff alleges that he did not receive support from his managers, however none of Plaintiff's allegations are tied to his race. Campos Decl., ¶ 3, Ex. B, 40:4-8, 41:17-43:10, 44:17-45:20, 46:5-48:3, 65:13-24. | Disputed. Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations. (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

581

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Barrie say "I never say nigger unless I'm fighting someone or something". (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

**Issue No. (10) Plaintiff's Tenth Cause of Action for wrongful termination: Plaintiff's claim is based entirely upon his first nine causes of action, all of which fail as a matter of law.**

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

582

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 541. | Plaintiff worked for Defendant as a Foreman until he was promoted to a Construction Manager in about March 2019. Cox Decl. ¶ 5. 2019. | Disputed.<br><br>Plaintiff requested to step down from the Contruction Manager position on June 17, 2019 and return to his previous role as Foreman. Plaintiff complained about the work environment and illegal behavior of Mastec management to coworkers and Mgr. Jusin Barrie ("Mgr. Barrie").<br><br>(Exh. R; Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 47: 3-48: 3, 57:24-58:18, 66:18-67:19; Exh. F at 20:23-21:4; Exh. I at 35:20-36:6, Exh. H at 54:11-21 Foshee Decl. ¶ 20, 21, 22) |
| 542. | On April 18, 2019, Plaintiff failed to appear for his scheduled shift.    Campos Decl. ¶ 4, Ex. C, 48:20-49:23, Exh. 1 thereto | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". <br><br> (Exh. G at 49:1-20, Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶ 13) <br><br> Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. <br><br> (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) <br><br> Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days. <br><br> (Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 543. | Plaintiff's Project Manager, Miguel Galvez ("Galvez"), and Operations Manager, Joseph Ecklind ("Ecklind"), attempted to contact Plaintiff yet they were unable to reach him. Campos Decl., ¶ 4, Ex. C, 40:24-41:8. | Disputed. <br><br> Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. <br><br> (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) <br><br> Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

584

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)

Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".

(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)

Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.

(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 544. | As a result, Galvez emailed Plaintiff advising him that he would be written up because he did not call in or appear for his shift. Campos Decl., ¶ 3-4, Ex. B, 55:7-56:18, Exh. 3 thereto, Ex. C, 48:20-49:23, Exh. 1 thereto. | Disputed.

Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.

(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶12,13)

Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13, 14)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 545. | Once Plaintiff received this email, he called Galvez and explained that he was receiving medical care for a dual ear infection.  Campos Decl., ¶ 3-4, Ex. B, 49:5-12, Ex. C, 41:20-42:12. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

586

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | call no show write up around 11:30 AM on April 18, 2019. |
| | | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |
| | | Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass" |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 546. | Plaintiff and Galvez had a verbal disagreement over the phone regarding Plaintiff's failure to appear for work. Campos Decl., ¶ 3-5, Ex. B, 49:13-20, Ex. C, 43:3-25, Ex. D, 43:6-44:6. | Undisputed, as to the occurrence of the phone call. Disputed, as to categorizing the phone call as a "verbal disagreement" <br><br> Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. <br><br> (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

587

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.

(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)

Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning.  Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".

(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)

Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.

(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 547. | Plaintiff's Project Manager, Justin Barrie ("Barrie") met with Galvez and Plaintiff over the phone to work through their disagreement.   Campos Decl., ¶ 3-5, Ex. B 50:11-21, Ex. C, 46:18-47:10, Ex. D, 47:6-48:13. | Disputed.

Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.

(Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee Decl. ¶16) |
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 548. | Ultimately, Barrie, Galvez, and Plaintiff resolved the conflict, and Plaintiff was not written up for his failure to call in or appear for work.    Campos Decl., ¶ 3-5, Ex. B, 57:2-4, Ex. C, 46:15-47:10, 50:25-51:8, 51:18-52:12, Ex. D, 47:6-48:16. | Disputed.

Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez.  Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.

(Exh. G at 49:21-50:2, Exh. I at  43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 )

Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.

(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

589

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.<br><br>(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 549. | Plaintiff was released to return to work on April 20, 2019 with no restrictions. Campos Decl., ¶ 3, Ex. B, 52:8-19, Exh. 2 thereto. | Undisputed. |
| 550. | However, Plaintiff voluntarily chose to return to work on April 19, 2019. Campos Decl., ¶ 3, Ex. B, 52:20-53:8, 53:12-15. | Disputed.<br><br>Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection.<br><br>(Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13)<br><br>Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass". |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |
| | | (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16) |
| | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Plaintiff brought a doctor's note in on April 19, 2019 placing him off work for two additional days. |
| | | (Exh Q; Exh. G at 51:14-17; Foshee Decl. ¶17) |
| 551. | Plaintiff never requested any accommodation or leave for his dual ear infection or any other medical condition. | Disputed. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

591

| | **MOVING PARTY'S UNDISPUTED FACTS** | **OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE** |
|---|---|---|
| | Cox Decl., ¶ 7-8; Campos Decl. ¶ 3, Ex. B, 84:23-85:8. | and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. |
| | | (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) |
| | | Plaintiff struggled to speak, stand and walk on the morning of April 18, 2019. He also spent much of the morning in the ER away from his cell phone. Despite these obstacles, he felt obligated to call Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. After telling Mgr. Galvez of his symptoms, Mgr. Galvez told Plaintiff to "you're a fucking pussy, stop acting like a fucking pussy, and I'll beat your ass" |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 552. | Plaintiff admits that aside from this time off to heal from his dual ear infection, he did not need any accommodations to do his job. Campos Decl., ¶ 3, Ex. B, 84:23-85:3. | Disputed.<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| 553. | Plaintiff did not have any other medical condition that impacted his ability to do his job during his employment at Defendant. Campos Decl., ¶ 3, Ex. B, 82:9-16, 85:4-8. | Disputed.<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

593

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| 554. | Just a few months after his promotion to Construction Manager Plaintiff voluntarily requested to return to his position as a Foreman.  Campos Decl., ¶ 3, Ex. B, 66:11-69:25, Exh. 4 thereto. | Undisputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

594

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 555. | On June 17, 2019, Plaintiff emailed Ecklind "requesting to step back down to a foreman roll [sic]," because "timing and life is playing a big roll [sic] in this interest but I think it is the best decision for everyone at this time. I want our team to win and this is just what's best right now." Campos Decl., ¶ 3, Ex. B, 68:5-22, Exh. 4 thereto. | Disputed.

Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

595

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 556. | Even though Plaintiff voluntarily requested his demotion back down to a Foreman, Barrie fought for Plaintiff to retain his higher rate of pay because of Plaintiff's management experience. Campos Decl., ¶ 3, 5-6, Ex. B, 66:11-69:25, Exh. 4 thereto, Ex. D, 37:21-38:21, Ex. E, 65:3-20. | Disputed.

Plaintiff's salary upon returning to his position as foreman was determined by the prevailing market rate.

(Exh. S) |
| 557. | Accordingly, effective July 6, 2019, Plaintiff was returned to his position as a Foreman at a rate of $32.00 per hour, rather than the rate of $28.91 per hour he previously earned as a Foreman just a few | Undisputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

596

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | months earlier.   Campos Decl., ¶ 5, Ex. B, 68:5-22, Ex. E, 65:3-20; Cox Decl., ¶ 6. | |
| 558. | On September 25, 2019, one of Defendant's clients notified Defendant that they observed several issues at Plaintiff's job site.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 559. | Specifically, the client reported that they arrived on the site at 10:15 AM and the crew was not yet on site.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 560. | The client returned about 30 minutes later and went over the client's policies and requirements with the crew.   Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM.  Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 561. | The client left the crew with a warning. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety.<br><br>(Foshee Decl. ¶25) |
| 562. | Later that day, the client passed by the job site again and observed Plaintiff in a man lift without a hard hat, at which point the decision was made to shut down the site. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

598

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

599

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 563. | The client also reported that all of Plaintiff's crew were on site without hard hats on nor in the vicinity.    Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

600

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. L at: 29:22-30:13)<br><br>Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 564. | The client advised Defendant that all of its policies must be followed. Cox Decl., ¶ 9; Campos Decl., ¶ 6, Ex. E, 59:23-61:5, 80:1-9, Exh. 2 thereto. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

601

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| 565. | The client sent Defendant photographs clearly showing Plaintiff up in the man lift without a hard hat.     Cox Decl., ¶ 9; Campos Decl., ¶ 3, 6, Ex. B, 74:10-76:13, Exh. 5 thereto, Ex. E, 59:23-61:5, 80:1-9, 81:16-20, Exh.s 2, 5a, 5b thereto. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

602

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.

(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)

Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.

(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)

Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position.

(Exh. L at: 29:22-30:13)

Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night.

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)

Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

603

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| 566. | Following Plaintiff's safety violations, Ecklind and Barrie pushed for Plaintiff to be placed on a performance improvement plan, instead of terminating his employment.    Campos Decl., ¶ 5-6, Ex. D, 49:1-7, 49:13-15, Ex. E, 59:23-60:13, 62:25-64:5, 64:6-17. | Disputed.<br><br>Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.<br><br>(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

604

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 567. | However, after speaking with Windy Cox ("Cox") of Human Resources, it became clear that Plaintiff's safety violations as a Foreman warranted termination, given that the client caught Plaintiff violating policy multiple times in one day, ultimately had to shut down the site, and submitted photographic evidence of Plaintiff in the man lift without a hard hat. Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>Mastec HR has the authority to make recommendations regarding terminations. The authority to terminate an employee rests solely with the employee's managers. In this case of Plaintiff, this authority rested with Justin Barrie and Joseph Ecklind. Had Mr. Barrie and Mr. Ecklind felt that Plaintiff did not deserve to be terminated, it was entirely within their prerogative to administer less severe disciplinary measures.<br><br>(Exh. J at: 29:1-14, Exh. I at 20:12-21, 22:25-23:6)<br><br>This contradicts the claims to Plaintiff by Mgr. Ecklind and Mgr. Barrie that Plaintiff's termination had been decided by HR.<br><br>(Exh. J at: 29:1-14; Exh. G at 79:22-25; Exh. I at 48:20-25; Foshee Decl. ¶28)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

605

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 568. | Therefore, Cox recommended terminating Plaintiff's employment based upon his safety violations and the position that he held. Campos Decl., ¶ 5-6, Ex. D, 49:1-50:1, Ex. E, 67:20-69:13, 71:10-20. | Disputed.<br><br>Plaintiff's crew began working at 5:00 AM that morning and took a lunch from 10:00 AM to 10:44 AM. Upon returning from his lunch Plaintiff was approached by the client and was asked why the crew was absent. Plaintiff informed the client that the crew was taking their lunch. The client then asked plaintiff to check in with them in the future before taking lunches. The client did not provide any guidance or warnings as to safety or hardhat usage.<br><br>(Foshee Decl. ¶25)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. |
| | | (Exh. J at 53:16-25, 62:16-24) |
| | | Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

607

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 569. | After receiving Cox's recommendation, Barrie and Ecklind agreed to move forward with Plaintiff's termination.     Campos | Disputed. No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

608

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 69:8-13, 69:22-25. | the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Ecklind was observed by witnesses to regularly not enforce safety standards on jobsites despite that being a major role of his position. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

609

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. L at: 29:22-30:13) |
| | | Mgr. Barrie was known in the company to eschew safety equipment when working in dangerous situations. Multiple employees witnessed Mgr. Barrie climb a 40' pole in flip flops without a hard hat or safety harness at night. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3; Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | Foreman Hutchins brought a non-service dog onto a worksite--a major safety violation. Foreman Hutchins then left the site in a work truck to look for his dog, leaving no one to spot the employee on the lift-- another major safety violation which Mgr. Barrie claimed was a terminable offense. Foreman Hutchins was also known to have not worn safety gear on the site. Foreman Hutchins was not terminated by Mastec for these violations despite being documented and reported to HR. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| | | Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 570. | On September 30, 2019, Defendant terminated Plaintiff's employment for his failure to enforce and follow safety | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | protocol by not wearing a hard hat while in the man lift, and for allowing his team on the job site without hard hats. Campos Decl., ¶ 3-6, Ex. B, 72:18-74:3, 80:18-82:8, Exh. 6 thereto, Ex. C, 62:13-64:9, Ex. D, 60:20-62:2, Exh. 6 thereto, Ex. E, 76:22-77:19, Exh. 4 thereto. | Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

611

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum" |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

612

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. B, Exh. F at 19:9-20:4) |
| 571. | Plaintiff admits that he was terminated "because of [his] not having a hard hat on" and that Defendant's client, "took a picture of that, and, yeah, and that's – I was terminated because of it." Campos Decl., ¶ 3, Ex. B, 72:18-74:3. | Disputed.<br><br>Plaintiff spoke with Mgr. Barrie after his April 18, 2019 call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address Plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.<br><br>(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

613

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning.<br><br>(Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>HR representative Cox testified that corrective actions other than termination were available for the kind of offense Plaintiff committed. When Cox recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented. When Cox |

| | **MOVING PARTY'S UNDISPUTED FACTS** | **OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE** |
|---|---|---|
| | | recommended termination Mgr. Barrie and Mgr. agreed and did not insist that a PIP be implemented.<br><br>(Exh. J at 53:16-25, 62:16-24)<br><br>Mgr. Barrie told Tshibaka that Plaintiff was terminated for "marching to the beat of his own drum"<br><br>(Exh. B, Exh. F at 19:9-20:4) |
| 572. | In her role with Human Resources, Cox had access to Defendant's general demographic information. Cox Decl., ¶ 12; Campos Decl., ¶ 6, Ex. E, 121:18-25. | Undisputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |
| 573. | However, Cox did not specifically know the demographics of Plaintiff's location by memory. Cox Decl., ¶ 13; Campos Decl., ¶ 6, Ex. E, 123:3-8, 124:13-20. | Undisputed. |
| 574. | Moreover, Cox did not personally know Plaintiff at the time she recommended his termination. Cox Decl., ¶ 14. | Undisputed. |
| 575. | Cox's recommendation to terminate Plaintiff was based solely on the severity of his safety violations as a Foreman. Campos Decl., ¶ 5-6, Ex. D, 49:13-50:1, Ex. E, 67:20-68:3, 71:10-15; Cox Decl. ¶ 9-11. | Disputed.<br><br>No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

615

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27) |
| | | No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019. |
| | | (Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4) |
| | | Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done. |
| | | (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |
| | | Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM. |
| | | (Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |
| | | In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

616

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Foreman Hutchinson was not terminated. By Mastec for these violations.

(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)

Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".

(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)

When enforced, hard hat violations typically resulted in either a verbal warning or write up.

(Foshee Decl. ¶27 ) |
| 576. | Throughout Plaintiff's employment, Defendant maintained a "zero-tolerance policy for unlawful discrimination, harassment or retaliation and will not tolerate any such conduct."   Cox Decl., ¶ 15, Ex. A; Campos Decl., ¶ 6, Ex. E, 112:18-24, 120:3-121:17, Exh. 1 thereto. | Disputed.

Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.

(Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4)

In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations

(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br><br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>When enforced, hard hat violations typically resulted in either a verbal warning or write up. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

618

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Foshee Decl. ¶27 ) |
| 577. | Defendant's policy specifically provides that:<br><br>"MasTec provides equal employment opportunities to all qualified individuals without regard to race, color, … national origin, … disability or any other basis or characteristic protected by applicable law. MasTec is also committed to providing a work environment free of harassment on the basis of race, color, national origin … or disability or any other characteristic protected by applicable law. It is the responsibility of each and every employee to report unlawful harassment or discrimination when it occurs-whether they are a victim of, or a witness to, unlawful behavior. Employees will be protected from retaliation for opposing unlawful discriminatory practices when they report, in good faith, unlawful harassment or discrimination.<br><br>Reports of unlawful harassment, discrimination or retaliation can be made to your Human Resources contact or by contacting **Convercent** (formerly **MySafeWorkplace).** Human Resources will investigate all allegations of unlawful harassment and discrimination promptly, | Disputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7 Foshee Decl. ¶3, 4)<br><br>In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations<br><br>(Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26)<br><br>In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations.<br><br>(Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

619

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | impartially and in a confidential manner. If the Company determines that unlawful harassment, discrimination or retaliation has occurred, it will take prompt and effective remedial action." (Emphasis in original.) | individual who made the complaint. Mgr. Barrie said that an investigation should have been done. (Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) When enforced, hard hat violations typically resulted in either a verbal warning or write up. (Foshee Decl. ¶27 ) |
| 578. | Throughout Plaintiff's employment, Defendant also maintained a Reasonable Accommodation Policy.   Cox Decl., ¶ 16, Ex. B. | Undisputed as to the existence of the written policy. Disputed as to its enforcement. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) Despite calling out sick earlier that morning, Plaintiff received an email from Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019. |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15) |
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital— where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much. |
| | | (Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) |
| 579. | Defendant's policy states that: "To comply with applicable laws ensuring equal employment opportunities to individuals with disabilities (even if in remission or ameliorated), MasTec will make reasonable accommodations for the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee unless undue hardship and/or a direct threat to the health and/or safety of the individual or others would result. Any | Undisputed as to the existence of the written policy. Disputed as to its enforcement. Plaintiff began experiencing flu-like symptoms around 5:00 AM on April 18, 2019 and sent a text message to a group chat with Luis Hernandez, Miguel Galvez, and Joe Ecklind around 5:00 A.M. to inform Mastec that he would be unable to come in that day as a result of the ear infection. (Exh. G at 48:15-25, 53:23-54:7; Foshee Decl. ¶ 13) Despite calling out sick earlier that morning, Plaintiff received an email from |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

621

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | applicant or employee who requires an accommodation in order to perform the essential functions of the job should contact your Human Resources Contact and request such an accommodation in writing." | Mgr. Galvez requesting that he sign a no call no show write up around 11:30 AM on April 18, 2019.<br><br>(Exh. P; Exh G. at 44:17-45:20, 56:12-57:8; Foshee Decl. ¶15)<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Mgr. Galvez was aware that Plaintiff was ill and needed to visit the ER because he heard Mgr. Barrie say as much.<br><br>(Exh. H at 38: 3-11, 41:17-42:5, 51:1-22) Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶13, 16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

622

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | them up if they did not settle the issue themselves. |
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| 580. | At all relevant times, Defendant maintained procedures for complaints of discrimination, mistreatment, and substance abuse. Cox Decl., ¶ 17, Ex. C. | Disputed. |
| | | Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass".. |
| | | (Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13) |
| | | Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him. |
| | | (Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

623

| | | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| | | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |
| | | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16) |
| | | | Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie. |
| | | | (Exh. G at 50:11-21; Foshee Decl. ¶16 and 18) |
| | | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time. |
| | | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

624

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 581. | Employees were advised to report suspected harassment or discrimination to their Human Resources Contact, or by using the online portal Convercent. Cox Decl., ¶ 17, Ex. C. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 )<br><br>Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

625

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)

Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.

(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 582. | As the handbook provides, "Convercent . . . is a 24-hour incident reporting hotline. Convercent allows you to make reports on a wide variety of topics, including, but not limited to, reports of accounting irregularities, fraud, theft, unsafe working conditions, harassment, discrimination, mistreatment . . . safety violations, substance abuse or threats of violence." Cox Decl., ¶ 17, Ex. C. | Undisputed. |
| 583. | Defendant's Open Door Policy instructed employees to speak with their immediate supervisor to address work-related issues. Cox Decl., ¶ 18, Ex. D. | Disputed.<br><br>Plaintiff struggled to speak, stand, and walk on the morning of April 18, 2019. He also spent much of the morning away from his cell phone while at the hospital—where he was diagnosed with a dual ear infection. Despite these obstacles, he called Mgr. Galvez to remind him that he notified Mgr. Galvez of his illness earlier that morning. Mgr. Galvez told Plaintiff "you're a fucking pussy, stop acting like a fucking pussy", and "I'll beat your ass"..<br><br>(Exh. G at 49:1-20, 56:12-57:8; Exh. H at 38:12-39:22, Exh. F at 21:4-22:11, 22:15-23:7, Exh. I at 42:2-17; Foshee Decl. ¶13)<br><br>Plaintiff spoke with Mgr. Barrie after his call with Mgr. Galvez. Plaintiff informed Mgr. Barrie that Mgr. Galvez had made several harassing and threatening comments to him.<br><br>(Exh. G at 49:21-50:2, Exh. I at 43:2-17, 44:21-35: 3, 47: 3-24, Foshee Decl. ¶16 ) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

627

| | | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| | | | Defendant failed to investigate or reprimand Mgr. Galvez. Rather than address plaintiff's complaint, Mgr. Barrie told Plaintiff that he would write both of them up if they did not settle the issue themselves.

(Exh. I at 44:21-45: 3, 47:17-48, Exh. J at 22:20-25; Foshee decl. ¶16)

Mgr. Galvez later told Plaintiff that he was angry on the phone call because "I get like that when you guys are acting like fucking pussies". Plaintiff did not believe that his complaint had been resolved but did not persist for fear that he would be written up by Mgr. Barrie.

(Exh. G at 50:11-21; Foshee Decl. ¶16 and 18)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in early June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 584. | However, if an employee felt uncomfortable speaking directly with their supervisor, they could meet directly with their department's manager, Human Resources Contact, general manager, or other appropriate management personnel. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 585. | Employees could also report issues through Defendant's hotline, Convercent. Cox Decl., ¶ 18, Ex. D. | Undisputed. |
| 586. | During Plaintiff's employment, Defendant strictly prohibited the use of drugs and alcohol in the workplace.<br>Cox Decl., ¶ 19, Ex. E; Campos Decl., ¶ 4-5, Ex. C, 35:10-36:2, Ex. D, 42:5-8. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

629

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Other Mastec employees observed frequent and open drug abuse while at the Fresno office. |
| | | (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19) |
| | | In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management |
| | | (Foshee Decl. ¶ 11) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22)<br><br>HR representative Cox testified that drug offenses could be immediately escalated beyond Mastec's progressive approach to discipline.<br><br>(Exh. J at 47:10-48:10, 85:5-16) |
| 587. | Employees were advised to report any substance abuse through Convercent. Cox Decl., ¶ 17, Ex. C; Campos Decl., ¶ 4, Ex. C, 35:21-36:2. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

631

| | | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| | | | Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | | (Foshee Decl. ¶22) |
| | 588. | Pursuant to Defendant's Open Door Policy, employees could also report substance abuse issues to their appropriate managers or their Human Resources Contact.   Cox Decl., ¶ 18, Ex. D. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18- |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | 67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)

Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.

(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

In March 2019, Mgr. Ecklind asked Plaintiff to conceal evidence of alcohol consumption on a job site from upper management

(Foshee Decl. ¶ 11)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

633

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 589. | During his employment, Plaintiff never made, or threatened to make, any formal complaint with Defendant or any other entity regarding alleged drug use.     Cox Decl., ¶ 20; Campos Decl., ¶ 3-6, Ex. B, 40:4-8, 65:13-19, Ex. C, 35:10-12, 36:18-22, Ex. D, 38:22-39:11, 63:20-64:9, Ex. E, 85:12-21, 86:10-17, 87:6-19, 90:17-24. | Disputed.<br><br>Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Other Mastec employees observed frequent and open drug abuse while at the Fresno office.<br><br>(Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder.<br><br>(Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)<br><br>On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

634

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | because of Mastec's failure to address his concerns.<br><br>(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)<br><br>In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.<br><br>(Foshee Decl. ¶22) |
| 590. | The only "complaints" Plaintiff alleges to have made regarding the alleged drug use were to his co-workers, simply stating that the alleged drug users did not do anything and were making his job difficult. Cox Decl., ¶ 20; Campos Decl., ¶ 3, Ex. B, 40:4-8, 47:3-48:3, 65:13-24. | Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.<br><br>(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11)<br><br>Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

635

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20)

On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns.

(Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21)

In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office.

(Foshee Decl. ¶22) |
| 591. | Barrie testified that Plaintiff never expressed to him any concern regarding drinking or drug use at work, or that he wanted to step down from his position as a Construction Manager because of the alleged drinking and drug use.

Campos Decl., ¶ 5, Ex. D, 38:22-39:8, 63:20-64:9. | Dispsuted.

Plaintiff observed that managers Miguel Galvez, Joe Ecklind, and Justin Barrie were frequently unavailable due to their drug use. Plaintiff also found that they failed to adequately train him in his new job duties, and were generally poor communicators as a result of their drug use as well.

(Exh. G at 41:25-42:16, 42:20-43:10, 46:2-47:2, 57:24-58:18, 59:2-60:9, 61:8-11, 63:13-64:11, 64:21-65:12 61:18-62:20, 63:13-64:11, 64:21-65:12,66:18-67:19; Exh. I at 35:20-36:6; Exh. H at 54:11-21;Exh. F at 20:23-21:4; Exh. N; Foshee Decl. ¶8,9,10,11) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Other Mastec employees observed frequent and open drug abuse while at the Fresno office. |
| | | (Exh. F at 18:19-19:5, 28:22-29:14; Exh. L at 31:20-32, 32:16-33:9, 33:24-34:17, 40:2-41:14, 50:7-19) |
| | | Plaintiff complained about Mastec's toxic work environment and related illicit behavior to Justin Barrie in June 2019. Plaintiff also began seeing Dr. Melissa Tihin for job related stress around this time and was diagnosed with major depressive disorder and generalized anxiety disorder. |
| | | (Exh B; Exh. Y; Exh. G 47: 3-48: 3; Exh. F at 20:23-21:4, 23:14-24; Foshee Decl. ¶19, 20) |
| | | On June 17, 2019 Plaintiff requested to return to his role as Foreman because of these intolerable working conditions and because of Mastec's failure to address his concerns. |
| | | (Exh. G at 57:24-58:18, 66:18-67:19, Exh. I at 35:20-36:6, Exh. H at 54:11-21; Foshee Decl. ¶ 21) |
| | | In or around July 2019, while at a meeting in Sacramento, Mgr. Barrie asked Plaintiff "why he really stepped down". Plaintiff told Mgr. Barrie he could not handle the erratic and inappropriate drug-influenced behavior of those in the office. |
| | | (Foshee Decl. ¶22) |
| 592. | Galvez also testified that Plaintiff never reported any alleged drinking or drug use | Undisputed. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

637

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | to him.   Campos Decl., ¶ 4, Ex. C, 35:10-12, 36:18-22. | |
| 593. | During his employment, Plaintiff never complained of any unfair treatment or discrimination based upon his race.   Cox Decl., ¶ 21. | Disputed.<br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4)<br><br>Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something".<br>(Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5)<br><br>Plaintiff took a single drug test during his employment with Mastec which came back negative. Plaintiff was never suspected to have been using drugs.<br><br>(Exh. J 94:12-95:96:8, 102:25-103:5; Exh. L at 5:16-56:6, 56:21-24 Foshee Decl. ¶ 2)<br><br>After Plaintiff was terminated a potential employer called Mastec and was told that Plaintiff had failed a drug test.<br>(Exh. M at 21:7-19, 23:4-11; Foshee Decl. ¶ 32) |
| 594. | Plaintiff alleges that he did not receive support from his managers, however none of Plaintiff's allegations are tied to his race. Campos Decl., ¶ 3, Ex. B, 40:4-8, 41:17-43:10, 44:17-45:20, 46:5-48:3, 65:13-24. | Disputed.<br><br>Plaintiff was one of five black employees in the Fresno office and the only black employee in upper management during his time as a CM.<br><br>(Exh. B; Exh. J at 123:23-124:7; Foshee Decl. ¶3, 4) |

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | In December 2018 Mgr. Barrie, a non-black employee, was observed committing multiple safety violations including a hard hat violation. Mgr. Barrie was not terminated by Mastec for these violations. |
| | | (Exh. C; Exh. D; Exh. E at 21:16- 22:2; 22:13-17; 29:20-30: 3;Exh. L at 57:19-59:19; 60:2-9; Foshee Decl. ¶26) |
| | | In August 2019 Foreman Hutchinson, a non-black employee, was filmed committing multiple safety violations. Foreman Hutchinson was not terminated. By Mastec for these violations. |
| | | (Exh. J at: 143:22-145:17, 146:4-12; Exh. L at: 61:9-23, 64:11-65:1, 65:12-66:1, 66:16-67: 3; Exh. I at: 57:20-68:19, 69: 3-20, 70:1-8; Foshee Decl. ¶ 24) |
| | | Mgr. Ecklind and Mgr. Galvez displayed open favoritism towards white and Hispanic employees and subjected black employees to heightened scrutiny. On or around January 30, 2019 I witnessed Mgr. Barrie say "I never say nigger unless I'm fighting someone or something". (Exh. B; Exh. C; Exh. D; Foshee Decl. ¶5) |
| | | No Mastec employees were wearing their hard hats at the Fresno job site on September 25, 2019 Plaintiff understood the requirement to wear such safety equipment was not enforced by management based on his five years of experience at Mastec. Hardhat safety violations were selectively issued on a pretextual basis and usually resulted in a warning. |

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

639

| | MOVING PARTY'S UNDISPUTED FACTS | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (Exh. N; Exh. T; Foshee Decl. ¶25, 26, 27)<br><br>No other Mastec employees, including the site construction manager, were terminated for the crew's failure to wear hard hats at the Fresno job site on September 25, 2019.<br><br>(Exh. I at 3:11-13, 53:7-54:14, 55:25-56:6; Exh. J at 80:21-82:4)<br><br>Mastec did not investigate the incident by speaking to crew members or the individual who made the complaint. Mgr. Barrie said that an investigation should have been done.<br><br>(Exh. I at 57:16-58:1; Exh. J at 80:21-82:4) |

Dated: September 27, 2021

Lyon Law PC

_____
Geoffrey C. Lyon


Attorney for Plaintiff,
GREGG LEE FOSHEE JR.

PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

640

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is: Lyon Law; 3605 Long Beach Blvd., Suite 311, Long Beach, CA 90807. On the date of execution of this proof of service I caused to be served on interested parties in this action the attached:

**PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION**

by emailing and/or placing true and correct copies thereof in sealed envelope(s) addressed as follows:

| | |
|---|---|
| Ryan L. Eddings<br>Julie R. Campos<br>LITTLER MENDELSON, P.C.<br>5200 North Palm Avenue, Suite 302<br>Fresno, CA 93704 | Attorneys for DEFENDANT: MASTEC<br>NETWORK SOLUTIONS, INC.<br>Tel: 559-244-7500<br>Fax: 559-244-7525<br>reddings@littler.com<br>jcampos@littler.com |

**XX   BY ESERVICE**

     DIRECTLY: I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

     **OFFICE PROCEDURES:** I am readily familiar with my firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

     **STATE:** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

  **XX**   FEDERAL**:** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed at Los Angeles, California on September 27, 2021

_____
Ryan Abele