1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

GREGG LEE FOSHEE JR.,

      Plaintiff,

v.

MASTEC NETWORK SOLUTIONS, INC.,
and DOES 1 to 10,

      Defendants.

CASE NO.  1:20-cv-00890-AWI-SAB

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

(Doc. No. 18)

## <u>INTRODUCTION</u>

Plaintiff Gregg Lee Foshee, Jr. ("Foshee") brings ten causes of action for disability discrimination, racial discrimination and other employment-related wrongdoing against Defendant MasTec Network Solutions, Inc. ("MasTec") under the California Labor Code, the California Government Code and common law. Doc. No. 1 at 10. MasTec has brought a motion seeking summary judgment on all ten causes of action. Doc. No. 18. The motion has been fully briefed and deemed suitable for decision without oral argument pursuant to Local Rule 230(g). For the reasons set forth below, the motion will be granted in its entirety.

//

**BACKGROUND**[1]

MasTec is a telecommunications company that provides turnkey solutions for telecom operators and engages in other telecommunications projects, including work that involves telecommunications towers. Doc. No. 21 at 2:4-8.[2] Foshee is an African American male who worked for MasTec in Northern California during the period relevant to this lawsuit. Id. at 21:8-14. Foshee's organizational superiors during the period relevant to this lawsuit included Miguel Galvez, a project manager; Justin Barrie, an operations manager; and Joseph Ecklind, an operations manager. Doc. No. 23 at 40:2-25, 190.

In March 2019, Foshee, who had previously been a foreman, was promoted to construction manager. Doc. No. 30 ¶ 8.

On April 18, 2019, Foshee did not appear for his scheduled shift. Doc. No. 23 at 47:4-25. He returned to work on April 19, 2019 and gave Galvez a note from an urgent care clinic in Fresno stating: "Gregg was seen in the office on April 18, 2019 for medical reasons, and may return to work on 04/20/2019 with no limitations." Id. at 50:20-51:15; Doc. No. 29 at 218. Foshee testified that he was diagnosed at the urgent care clinic with a dual ear infection. Doc. No. 23 at 49:3-10.

On June 17, 2019, Foshee stepped down as construction manager and returned to his position as foreman. Doc. No. 23 at 56:11-59:10. In doing so, he sent an email to Ecklind stating: "As discussed, I am requesting to step back down to a foreman roll. Timing and life is playing a big rol[e] in this interest but I think it is the best decision for everyone at this time. I want our team to win and this is just what's best right now." Doc. No. 29 at 220.

On September 25, 2019, Foshee was working in his capacity as foreman on a job for the

---

[1] The parties agreed on only three facts, see Doc. No. 21, and collectively submitted separate fact statements exceeding 740 pages and comprising nearly 600 largely immaterial putative facts. Doc. Nos. 20, 28. The facts analyzed in this motion are based on the portions of the record identified by the parties in their briefs. See Forsberg v. Pac. Northwest Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir. 1988) ("The district judge is not required to comb the record to find some reason to deny a motion for summary judgment."); see also Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003) ("A party opposing summary judgment must direct our attention to specific, triable facts."); Romero v. Nevada Dep't of Corr., 2013 WL 6206705, *11 n.15 (D. Nev. Nov. 27, 2013) ("Though she submitted 18 exhibits…Plaintiff only references 9…in her brief. The Court does not consider the unreferenced exhibits...").

[2] Unless otherwise indicated, page citations are to the page numbers in the CM/ECF stamps at the top of each page of documents on the electronic docket.

American Tower Corporation. Doc. No. 23 at 60:18-63:20. A client representative visited the job site in the morning and observed various forms of noncompliance with policy and other requirements. Id. at 191. He reviewed the noncompliance issues with the crew and gave them a warning. Id. He returned to the job site later in the day and saw Foshee in a manlift without a hardhat, at which point the decision was made to shut down the site. Id. In addition, he "observed all crew members without hard hats on or in the vicinity." Id. The client representative sent MasTec an email setting forth what had happened, as well as photographs of Foshee in the manlift without a hardhat. Id. at 191-194.

Later that day, Ecklind sent Barrie and MasTec's human resources manager for the West Coast, Windy Cox, an email stating that he wanted to put Foshee "on a 60 day [Performance Improvement Plan] for failing to f[o]llow company safety policies." Doc. No. 29 at 228; Doc. No. 23 at 127:6-13, 145:23-146:19. Cox informed Ecklind and Barrie that the safety violations were grounds for termination, Doc. No. 23 at 148:25-155:20, and Ecklind terminated Foshee effective September 30, 2019. Id. at 192. The stated reasons for termination were as follows: "As a competent Foreman you have failed to enforce and follow safety protocol by not utilizing proper PPE onsite (Hard Hat, and safety boots) and allowing your Tower team onsite without proper PPE (Hard Hat)." Doc. No. 23 at 192.

Foshee does not dispute the September 25, 2019 safety violations, Doc. No. 23 at 60:18-64:13, but contends that he was terminated because of his race; because of disability resulting from his dual ear infection; and because he called attention to unlawful alcohol and drug use at MasTec. He also contends that MasTec failed to provide reasonable accommodations for and otherwise engaged in wrongdoing with respect to his ear infection disability. Based on these allegations, Foshee brings claims for: (i) whistleblower retaliation in violation of California Labor Code §§ 1102.5 and 1102.6; (ii) medical leave discrimination in violation of California Government Code § 12945.2; (iii) medical leave retaliation in violation of California Government Code § 12945.2; (iv) disability discrimination in violation of California Government Code § 12940(a); (v) retaliation for requesting and using accommodations for disabilities in violation of California Government Code § 12940(m); (vi) failure to engage in a timely, good faith interactive

3

1  process in violation of California Government Code § 12940(n); (vii) failure to reasonably

2  accommodate his disability in violation of California Government Code § 12940(m); (viii)

3  discrimination on the basis of race in violation of California Government Code § 12940(a); (ix)

4  retaliation for opposing violations of California's Fair Employment and Housing Act ("FEHA") in

5  violation of California Government Code § 12940(h); and (x) wrongful termination in violation of

6  public policy. Doc. No. 1 at 16:1-23:12.

7       MasTec seeks summary judgment on each of Foshee's claims arguing, in essence, that

8  Foshee was not a whistleblower; his dual ear infection did not rise to the level of disability; and

9  his termination was based solely on the September 25, 2019 safety violations, without

10 consideration of race, disability or other such factors. See Doc. No. 19.

11                                **LEGAL FRAMEWORK**

12      Pursuant to Rule 56 of the Federal Rules of Civil Procedure,[3] summary judgment is

13 appropriate when it is demonstrated that there exists no genuine issue as to any material fact and

14 that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); see Fortyune

15 v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1079–80 (9th Cir. 2004). The moving party bears the

16 burden of establishing the absence of a genuine issue of material fact, generally by "citing to

17 particular parts of materials in the record" such as depositions, interrogatory answers, declarations,

18 and documents. Fed.R.Civ.P. 56(c); see also, Cline v. Indus. Maint. Eng'g & Contracting Co., 200

19 F.3d 1223, 1229 (9th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986)). If

20 the moving party does not meet this burden, "[s]ummary judgment may be resisted and must be

21 denied on no other grounds than that the movant has failed to meet its burden of demonstrating the

22 absence of triable issues." Henry v. Gill Indus., 983 F.2d 943, 950 (9th Cir. 1993).

23      If the moving party does meet this burden, the burden then shifts to the opposing party to

24 show a genuine issue of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

25 U.S. 574, 586-87 (1986); see also, Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, 210

26 F.3d 1099, 1103 (9th Cir. 2000). "Only disputes over facts that might affect the outcome of the

27

28
_____

[3] Unless otherwise indicated, "Rule," as used herein, refers to the Federal Rules of Civil Procedure.

suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In response to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; see Liberty Lobby, 477 U.S. at 247-48 ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment" (emphasis original)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Matsushita, 475 U.S. at 587; Liberty Lobby, 477 U.S. at 248 (a "dispute about a material fact is 'genuine' " where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

"[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 248 (1986) (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288–89 (1968)) (internal quotation marks omitted). If the nonmoving party does not produce enough evidence to create a genuine issue of material fact after the burden has shifted, the moving party is entitled to summary judgment. Fed.R.Civ.P. 56(c); Fritz, 210 F.3d at 1103; Celotex, 477 U.S. at 322.

## DISCUSSION

The Court will address each of Foshee's causes of action in turn.

## I.   Whistleblower Retaliation in Violation of California Labor Code §§ 1102.5 & 1102.6 (First Cause of Action)

Foshee alleges in the First Cause of Action that MasTec took "adverse employment actions" against him in retaliation for "protected activities" in violation of California Labor Code §§ 1102.5 and 1102.6. Doc. No. 1 at 16:13-16.

### A.   Applicable Law

Section 1102.5 of the California Labor Code, which "provides whistleblower protections to employees who disclose wrongdoing to authorities," Lawson v. PPG Architectural Finishes, Inc., __ P.3d __, 2022 WL 244731, at *2 (Cal. Jan. 27, 2022), states as follows:

1
2
3
4
5
6

> An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

7   Cal. Lab. Code § 1102.5.

8        Section 1102.6, for its part, "describes the applicable substantive standards and burdens of

9   proof for both parties in a section 1102.5 retaliation case." Lawson, 2022 WL 244731 at *4.  First,

10  "it must be 'demonstrated by a preponderance of the evidence' that the employee's protected

11  whistleblowing was a 'contributing factor' to an adverse employment action." Id. (quoting §

12  1102.6). "Then, once the employee has made that necessary threshold showing, the employer

13  bears 'the burden of proof to demonstrate by clear and convincing evidence' that the alleged

14  adverse employment action would have occurred 'for legitimate, independent reasons' even if the

15  employee had not engaged in protected whistleblowing activities." Id. (quoting § 1102.6).

16        B.    Discussion

17        Foshee contends that he engaged in protected whistleblower activity in that he made

18  complaints "to his employer, including [] Barrie, regarding safety violations, illegal drug use and

19  alcohol use, and [MasTec's] failure to correct unsafe conditions." Doc. No. 27 at 11:12-13.

20  Foshee has set forth no evidence, however, showing that he made complaints regarding safety

21  violations or alcohol prior to his termination, and Foshee himself testified that he "didn't make

22  any formal complaints" regarding "drug use in the workplace." Doc. No. 23 at 55:13-19.

23  Moreover, Barrie and Galvez testified (as persons in Foshee's chain of command) that Foshee

24  never complained to them about drugs or alcohol, id. at 90:18-22, 118:22-119:11, 130:20-131:9,

25  and Cox testified (as the human resources manager with responsibility for Foshee's work location)

26  that human resources had not received complaints from Foshee through its hotline or otherwise.

27  Id. at 160:12-21, 162:6-19, 163:17-24. Foshee testified that he complained to Cameron Hughes,

28  Brian Montgomery and James Lyday that drug use in the workplace was "making [his] job

6

difficult." Id. at 23:13-24. He also testified, however, that Hughes, Montgomery and Lyday were mere "co-workers," id. at 23:16-17, and the Court sees no evidence that any of them had authority over Foshee or authority to take action regarding drug use on behalf of MasTec. See Cal. Labor Code § 1102.5 (providing whistleblower protection in connection with disclosure to "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance").

Foshee also contends that he "took the drastic action of stepping down from his Construction Manager position and resuming his position as Foreman, in order to reduce his interaction with the drug-using managers" and that he "informed [] Barrie that he was stepping down because he would not tolerate the erratic and inappropriate drug-influenced behavior of those in the office." Doc. No. 27 at 7:18-19. At deposition, however, Foshee testified that he resigned because he "wasn't learning anything" and that he merely told Barrie that returning to the foreman position was "best" for him. Doc. No. 23 at 56:11-57:19. He also sent an email to Ecklind stating that stepping down was the "best decision" in light of "[t]iming and life," with no reference to safety, drugs or alcohol. Doc. No. 29 at 220.

Foshee states in a declaration filed in opposition to the instant motion that he told Barrie that he stepped down from his construction manager position because "rampant drug use" in the office placed "excessive responsibility" on him. Doc. No. 29 ¶ 22. The court agrees with MasTec, however, that this aspect of the declaration does not raise a genuine question of material fact because it is self-serving and directly contradicts Foshee's deposition testimony regarding his statements to Barrie about his resignation, as well as his deposition testimony that he only complained to "co-workers"—namely Hughes, Montgomery and Lyday—about drug use. See Nelson v. City of Davis, 571 F.3d 924, 928 (9th Cir. 2009); Martinez v. Marin Sanitary Service, 349 F. Supp. 2d 1234, 1242 (N.D. Cal. 2004).

Finally, the Court sees nothing on the record indicating that MasTec believed Foshee made—or might make—disclosures of the sort contemplated by § 1102.5. Foshee has therefore failed to show that he engaged in "protected whistleblowing"—let alone show that it was a "contributing factor" to his termination or other adverse employment action—and MasTec is

entitled to summary judgment on the First Cause of Action.

**II.**      **Medical Leave Interference and Medical Leave Retaliation in Violation of California**
            **Government Code § 12945.2 (Second and Third Causes of Action)**

Foshee alleges that MasTec violated his rights under the California Family Rights Act ("CFRA"), California Government Code § 12945.2, by discouraging him from taking and denying him "medical leave from work." Doc. No. 1 at 17:10-13. Further, he alleges that MasTec took adverse employment actions against him in retaliation for exercising (and attempting to exercise) "his rights to medical leave" and in retaliation for his "opposition to [MasTec's] interference with" his rights to medical leave. Id. at 18:3-6.

A.      Applicable Law

CFRA (which is contained in FEHA, California Government Code § 12900, et seq.) allows for eligible employees to take up to twelve weeks of unpaid leave in a twelve-month period for "family care and medical leave." Cal. Gov. Code § 12945.2(a)-(b); see also Rogers v. Cty. of Los Angeles, 198 Cal. App. 4th 480, 487 (2011).

"Violations of the CFRA generally fall into two types of claims: (1) 'interference' claims in which an employee alleges that an employer denied or interfered with her substantive rights to protected medical leave, and (2) 'retaliation' claims in which an employee alleges that she suffered an adverse employment action for exercising her right to CFRA leave." Velasquez v. Constellation Brands US Operations, Inc., 2019 WL 2642510, at *17 (E.D. Cal. June 27, 2019) (quoting Rogers, 198 Cal. App. 4th at 487–88) (some internal quotation marks omitted).

To make out a prima facie case for interference under CFRA, a plaintiff must show: (1) he was eligible for CFRA's protections, (2) his employer was covered by CFRA, (3) he was entitled to leave under CFRA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him CFRA benefits to which he was entitled. Duran v. Stock Bldg. Supply W., LLC, 2015 WL 13307031, at *10 (C.D. Cal. Mar. 9, 2015), aff'd, 672 F. App'x 777 (9th Cir. 2017) (extrapolating the elements of an interference claim under CFRA from the elements of an interference claim under the federal Family and Medical Leave Act ("FMLA"), as set forth by the Ninth Circuit in *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014)). To

make out a prima facie "retaliation" claim under CFRA, a plaintiff must show: "(1) the defendant was a covered employer; (2) the plaintiff was eligible for CFRA leave; (3) the plaintiff exercised his or her right to take a qualifying leave; and (4) the plaintiff suffered an adverse employment action *because he or she exercised the right to take CFRA leave*." Rogers, 198 Cal. App. 4th at 491 (emphasis original).[4] Thus, to make out either type of claim, Foshee must show that he was entitled to leave under CFRA. See Duran, 2015 WL 13307031 at *10 (an "interference" claim alleges that an employer "denied or interfered with the employee's right to protected leave" and a "retaliation" claim alleges "an adverse employment action as a result of exercising the right to take a protected leave of absence").

CFRA provides leave to care for a child, to care for a parent or "because of an employee's own serious health condition that makes the employee unable to perform the functions of the position of that employee …." Cal. Gov. Code § 12945.2(b)(4)(A)-(C); see Avila v. Cont'l Airlines, Inc., 165 Cal. App. 4th 1237, 1254 (2008), as modified on denial of reh'g (Aug. 28, 2008) (citation omitted) ("for an employee to be entitled to a medical leave for her own serious health condition, the condition must cause her to be unable to work at all or unable to perform one or more of the essential functions of her position"). "Serious health condition" is defined in CFRA as "an illness, injury, impairment, or physical or mental condition that involves either of the following: (A) Inpatient care in a hospital, hospice, or residential health care facility. (B) Continuing treatment or continuing supervision by a health care provider." Cal. Gov. Code § 12945.2(c)(8)(A)-(B).

B.    Discussion

Foshee testified that he was diagnosed with a dual ear infection at an urgent care facility, given antibiotics and sent home on April 18, 2019. Doc. No. 23 at 50:12-19. He received a note from the urgent care facility stating that he could return to work on April 20, 2019 "with no

---

[4] CFRA also bars adverse employment action for "[a]n individual's giving information or testimony as to his or her own family care and medical leave, or another person's family care and medical leave, in any inquiry or proceeding related to rights guaranteed under [CFRA]." Cal. Gov. Code § 12945.2(l)(2). There is no allegation or other indication, however, that Foshee participated in an "inquiry or proceeding" relating to CFRA rights prior to his termination, so this provision is irrelevant to analysis of Foshee's CFRA claims.

1  limitations" and in fact returned to work on April 19, 2019 of his own accord. Id. at 50:20-51:8.

2       Foshee argues that his "medical condition was not a simple ear infection" because he

3  "struggled to speak, stand and walk on the morning of April 18, 2019" and "was perceived to have

4  disabilities including bilateral otitis media, bilateral otalgia, fatigue, and related conditions and

5  symptoms requiring disability leave and medical evaluation and treatment, sometimes during work

6  hours." Doc. No. 27 at 13:7-12. Foshee sets forth no evidence, however, showing that he

7  continued to receive care from a health care provider for his ear infection after April 18, 2019, and

8  it is undisputed that the care Foshee received on April 18, 2019 was administered through an

9  urgent care facility on an outpatient basis. Foshee, therefore, cannot show that his ear infection

10  constituted a "serious health condition" for purposes for a CFRA claim, regardless of whatever

11  symptoms he experienced on the morning of April 18, 2019. See King v. Permanente Med. Grp.,

12  Inc., 2013 WL 5305907, at *5 (E.D. Cal. Sept. 19, 2013) (dismissing CFRA claim for flu and

13  severe dehydration where plaintiff failed to allege facts showing inpatient care or continuing

14  treatment).

15       Further, Foshee testified that he did not have any other conditions that affected his ability

16  to do his job at MasTec. Doc. No. 23 at 67:9-16 ("Q: I wanted to ask you, when you turned in the

17  doctor's note way back in April and it excused you for the two or three days, whatever it was, did

18  you have any other symptoms, conditions, anything that prevented you from doing your job after

19  that point? A: In those following days? Q: Yeah, or anytime thereafter. A. No, I – no, no."); 69:4-8

20  (similar). The Court therefore finds that Foshee cannot make out a prima facie claim for either

21  "interference" or "retaliation" under CFRA, and MasTec is entitled to summary judgment in its

22  favor on the Second Cause of Action and the Third Cause of Action.

23  **III.   Disability Discrimination in Violation of California Government Code § 12940(a)**

24         **(Fourth Cause of Action)**

25       Foshee alleges that MasTec took "adverse employment action" against him because he

26  suffered from disabilities requiring medical leave, evaluation and treatment in violation of §

27  12940(a) of the California Government Code. Doc. No. 1 at 18:21-27.

28       A.  Applicable Law

10

1   FEHA provides that it is unlawful "[f]or an employer, because of the ... physical disability
2   ... of any person, to refuse to hire or employ the person or ... discharge the person from
3   employment ... or to discriminate against the person in compensation or in terms, conditions or
4   privileges of employment." Cal. Gov. Code, § 12940(a). "A prima facie case for discrimination on
5   grounds of physical disability under the FEHA requires plaintiff to show: (1) he suffers from a
6   disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse
7   employment action because of his disability." Faust v. California Portland Cement Co., 150 Cal.
8   App. 4th 864, 886 (2007); see also Wills v. Superior Court, 195 Cal. App. 4th 143, 159–60 (2011)
9   (setting forth elements of a FEHA disability discrimination claim). To win summary judgment on
10  a FEHA discrimination claim, a defendant employer "is required to show either that (1) plaintiff
11  could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate,
12  nondiscriminatory reason for [the adverse employment action].' " Dep't of Fair Empl. & Hous. v.
13  Lucent Techs., Inc., 642 F.3d 728, 745 (9th Cir. 2011)).

14      "Not every illness qualifies as a disability." Featherstone v. S. California Permanente Med.
15  Grp., 10 Cal. App. 5th 1150, 1167 (2017) (quoted source and internal punctuation omitted).
16  "Disability does not include … (B) conditions that are mild, which do not limit a major life
17  activity, as determined on a case-by-case basis," including, for example, conditions with "little or
18  no residual effects, such as the common cold; seasonal or common influenza; minor cuts, sprains,
19  muscle aches, soreness, bruises, or abrasions; non-migraine headaches, and minor and non-chronic
20  gastrointestinal disorders." Cal. Code Regs. tit. 2, § 11065(d)(9)(B); see also Cenis v. Winco
21  Holdings, Inc., 787 F. App'x 947, 948 (9th Cir. 2019) (referring to Cal. Code Regs. tit. 2, §
22  11065(d)(9)(B) in determining whether condition at issue constituted a FEHA disability);
23  Colmenares v. Braemar Country Club, Inc., 29 Cal. 4th 1019, 1029 (2003) (noting that California
24  courts give "substantial weight" to regulations construing FEHA issued by the agency responsible
25  for administering the statute).

26      B.  Discussion

27      Foshee testified that he woke up at 4:00 am or 5:00 am on April 18, 2019, "felt really bad"
28  and sent an email to Barrie, Galvez and "some of the guys that were in the Fresno office, letting

them know that [he] wasn't going to make it in that day." Doc. No. 23 at 47:15-25. He went back to sleep and woke up to a message from Galvez stating that it was unacceptable to provide just a couple of hours' notice that he was going to miss his shift. Id. Foshee informed Galvez that he was "sick," "sweating from head to toe" and unable to "get off the floor," whereupon Galvez called him a "pussy" and threatened to "beat [his] ass." Id. at 48:5-20.

Shortly thereafter, Foshee went to urgent care, where, according to Foshee's testimony, he was diagnosed with a dual ear infection, given antibiotics and "sent [] home." Doc. No. 23 at 49:3-10. He returned to work the next day, April 19, 2019. Id. Galvez was there when he arrived and apologized, in some form, for his comments the preceding day. Id. at 49:11-21. Foshee gave Galvez a copy of a note provided by the urgent care facility, which stated: "Gregg was seen in the office on April 18, 2019 for medical reasons and may return to work on 4/20/2019 with no limitations." Id. at 52:8-25; Doc. No. 29 at 218. Foshee and Galvez did not discuss the note. Doc. No. 23 at 53:6-11. Foshee testified that he did not understand the note to mean he "was supposed to be off," id. at 51:1-8, and Foshee has set forth no evidence indicating that the ear infection interfered with his work (or persisted) beyond April 18, 2019.

In *Cenis v. Winco Holdings, Inc.*, the Ninth Circuit found that vomiting and diarrhea did not constitute a disability under FEHA (and that plaintiff therefore could not make a prima facie showing of disability discrimination in violation of FEHA) where the symptoms subsided and the plaintiff returned to work in two days. 787 F. App'x at 948. The same reasoning applies here, and the Court therefore finds that Foshee cannot make out FEHA discrimination claim based on his short-lived ear infection. Cf. Winarto v. Toshiba Am. Elecs. Components, Inc., 274 F.3d 1276, 1291 (9th Cir. 2001) ("Given the temporary nature of Winarto's injuries and work restrictions, the fact that Toshiba had been given two notes from doctors was not enough to prove that Toshiba perceived Winarto to be disabled."); Rodriguez v. Amazon.com Servs., Inc., 2020 WL 5413841, at *1 (C.D. Cal. Mar. 17, 2020) (finding that pneumonia did not constitute a disability).

Since Foshee testified that he did not suffer from any other conditions that affected his ability to do his job, see Doc. No. 23 at 69:3-8, MasTec is entitled to summary judgment on Foshee's Fourth Cause of Action.

1  **IV.     Accommodation Claims Under California Government Code § 12940(m) (Fifth and**
2  **Seventh Causes of Action)**

3          Foshee brings two causes of action under § 12940(m). The Fifth Cause of Action alleges

4  that MasTec retaliated against Foshee "for requesting and using accommodations for his

5  disabilities, including time off for flareups in symptoms and treatment." Doc. No. 1 at 19:16-18.

6  The Seventh Cause of Action alleges that MasTec failed to make reasonable accommodations for

7  Foshee's disabilities and tried to "prevent [Foshee] from requesting further accommodations." Id.

8  21:4-6. Inasmuch as these allegations overlap, the Court will analyze the Fifth Cause of Action

9  and the Seventh Cause of Action together to determine whether Foshee has a claim under either of

10 § 12940(m)'s two subdivisions.

11         A. § 12940(m)(1)

12         Subdivision (1) of § 12940(m) makes it unlawful for an employer "to fail to make

13 reasonable accommodation for the known physical or mental disability of an applicant or

14 employee" unless the accommodation would "produce undue hardship." Cal. Gov. Code §

15 12940(m)(1).  The elements of a failure to accommodate claim are "(1) the plaintiff has a

16 disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the

17 position, and (3) the employer failed to reasonably accommodate the plaintiff's disability." Scotch

18 v. Art Inst. of California, 173 Cal. App. 4th 986, 1009–10 (2009) (citation omitted).

19         As set forth above, Foshee's ear infection did not constitute a "disability" under FEHA and

20 Foshee testified that he did not have any other conditions that affected his ability to do his job.

21 Foshee therefore cannot make out a prima facie claim under § 12940(m)(1). See Jackson v.

22 Kaplan Higher Educ., LLC, 106 F. Supp. 3d 1118, 1128 (E.D. Cal. 2015) (Ishii, J.) (finding that

23 the defendant employer could not be held liable under § 12940(m)(1) where plaintiff failed to

24 adduce evidence that she had a disability under FEHA).

25         B. § 12940(m)(2)

26          Subdivision (2) of § 12940(m) makes it unlawful for an employer "to, in addition to the

27 employee protections provided pursuant to [§ 12940(h)], retaliate or otherwise discriminate

28 against a person for requesting accommodation …, regardless of whether the request was

1    granted." Cal. Gov. Code § 12940(m)(2). "A term of leave from work can be a reasonable

2    accommodation under FEHA [citation], and, therefore, a request for leave can be considered to be

3    a request for accommodation under FEHA." Moore v. Regents of Univ. of California, 248 Cal.

4    App. 4th 216, 243 (2016).

5         As set forth above, Foshee testified that he missed work on April 18, 2019—without

6    requesting permission to do so—for what turned out to be a dual ear infection. He returned to

7    work on April 19, 2019 with a note from urgent care stating that he could return to work "without

8    limitation" on April 20, 2019. The Court sees nothing on the record indicating that Foshee

9    requested time off—or any other accommodation—for his ear infection. Foshee apparently

10   informed MasTec that he was out on April 18, 2019 for reasons relating to his health, but "simply

11   notifying" an employer of a medical condition does not constitute a request for accommodation

12   under FEHA—at least where, as here, the notice furnished provides the employer with no basis to

13   conclude (or even suspect) that leave is desired or warranted. Cf. Moore, 248 Cal. App. 4th at

14   247–48 (stating that plaintiff "offered no authority to support her contention that an employee's

15   notifying his or her employer of a medical issue that may be a disability under the statute

16   constitutes 'protected activity' on which a FEHA retaliation claim may rest").

17        Foshee has not asserted any basis other than his ear infection for leave under FEHA and

18   the Court sees no evidence that Foshee sought leave for any condition other than his ear infection.

19   Foshee therefore fails to make out a prima facie claim under § 12940(m)(2). Since Foshee cannot

20   make out a prima facie claim under either subdivision of § 12940(m), the court will grant

21   summary judgment in MasTec's favor on the Fifth Cause of Action and on the Seventh Cause of

22   Action.

23   **V.    Failure to Engage in Timely, Good Faith, Interactive Process to Determine**

24   **Reasonable Accommodation for Disability in Violation of California Government**

25   **Code § 12940(n) (Sixth Cause of Action)**

26        Foshee alleges that MasTec failed to engage "in a timely, good faith, interactive process

27   with [him] to determine effective reasonable accommodations for [his] disabilities" in violation of

28   § 12940(n) of the California Government Code.

14

A.      Applicable Law

Under Government Code § 12940(n), it is unlawful for an employer "to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov. Code § 12940(n); Jacques v. Allstate Ins. Co., 2007 WL 3046029, at *2 (E.D. Cal 2007) ("Subdivision (n) requires an employer to 'engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any,' upon request of an employee with a known physical condition.").

"The 'interactive process' required by the FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively." Scotch, 173 Cal. App. 4th 986, 1013 (2009) (citation omitted). "The employee must initiate the process unless the disability and resulting limitations are obvious." Id.; Stoll v. The Hartford, 2006 WL 3955826, at *5 (S.D. Cal. Nov 7, 2006) ("The employee generally bears the burden of initiating the informal, interactive process."). The employee must also "specifically identify the disability and resulting limitations, and [ ] suggest the reasonable accommodations." Scotch, 173 Cal. App. 4th at 1013 (quoted source and internal quotation marks omitted); see also Magana v. Lab'y Corp. of Am., 2021 WL 4233901, at *11 (C.D. Cal. Aug. 16, 2021) ("The interactive process of fashioning an appropriate accommodation lies primarily with the employee.").

Both parties must participate in good faith in the interactive process, and both parties have obligations to keep communications open and to not obstruct the process. Rubadeau v. M.A. Mortenson Co., 2013 WL 3356883, at *12 (E.D. Cal. July 3, 2013) (Ishii, J.). When a claim is brought for failure to reasonably accommodate a claimant's disability, the trial court's ultimate obligation is to "isolate the cause of the breakdown ... and then assign responsibility so that liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown." Nadaf–Rahrov v. Neiman Marcus Group, Inc., 166 Cal. App. 4th 952, 984 (2008).

B.     Discussion

As set forth above, Foshee testified that he woke up at 4:00 am or 5:00 am on April 18, 2019, "felt really bad" and sent an email to Barrie, Galvez and "some of the guys that were in the Fresno office, letting them know that [he] wasn't going to make it in that day." He went back to sleep and woke up to a message from Galvez stating that it was unacceptable to provide just a couple of hours' notice that he was going to miss his shift. Foshee informed Galvez that he was "sick," "sweating from head to toe" and unable to "get off the floor," whereupon Galvez called him a "pussy" and threatened to "beat [his] ass." Shortly thereafter, Foshee went to urgent care, where he was diagnosed with a dual ear infection, given antibiotics and sent home. He returned to work the next day, April 19, 2019, and gave Galvez a copy of a note provided by urgent care, which stated that Foshee had been seen on April 18, 2019 for "medical reasons" and "may return to work … with no limitations" on April 20, 2019.

Foshee argues that "the evidence clearly establishes that [he] informed [MasTec] of his medical condition and need for an accommodation via a brief leave of absence," Doc. No. 27:20-23, but his own testimony shows, in the plainest possible terms, that he did not request an accommodation from MasTec or otherwise initiate the interactive process. See Gelfo v. Lockheed Martin Corp., 140 Cal. App. 4th 34, 62 n.22 (2006) (stating that "[t]ypically, an applicant or employee triggers the employer's obligation to participate in the interactive process by requesting an accommodation" and that the employer's "obligation arises once the employer becomes aware of the need to consider an accommodation"). Further, Foshee sets forth no evidence showing that he explained the nature of his medical condition or the resulting limitations to MasTec or that he suggested accommodation in the form of leave or otherwise. Nor does the Court see anything on the record showing that Foshee was unfit for work—or that he believed himself to be unfit for work—on April 19, 2019, or that he was so obviously impaired that MasTec should have realized on its own that an accommodation of some sort might be in order. See Ellis v. City of Reedley, 2007 WL 1098571, at *13 (E.D. Cal. Apr.12, 2007) (interactive process claim "requires a showing that [d]efendant [ ] had subjective knowledge of [p]laintiff's disability, or, at a minimum, constructive knowledge.").

1   The Court will therefore grant summary judgment in MasTec's favor on the Sixth Cause of

2   Action. Cf. King, 2013 WL 5305907 at *9–10 ("As with her other FEHA claims, plaintiff's

3   allegation that she 'requested that [d]efendant accommodate her disability by allowing her to take

4   certain days off due to her medical condition,' [], is insufficient, even taken alongside her other

5   factual allegations, to show that defendant was aware that plaintiff had a disability requiring

6   accommodation.").

7   **VI.    Discrimination Based on Race in Violation of Government Code § 12940(a) (Eighth**

8   **Cause of Action)**

9         A.    Applicable Law

10        Section 12940(a) of the California Government Code makes it unlawful, *inter alia*, for an

11  employer to discharge an employee or otherwise take adverse employment action against an

12  employee because of race.[5] Cal. Gov. Code § 12940(a).

13        To make out a prima facie discrimination claim under FEHA, a plaintiff must generally

14  show "that (1) he or she was a member of a protected class, (2) he or she was qualified for the

15  position he sought or was performing competently in the position he held, (3) he or she suffered an

16  adverse employment action, such as termination, demotion, or denial of an available job, and (4)

17  some other circumstance suggests discriminatory motive." Guz v. Bechtel National, Inc., 24 Cal.

18  4th 317, 355 (2000); Zeinali v. Raytheon Co., 636 F.3d 544, 552 (9th Cir. 2011). "While the

19  plaintiff's prima facie burden is not onerous, he must at least show actions taken by the employer

20  from which one can infer, if such actions remained unexplained, that it is more likely than not that

21  such actions were based on a [prohibited] discriminatory criterion ...." Guz, 24 Cal. 4th at 355

22  (internal citations and quotation marks omitted).

23        As set forth above, a defendant employer must show either that (1) plaintiff cannot

24  _____

25  [5] Section 129490(a) of the California Government Code states as follows:

26  For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental
    disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age,

27  sexual orientation, or military and veteran status of any person, to refuse to hire or employ the person or to refuse to
    select the person for a training program leading to employment, or to bar or to discharge the person from employment

28  or from a training program leading to employment, or to discriminate against the person in compensation or in terms,
    conditions, or privileges of employment.

establish one or more prima facie elements or (2) "there was a legitimate, nondiscriminatory reason" for the adverse employment action in question to win summary judgment on a FEHA discrimination claim. Lucent Technologies, 642 F.3d at 745 (citation omitted)); Lawler v. Montblanc N.A., LLC, 704 F.3d 1235, 1242 (9th Cir. 2013). "If the employer presents admissible evidence that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing." Caldwell v. Paramount Unified School Dist., 41 Cal. App. 4th 189, 203 (1995). Legitimate, nondiscriminatory reasons for an adverse employment action "are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding of *discrimination*." Guz, 24 Cal.4th at 358 (emphasis original) (citations omitted). The question is not whether an employment decision was based on correct assumptions, but whether defendant reasonably believed the reasons for the decision and validly exercised its business judgment based on them. Id.

An employee can rebut an employer's showing that an adverse employment action was based on legitimate, nondiscriminatory factors by "produc[ing] substantial responsive evidence that the employer's showing was untrue or pretextual." Lucent Technologies, 642 F.3d at 746 (quoting Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 224 (1999) (internal quotation marks omitted). "A plaintiff may demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." Earl v. Nielsen Media Rsch., Inc., 658 F.3d 1108, 1112–13 (9th Cir. 2011) (citing Chuang v. Univ. of Cal. Davis, Bd. of Trustees, 225 F.3d 1115, 1127 (9th Cir. 2000)). "When evidence of pretext is circumstantial, rather than direct, the plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext." Earl, 658 F.3d at 1113 (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir.1998)).

The Court will first determine whether Foshee has established a prima facie race discrimination claim under FEHA and then address the question of pretext.

18

1      B.      Prima Facie FEHA Claim for Racial Discrimination

2          MasTec does not dispute on this motion that the first two elements of a prima facie FEHA

3  discrimination claim have been established. See Doc. No. 19 at 24:9-26.

4          As to the third element—an adverse employment action—Foshee contends that, as the only

5  African American in management at MasTec, he "experienced disparate treatment, including but

6  not limited to nitpicking, excessive supervision, verbal altercations with [] Galvez, being

7  threatened with a write-up for a no call no show when [he] was at [u]rgent care, and ultimately,

8  being terminated for not wearing a hard hat." Doc. No. 27 at 19:25-20:5.

9          Under California law, "[n]ot every employment decision amounts to an adverse

10  employment action." Strother v. S. California Permanente Med. Grp., 79 F.3d 859, 869 (9th Cir.

11  1996), as amended on denial of reh'g (Apr. 22, 1996), as amended on denial of reh'g (June 3,

12  1996). "[T]o be actionable, an employer's adverse conduct must materially affect the terms and

13  conditions of employment." Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028, 1050-51 & n.9

14  (2005); Flores v. City of Westminster, 873 F.3d 739, 748 (9th Cir. 2017). "[T]he determination of

15  whether a particular action or course of conduct rises to the level of actionable conduct should take

16  into account the unique circumstances of the affected employee as well as the workplace context

17  of the claim." Yanowitz, 36 Cal.4th at 1052.

18          The Court allows for the possibility that "nitpicking, excessive supervision [and] verbal

19  altercations" could constitute actionable adverse employment conduct in some cases. See Jones v.

20  Department of Corrections and Rehabilitation, 152 Cal. App. 4th 1367, 1380 (2007) ("[A]n

21  adverse employment action is not limited to 'ultimate' employment acts, such as hiring, firing,

22  demotion or failure to promote, but also includes the entire spectrum of employment actions that

23  are reasonably likely to adversely and materially affect an employee's job performance or

24  opportunity for career enhancement."). The Court, however, only sees creditable evidence of one

25  verbal altercation with Galvez on the record (for which, according to Foshee, Galvez apologized),

26  Doc. No. 23 at 49:11-21, and Foshee has not set forth evidence of "nitpicking" or "excessive

27  supervision" on a scale that could reasonably be said to affect the "terms and conditions" of his

28  employment. In fact, Foshee testified more than once that his superiors neglected him and were

1    rarely around. See, e.g., Doc. No. 23 at 41:2-9 (Foshee stating that Ecklind was "never … there");

2    56:20-57:9 (Foshee stating that he was the "only one" in the office "80 percent of the time").

3    Similarly, a reasonable jury could not find that the threat to write Foshee up for missing work on

4    April 18, 2019 constitutes actionable conduct because Foshee did not in fact receive a write-up,

5    Doc. No. 29 at 105:2-8, and there is no showing that the threat itself had a material impact on his

6    work. Thus, to the extent Foshee can state a FEHA discrimination claim it must be based on his

7    termination.

8            Turning to the fourth and final element of a prima facie FEHA discrimination claim—

9    some circumstance suggesting discriminatory motive—the record shows that Foshee was

10   terminated after a client representative reported that he and the crew for which he was foreman

11   were not wearing hardhats on a job site. The client representative had warned the crew regarding

12   noncompliance with policy and other requirements earlier in the day and made the decision to shut

13   down the job site when he observed the hardhat violations. Foshee does not dispute that the

14   foregoing events transpired and provided the putative basis for his termination, Doc. No. 23 at

15   60:18-67:8, but contends that "countless incidents of non-African American employees

16   committing much more egregious safety violations without being terminated or disciplined," Doc.

17   No. 27 at 19:11-14; and bias complaints by African American employees demonstrate "a pattern

18   of disparate treatment against African Americans" at MasTec. Id. at 20:1-4. The Court will

19   examine Foshee's evidence regarding undisciplined safety violations and Foshee's evidence

20   regarding bias complaints in turn.[6]

21

22   _____

23   [6] In addition to the evidence examined here, Foshee submitted four witness statements in opposition to MasTec's
     motion for summary judgment addressing racial bias at MasTec. See Doc. No. 29 at 32, 34, 36 & 206 (Exhibits B, C,
24   D & N to the Declaration of Geoffrey C. Lyon). These statements, however, are neither sworn nor signed under
     penalty of perjury pursuant to 28 U.S.C. § 1746. See Fed.R.Civ. Pro. 56(c)(1)(A) (setting forth means of supporting
25   factual positions on a summary judgment motion); 28 U .S.C. § 1746 (requiring affidavits to be sworn or signed under
     penalty of perjury); United States v. Ritchie, 342 F.3d 903, 909 (9th Cir.2003) ("In ruling on a motion for summary
26   judgment, a court may substitute an unsworn declaration for a sworn affidavit if the declaration complies with 28
     U.S.C. § 1746. But such documents must be based on 'personal knowledge,' Fed.R.Civ.P. 56(e), and must be
27   'subscribed by' the declarant, 28 U.S.C. § 1746."); Donald v. United States, 2010 WL 4053952, at *5 (D. Ariz. Oct.
     15, 2010) ("The statements are not sworn or signed under penalty of perjury and therefore do not constitute affidavits
28   that may be considered under Rule 56."). MasTec's evidentiary objections to these witness statements are therefore
     sustained. See Doc. No. 38. MasTec's other evidentiary objections (which number in the hundreds) are otherwise
     overruled as moot because the Court did not rely on the evidence at issue in deciding this motion.

1                *1. Evidence of Safety Violations That Did Not Result in Termination or*

2                    *Disciplinary Action*

3       Foshee sets forth evidence of two incidents involving safety violations at MasTec. In the

4 first incident, a Caucasian foreman by the name of Robert Hutchins brought his dog to a worksite

5 without authorization. The dog left the work site. Hutchins and another crew member took a truck

6 to find him. They were away from the work site for approximately 20 minutes. During that period,

7 a crew member by the name of Brian Montgomery was on a tower with no ground crew to assist

8 him in case of emergency, which was a violation of applicable safety protocols. After the instance

9 came to light, Hutchins was verbally informed by MasTec management that bringing the dog to

10 the job site was not authorized and that he could only bring the dog to job sites in the future if he

11 was approved for an accommodation and secured the dog at all times. No other disciplinary action

12 was taken. Hutchins applied for and received the required accommodation. <u>See</u> Doc. No. 29 at

13 45:16-46:7; 141:22-142:19; 192:9-198:3. In the second incident, Barrie, who is not African

14 American, was witnessed by crew members climbing 20 to 30 feet up a tower in flip-flops at night

15 without a hardhat or harness. Doc. No. 29 at 39:16-40:2, 42:20-43:3.

16       In the Court's view, a reasonable jury could not find a discriminatory motive—or the

17 suggestion of a discriminatory motive—from these events. In the Hutchins case, corrective action

18 was taken with respect to the dog, and Foshee fails to show that Hutchins's violations where of

19 comparable severity to his own, with respect to either bringing a dog to a job site or leaving a job

20 site. Further, the record shows not only that Foshee's violations came to the attention of a client

21 representative, but that the client representative shut down Foshee's job site due to multiple safety

22 violations and instances of noncompliance on the part of Foshee and his crew in the same day.

23 There are no such facts in the Hutchins case. The Barrie case, for its part, is similar to Foshee's

24 case in that it involved hardhat and footwear violations on a tower, but it did not involve multiple

25 violations on the part of multiple crew members under Barrie's supervision; it did not come to the

26 attention of a client; and crucially, the Court sees no evidence that it was reported to Barrie's

27 superiors, making it impossible to draw reliable inferences regarding MasTec's disciplinary

28 practices based on it.

2. *Evidence Regarding Instances of Bias Against African American Employees*

Foshee sets forth evidence of the three instances of bias toward African American employees at Mastec. First, an African American plaintiff brought a lawsuit against MasTec in 2019 after he resigned, alleging that he had been subject to racial slurs and that he received significantly lower pay than his peers. Doc. No. 39 at 38:24-39:12. The suit was settled, but the settlement terms are not on the record before the Court. Id. at 39:15-40:6. Second, Cox investigated an incident in Southern California in 2020 involving a picture of "an upside down okay symbol" that an employee emailed to his team in what the employee said was part of a "made you look" game that he had played in childhood. Id. at 38:18-39:9. A female African American employee perceived it to be a white supremacist symbol so cultural training regarding different perceptions of the sign in question was conducted. Id. at 38:18-39:9. Third, a Caucasian employee in Hawaii was terminated in 2020 for using racial slurs regarding African Americans in casual conversation. Id. at 41:5-9, 43:5-17.

The second and third examples show MasTec taking corrective action—including termination of employment—in response to conduct on the part of MasTec employees that was racially offensive or perceived to be racially offensive. The Court sees no evidence that either of the employees involved worked in management positions and the record shows that neither of them worked in Northern California. A reasonable jury, therefore, could not infer a discriminatory motive for Foshee's termination from these events. The settled lawsuit, for its part, arguably speaks to discriminatory employment practices, but Foshee provides no information regarding the lawsuit that might allow the Court—or a jury—to reliably gauge its bearing on this case. For example, there is no showing as to the plaintiff's role, where he worked or which managers were in his chain of command. Moreover, there is no showing as to what extent, if any, his claims (or underlying allegations) were validated. See Espinoza v. City of Seattle, 458 F. Supp. 3d 1254, 1279 (W.D. Wash. 2020), appeal dismissed, 2020 WL 7062684 (9th Cir. Sept. 15, 2020) (finding filing of discrimination case by a third party insufficient to show discriminatory motive in employment action because the complaint constituted "nothing more than unverified allegations of discrimination").

1    In sum, a jury could not reasonably find that the evidence set forth by Foshee regarding

2  safety violations by others or events involving racial bias (or perceptions of racial bias) at MasTec

3  suggest a discriminatory motive for his termination. Moreover, Foshee has not identified—or even

4  attempted to identify—any facts specific to the termination itself that suggest a discriminatory

5  motive. Foshee has therefore failed to establish the fourth element of a prima facie discrimination

6  claim under FEHA and the Court will grant summary judgment in MasTec's favor on Foshee's

7  Eighth Cause of Action on that basis.

8         C.    Legitimate, Nondiscriminatory Reasons for Termination

9    The Court further finds that MasTec has shown that it had legitimate, nondiscriminatory

10  reasons for terminating Foshee. Foshee does not dispute that the September 25, 2019 safety

11  violations took place, see Doc. No. 23 at 66:15-67:16, and MasTec has set forth evidence showing

12  that such violations are grounds for termination. See, e.g., id. at 152:20-155:20; see Aragon v.

13  Republic Silver State Disposal Inc., 292 F.3d 654, 661 (9th Cir. 2002) (holding that poor job

14  performance is a legitimate reason for an adverse employment action); Aparicio v. Amerigas

15  Propane, Inc., 2019 WL 8647730, at *6 (C.D. Cal. Dec. 17, 2019) (finding that workplace safety

16  violations constituted a legitimate reason for termination). For the reasons set forth in the Court's

17  discussion of the fourth element of Foshee's prima facie FEHA discrimination claim, the Court

18  finds that Foshee has failed to set forth the "specific and substantial" evidence required to show

19  that the September 25, 2019 safety violations were a pretext for a termination motivated by race,

20  see Batarse v. Service Employees Internal. Union, Local 1000, 209 Cal. App. 4th 820, 834 (2012),

21  nd will grant summary judgment for MasTec on the Eighth Cause of Action on that basis as well.

22  **VII.   Retaliation for Opposing Violations of FEHA in Violation of Section 12940(h) of the**

23  **California Government Code and Wrongful Termination in Violation of Public**

24  **Policy (Ninth and Tenth Causes of Action)**

25    The Ninth Cause of Action alleges that MasTec took adverse employment actions against

26  Foshee that were substantially motivated by, and in retaliation for, Foshee's opposition to

27  MasTec's violations of FEHA, in violation of § 12940(h) of the California Government Code.

28  Doc. No. 1 at 22:11-15.

1    Subdivision (h) of § 12940 "protects employees against retaliation . . . for opposing

2  conduct made unlawful by [FEHA]." Cal. Gov. Code, § 12940(h). To make out a prima facie case

3  for retaliation under § 12940(h), a plaintiff must show: "(1) the employee's engagement in a

4  protected activity, i.e., 'oppos[ing] any practices forbidden under this part'; (2) retaliatory animus

5  on the part of the employer; (3) an adverse action by the employer; (4) a causal link between the

6  retaliatory animus and the adverse action; (5) damages; and (6) causation." Mamou v. Trendwest

7  Resorts, Inc., 165 Cal. App. 4th 686, 713 (2008).

8    As set forth above, Foshee has failed to adduce evidence sufficient for a reasonable jury to

9  conclude that MasTec engaged in practices forbidden by FEHA; that Foshee opposed practices

10  forbidden by FEHA; or that Foshee otherwise engaged in activity that could be considered

11  "protected" under FEHA. Moreover, the Court finds above that only Foshee's termination

12  constitutes adverse employment action under FEHA and that Foshee has not set forth evidence

13  sufficient for a jury to find that his termination was motivated by anything other than the

14  September 25, 2019 safety violations. Thus, Foshee has not made out a prima facie § 12940(h)

15  claim and MasTec is entitled to summary judgment on the Ninth Cause of Action.

16  **VIII.   Wrongful Termination in Violation of Public Policy (Tenth Cause of Action)**

17    The Tenth Cause of Action alleges that MasTec "discharged [Foshee] in violation of

18  important and well-established public policies" relating to discrimination, retaliation and medical

19  leave. Doc. No. 1 at 23:2-6.

20    "[W]hen an employer's discharge of an employee violates fundamental principles of public

21  policy, the discharged employee may maintain a tort action and recover damages traditionally

22  available in such actions." Tameny v. Atlantic Richfield Co., 27 Cal.3d 167, 170 (1980). "In order

23  to sustain a claim for wrongful discharge in violation of fundamental public policy, [a plaintiff]

24  must prove that [the] dismissal violated a policy that is (1) fundamental; (2) beneficial for the

25  public; and (3) embodied in a state or constitutional provision." Turner v. Anheuser–Busch, Inc., 7

26  Cal.4th 1238, 1256 (1994) (footnotes omitted). Such claims are commonly referred to as "*Tameny*

27  claims" after the decision in *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 170 (1980).

28    Foshee concedes that his *Tameny* claim is "derivative of his other claims." Doc. No. 27 at

20:8-9; <u>see</u> <u>also</u> Doc. No. 1 at 23:2-6. MasTec is therefore entitled to summary judgment on the Tenth Cause of Action for the same reasons it is entitled to summary judgment on the other causes of action. <u>See</u> <u>Boudreaux v. J.B. Hunt Transportation, Inc.</u>, 690 F. App'x 504, 505 (9th Cir. 2017) (finding summary judgment in defendant's favor on wrongful termination claim was proper because it was derivative of FEHA claims); <u>Sneddon v. ABF Freight Sys.</u>, 489 F. Supp. 2d 1124, 1131 (S.D. Cal. 2007) (finding that plaintiff's cause of action for wrongful termination failed because it was derivative of plaintiff's failed FEHA claim).

## **CONCLUSION**

For the foregoing reasons, the Court will grant summary judgment in MasTec's favor on all of Foshee's causes of action.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment (Doc. No. 18) is GRANTED in its entirety;

2. The Clerk is directed to enter judgment in favor of Defendant and to CLOSE this case.

IT IS SO ORDERED.

Dated:   February 12, 2022

SENIOR  DISTRICT  JUDGE